**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**MODESTO RODRIGUEZ,**

      Plaintiff,

  -against-

**THE CITY OF NEW YORK, WARDEN**
**STEVEN BASTIAN, OFFICER**
**MICHELLE GONZALEZ, ANTOINETTE**
**DOUGLAS, AND LACHONDA LUCAS,**

      Defendants.

Case No. 21-CV-8565

---

**PLAINTIFF'S OPPOSITION TO THE CITY OF NEW YORK'S MOTION TO DISMISS**

Rickner PLLC
14 Wall Street, Suite 1603
New York, NY 10005

On the Brief:

  Robert Rickner, Esq.

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT ......................................................................................... 1

THE FACTS ALLEGED .................................................................................................... 1

ARGUMENT ....................................................................................................................... 3

   I.    PLAINTIFF'S OVER-DETENTION IS CONSTITUTIONALLY COGNIZABLE ............ 3

      A.   *The Deliberate Indifference Claim Does Not Turn on The Length of Delay* .................... 3

      B.   *The Constitutional Violation Was Caused by the City's Longstanding Policy of Holding Parolees in Custody Until the State Agrees to Release Them* .......................................... 4

   II.   THE STATE LAW CLAIMS ARE PROPERLY PLED ................................................ 6

      A.   *False Imprisonment* .................................................................................................. 6

      B.   *State Constitutional Claims* .................................................................................... 9

   III.  PLAINTIFF SHOULD BE GIVEN LEAVE TO AMEND, IF THE CURRENT ALLEGATIONS ARE INSUFFICIENT ....................................................................... 11

CONCLUSION ................................................................................................................. 12

# TABLE OF AUTHORITIES

## CASES

*Alwan v. City of New York*, 311 F. Supp. 3d 570 (E.D.N.Y. 2018)...................................................11

*Armstrong v. Squadrito*, 152 F.3d 564 (7th Cir. 1998).....................................................................4

*Broughton v. State*, 37 N.Y.2d 451 (N.Y. 1975) ...............................................................................6

*Brown v. City of New York*, 2017 WL 1390678 (S.D.N.Y. Apr. 17, 2017)....................................11

*Brown v. State of New York*, 89 N.Y.2d 172 (1996)...........................................................................9

*Buari v. City of New York*, 530 F.Supp.3d 356 (S.D.N.Y. 2021) ...................................................10

*Calhoun v. N.Y. State Div. of Parole Officers*, 999 F.2d 647 (2d Cir. 1993) ..................................3

*Casey v. State*, 148 A.D.3d 1370 (3d Dept. 2017).............................................................................6

*Cash v. Cnty. of Erie*, 654 F.3d 324 (2d Cir.2011) ...........................................................................5

*Espinoza v. City of New York*, 194 F. Supp. 3d 203 (E.D.N.Y. 2016) ...........................................11

*Hurd v. Fredburgh*, 984 F.3d 1075 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 109 (2021) ...............3

*Jones v. Town of E. Haven*, 691 F.3d 72 (2d Cir. 2012).....................................................................5

*Logan v. City of Schenectady*, 2019 WL 3803631 (N.D.N.Y. Aug. 13, 2019) ..............................11

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160 (2d Cir. 2015)..............11

*Martinez v. City of Schenectady*, 97 N.Y.2d 78 (N.Y. 2001) .........................................................10

*McDay v. Travis*, 303 F. App'x 928 (2d Cir. 2008).........................................................................4

*Miller v. State*, 124 A.D.3d 997 (3d Dept. 2015).............................................................................6

*Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978)..........................1, 4, 5, 11

*People ex rel. Alcantara v. Keyser*, 193 A.D.3d 1147 (3d Dep't 2021),

    *leave to appeal denied*, 37 N.Y.3d 905, 173 N.E.3d 423 (N.Y. 2021).........................................8

*People ex rel. Brown v. New York State Div. of Parole*, 70 N.Y.2d 391 (N.Y. 1987) ....................7

*People ex rel. Cropper v. Taylor*, 48 A.D.3d 852 (3d Dep't 2008)......................................................7

*People ex rel. DeFlumer v. Strack*, 212 A.D.2d 555 (1st Dep't 1995)...............................................7

*People ex rel. Goldberg v. Warden*, 45 A.D.3d 356 (1st Dep't 2007) ...............................................7

*People ex rel. Porter v. Napoli*, 56 A.D.3d 830 (3d Dep't 2008).......................................................7

*People ex rel. Snell v. Superintendent of Greene Corr. Facility*,

    164 A.D.3d 1003 (3d Dep't 2018)................................................................................................8

*Sample v. Dieks* 885 F.2d 1099 (3d Cir. 1989)...................................................................................3

*Sindle v. New York City Transit Auth.*, 33 N.Y.2d 293 (N.Y. 1973) ...............................................6

*Uviles v. City of New York*, No. 19-CV-3911 (BMC), 2020 WL 8642289 (E.D.N.Y. June 30,

    2020) ......................................................................................................................................6, 8

## STATUTES

N.Y. Comp. Codes R. & Regs. tit. 9, § 8004.2(c) ...........................................................................9

N.Y. Comp. Codes R. & Regs. tit. 9, § 8004.5................................................................................9

## PRELIMINARY STATEMENT

Plaintiff Modesto Rodriguez ("Plaintiff") brings this action against the City of New York (the "City"), as well as various individual State Defendants from the Department of Corrections and Community Supervision ("DOCCS") Division of Parole, none of whom are at issue in this motion, for violations of his federal and state constitutional and common law rights arising from his unconstitutional parole revocation and subsequent over-detention following a sustained writ of *habeas corpus*. Following Defendants' removal to this Court, the City of New York and Warden Bastian moved for dismissal on all counts asserted against them, including: (1) a *Monell* claim challenging the City's official policy of delaying timely release of persons who prevail on a *habeas* writ; (2) common law false imprisonment under a theory of *respondeat superior*; and (3) violations of Art. 1 §§ 6 and 12 of the New York State Constitution, also pled as *respondeat* liability.[1] Because Plaintiff has properly alleged each of these causes of action, the City's motion should be denied, and the claims permitted to proceed through discovery.

## THE FACTS ALLEGED

In October 2019, Plaintiff was given an unconstitutional restriction as part of his parole conditions, which disallowed him from having a cell phone with an operable camera. C.¶18.[2] Just nine days after approving the cell phone Plaintiff intended to use, State Defendant Gonzalez violated him for carrying the same phone, and Plaintiff was arrested and detained on Rikers

---

[1] Plaintiff voluntarily withdraws his Fifth Cause of Action (Negligence) and withdraws references in his Sixth Cause of Action (State Constitutional Violations) to Art. 1 §§ 1, 8, 9, and 11. The claims arising under the protections of Art. 1 §§ 6 (due process) and 12 (unreasonable searches and seizures) remain, and are addressed in Section III(b) below. Plaintiff also withdraws his claims against Warden Bastian based on the City's representations.

[2] Plaintiff's First Amended Complaint (Dkt. 10) is cited herein as "C¶___." The City of New York's Memorandum of Law in Support of Their Motion to Dismiss is cited as "MTD at ___."

Island as a result. C.¶¶20–22. After a parole hearing was held sustaining the charges, Plaintiff file a writ of *habeas corpus* in New York State Supreme Court, Bronx County, challenging the legality of his detention. C.¶¶24–25. On March 19, 2020, the Honorable Judge Margaret L. Clancy found Plaintiff's detention unconstitutional and ordered that he be released, unless there was another lawful reason to detain him, which there was not. C.¶¶26, 28.

Plaintiff Rodriguez, however, was not released on March 19; he was instead held on Rikers Island 12 extra days, until March 31, 2020, while the COVID-19 pandemic exploded. C.¶30. The reason for this over-detention was the City's policy of only detaining someone until DOCCS affirmatively states there is no further parole hold, regardless of the City's lawful authority to do so. C.¶31. Worse, the City continued this policy even though they knew that their own database was grossly inaccurate: "DOCS look up often lists the warrants as being active but they are usually not." C.¶35 (sic). Of course, it did not matter what the system said because the writ itself vacated the warrant and Plaintiff should have been released immediately. *Id*.

Following the Initial Conference, Plaintiff's counsel inquired as to when the City became aware of the fact that the warrant had been lifted. Plaintiff's further investigation revealed that the court sent the writ to DOCCS, who was responsible for sending it to the City. This exchange happened on or before March 24, 2020, because Plaintiff was placed on the discharge list on that date, but his release was then delayed when DOCCS failed to confirm that the warrant was lifted.[3]

Further, based on representations by the City made following the Initial Conference, Plaintiff is withdrawing any claims against Warden Steven Bastian.

---

[3] To the extent the Court deems it necessary, Plaintiff will amend the First Amended Complaint to include these facts.

## ARGUMENT

### I.    PLAINTIFF'S OVER-DETENTION IS CONSTITUTIONALLY COGNIZABLE

#### A.  The Deliberate Indifference Claim Does Not Turn on The Length of Delay

The City's claim the Plaintiff's over-detention was not long enough to be a constitutional violation, and the its reliance on a three-decade old decision from the Third Circuit in support, is simply wrong—not only because that case is not controlling, but because the Second Circuit has concluded precisely the opposite as recently as last year. MTD at 6 (relying on *Sample v. Dieks* 885 F.2d 1099, 1108–09 (3d Cir. 1989)). In *Hurd v. Fredburgh*, the Second Circuit held that the "unauthorized detention of just one day past an inmate's mandatory release date qualifies as a harm of constitutional magnitude under the first prong of the Eighth Amendment analysis" because "[n]ext to bodily security, freedom of choice and movement has the highest place in the spectrum of values recognized by our Constitution." 984 F.3d 1075, 1084 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 109 (2021) (internal citations and quotations omitted). The *Hurd* opinion directly addresses seemingly contradictory caselaw predating the decision, upon which the City Defendants also rely:

> We acknowledge that, in [*Calhoun v. N.Y. State Div. of Parole Officers*, 999 F.2d 647, 654 (2d Cir. 1993)], we stated that a five-day extension of [the plaintiff's] release date did not inflict a harm of a magnitude' that violates a person's eighth amendment rights. But we did not announce this as a constitutional rule . . . and we are not bound by [it] in announcing a constitutional rule here.
>
> Indeed, in *Calhoun* we cited to *Sample*, which relied on the deliberate indifference prong as dispositive in cases of unavoidable administrative delay, mistakes, errors, and accidents. This approach—recognizing a harm of constitutional magnitude whenever an inmate is detained without authorization but finding a constitutional violation only where that harm is deliberately inflicted—avoids the arbitrary task of distinguishing between the permissible and impermissible length of unauthorized detention under the Constitution.

984 F.3d at 1084, n.4 (internal citations and quotations omitted). Thus, it is not the number of days in which Plaintiff was over-detained that controls the constitutional analysis, but the fact-

3

specific acts or omissions taken by a defendant with respect to that detention, and an assessment of whether or not those acts or omissions evidence deliberate indifference on the part of that state actor. *Id*.

### B. The Constitutional Violation Was Caused by the City's Longstanding Policy of Holding Parolees in Custody Until the State Agrees to Release Them

It is well established that the City can only hold people in custody when it has a legal basis to do so. The City cannot abdicate this responsibility, nor can it rely on DOCCS to decide whether a parolee needs to be released. In fact, the Second Circuit held that if the State, *i.e.,* DOCCS, failed to ensure a parolees timely release, the City could be liable, if it was the City's policy to hold someone regardless:

> The City asserts that it may not be liable for a violation of plaintiff's due process rights because, according to the City, the State was solely responsible for ensuring that plaintiff received a probable cause hearing in connection with the parole warrant and, if necessary, a revocation hearing. Assuming, for the sake of argument, that the State in fact neglected to ensure that proper procedural safeguards were followed, the City has pointed to no State law or State policy that compelled plaintiff's detention after the dismissal of criminal charges against him. Rather, the record raises the possibility that plaintiff was unconstitutionally detained pursuant to the "execution of a [City] policy or custom." *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). … Rather than serving as a basis for summary judgment in favor of the City, ***these uncontradicted assertions might prove to be grounds for the City's liability under 42 U.S.C. § 1983 if they reflect a City policy that resulted in a violation of plaintiff's due process rights***.

*McDay v. Travis*, 303 F. App'x 928, 930–31 (2d Cir. 2008) (emphasis added); *see also Armstrong v. Squadrito*, 152 F.3d 564, 578-79 (7th Cir. 1998) ("[J]ails cannot confine people without the authority to do so . . . Furthermore, jailers hold not only the keys to the jail cell, but also the knowledge of who sits in the jail and for how long they have sat there. They are the ones directly depriving detainees of liberty.").

Unlike the pro se plaintiff in *McDay*, here Plaintiff specifically alleges that the City still

has the same policy it did more than a decade ago. The City will hold a parolee, absent any authority to do so, until DOCCS says otherwise. The Second Circuit's warning in *McDay* has been ignored. Worse, the City knows that parolees are detained repeatedly in their jails without any legal authority. As the DOCCS official explained in an email: "DOCS look up often lists the warrants as being active but they are ***usually*** not." C¶35 (emphasis added).

Thus, the City is liable, under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), for maintaining this policy despite knowing that parolees are regularly over-detained, either because DOCCS has failed to timely lift a warrant or because their own system is riddled with errors.  "A municipal policymaking official's 'deliberate indifference' to the unconstitutional actions, or risk of unconstitutional actions, of municipal employees can in certain circumstances satisfy the test for a municipal custom, policy, or usage that is actionable under Section 1983." *Jones v. Town of E. Haven*, 691 F.3d 72, 81 (2d Cir. 2012). When a plaintiff can show the policymakers had "actual or constructive notice that the particular omission is substantially certain to result in the violation of the constitutional rights of their citizens, the dictates of *Monell* are satisfied." *Cash v. Cnty. of Erie*, 654 F.3d 324, 334 (2d Cir.2011) (quotations omitted).

The City could not, and cannot, continue to unconstitutionally detain parolees, following the same policies that have failed so many times before. In fact, a similar *Monell* claim alleging that the "parole hold" policy caused a plaintiff to be over-detained recently survived a motion to dismiss in the Eastern District of New York:

> It is clear at this juncture . . . that the broader policy or custom that plaintiff identified in his complaint was the routine honoring of informal parole holds regardless of whether the parolee was no longer being lawfully detained. On that basis, the complaint may go forward as it has plausibly alleged a joint DOCCS-DOC policy or custom that caused the deprivation of plaintiff's Fourth Amendment rights and may imminently deprive other parolees of their rights as well.

5

*Uviles v. City of New York*, No. 19-CV-3911 (BMC), 2020 WL 8642289, at *1 (E.D.N.Y. June 30, 2020). There is no doubt that, if this policy operates as the City has already admitted it does—or, more precisely, if Plaintiff has sufficiently *alleged* that the policy operates in an unconstitutional way, which he has—Plaintiff can easily demonstrate a "direct causal link between the municipal action and the depravation of federal rights," particularly where, as here, the City itself still relies on this failed policy to justify its actions, even in its own motion papers. *See* MTD at 4 ("City DOC and its employees do not have the authority to release inmates held under a State parole warrant until State DOCCS lifts the parole warrant.").

## II.     THE STATE LAW CLAIMS ARE PROPERLY PLED

### a.   False Imprisonment

The Plaintiff has pled all the elements of a false imprisonment claim against the City under the doctrine of *respondeat superior*: "(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged. *Broughton v. State*, 37 N.Y.2d 451, 456 (N.Y. 1975). While typically litigated following a warrantless arrest, plaintiffs can claim false imprisonment when they are over-detained beyond the time there was lawful authority to hold them. *See Miller v. State*, 124 A.D.3d 997, 998 (3d Dept. 2015) (upholding damages award after illegal over-detention). And most important here, the defendant has the burden of proving that the detention was privileged. *See Casey v. State*, 148 A.D.3d 1370, 1375–76 (3d Dept. 2017) ("defendant did not meet its burden to demonstrate that the conduct of the officers in confining claimant and restricting her movements was 'reasonable under the circumstances and in time and manner,' and therefore failed to prove that the officers' conduct was privileged" (quoting *Sindle v. New York City Transit Auth.*, 33 N.Y.2d 293, 297 (N.Y. 1973)).

The City argues that no state law cause of action for false imprisonment is available to Plaintiff because "the order vacating Plaintiff's parole warrant did not, as Plaintiff suggests, direct that he be released immediately." MTD at 10. But immediate release is, both historically and under modern New York law, the precise remedy sought by a writ of habeas corpus. *See e.g. People ex rel. DeFlumer v. Strack*, 212 A.D.2d 555 (1st Dep't 1995) ("Habeas corpus will lie only when the petitioner is entitled to *immediate release*.") (emphasis added); *People ex rel. Porter v. Napoli*, 56 A.D.3d 830, 831 (3d Dep't 2008) ("Habeas corpus relief is available only if an inmate can demonstrate that he or she is entitled to *immediate release* from prison.") (emphasis added); *People ex rel. Goldberg v. Warden*, 45 A.D.3d 356 (1st Dep't 2007) ("As petitioner is no longer in the custody of respondent Warden and could not be *immediately released*, the remedy of habeas corpus is unavailable.") (emphasis added); *People ex rel. Cropper v. Taylor*, 48 A.D.3d 852, 853 (3d Dep't 2008) ("[I]nasmuch as petitioner would not be entitled to *immediate release* from prison even if his claims were successful, habeas corpus relief is unavailable here.") (emphasis added).

In fact, the Court of Appeals has long held that an incarcerated person who wishes to vacate an unlawful parole hold cannot do so through a writ of *habeas corpus* if success on the merits would not entitle him or her to immediate release (i.e., if additional holds or charges exist): "[I]n addition to being held on the parole violation, [petitioner] is being held on unrelated pending criminal charges. Because success on the merits in this proceeding would not entitle him to immediate release from custody, the remedy of habeas corpus is unavailable." *People ex rel. Brown v. New York State Div. of Parole*, 70 N.Y.2d 391, 398 (N.Y. 1987) (converting a writ into an Article 78 proceeding *sua sponte* because immediate release could not result); *People ex rel. Goldberg v. Warden*, 45 A.D.3d 356 (1st Dep't 2007) (same); *see also People ex rel. Snell v.*

*Superintendent of Greene Corr. Facility*, 164 A.D.3d 1003, 1004 (3d Dep't 2018) ("Contrary to petitioner's contention, the failure to provide a final parole revocation hearing did not result in the time remaining on [petitioner's remaining] sentence being extinguished. At best, petitioner would only be entitled to vacatur of the parole violation.").

Therefore, under state law, if Plaintiff had any remaining parole holds or pending charges at the time he filed the writ, the court would have been obligated to either convert the proceeding into one for which immediate release was not the sole remedy, or deny the request for relief outright. *See, e.g.*, *People ex rel. Alcantara v. Keyser*, 193 A.D.3d 1147, 141 (3d Dep't 2021), *leave to appeal denied*, 37 N.Y.3d 905, 173 N.E.3d 423 (N.Y. 2021) ("Petitioner's remaining claims have been examined and none establishes the illegality of his incarceration or his entitlement to immediate release.") (citations omitted).

The City also argues that Plaintiff could not be released because DOCCS had not decided if it would appeal the decision. *See* MTD at 11 (claiming that immediate release upon issuance of a writ would "deprive State DOCCS of the ability to effectively appeal."). But the City cites no authority for this claim, and at this stage it would be inappropriate to find that the Plaintiff's detention was privileged as a matter of law, or that the City has met its burden based on the possibility that DOCCS might appeal (they did not). In any event, the writ required Plaintiff's prompt release, and DOCCS did not move to stay this order.

The City Defendants also attempt to distinguish the *Uviles* case from the facts here, but the distinction drawn—that there was "no request to retain Plaintiff in custody," but only "an absence of communication from State DOCCS"—further supports Plaintiff's claim that the detention was not privileged and that all of the Defendants were indifferent to this fact. MTD at 12. *Uviles* is, in fact, analogous to this case, in that the defendants argued that a mere "hold"

notation in that plaintiff's file was justified his continued detention. *Uviles v. City of New York*, *supra* at *2. But the court rejected that reasoning, holding that the "plaintiff plausibly alleges that, at some point during his detention, neither DOCCS nor DOC was any longer relying upon a parole warrant – or, for that matter, a belief that there was reasonable cause for his detention – in denying him release . . . Thus, as pleaded, plaintiff has sufficiently shown that his confinement was not privileged." *Id*.

Finally, the reference to the "reasonable cause" standard is misplaced. MTD at 11 (citing N.Y. Comp. Codes R. & Regs. tit. 9, § 8004.2(c)). This standard only applies to the initial arrest. Once such an arrest is made by a parole officer (not the City or a City employee) the matter is taken to the parole board and a warrant issues based on probable cause, which then initiates the process Plaintiff faced here. *See id*. N.Y. Comp. Codes R. & Regs. tit. 9, § 8004.5. This regulation is inapplicable to an over-detention claim.

### b. State Constitutional Claims

The City's argument that a common law claim is an adequate alternative remedy to a state constitutional claim is directly contradicted by the holding of the Court of Appeals in *Brown v. State of New York*, 89 N.Y.2d 172, 191 (1996). There, the Court of Appeals observed that the state constitution imposed "far more serious" duties upon government officers "than the private wrongs regulated by the common law." *Id*. at 191. Thus, a litigant's right to recover damages for state constitutional violations should not "be dependent upon the availability of a common-law tort cause of action." *Id*. Such common law torts may be analogous to, but are not duplicative of (nor can they replace), the protections of the New York State Constitution:

> The common law of tort deals with the relation between individuals by imposing on one a legal obligation for the benefit of the other and assessing damages for harm occasioned by a failure to fulfill that obligation Common-law duties arise in virtually all relationships and protect against most risks of harm. Constitutional

duties, by contrast, address a limited number of concerns and a limited set of relationships. Constitutions assign rights to individuals and impose duties on the government to regulate the government's actions to protect them. It is the failure to fulfill a stated constitutional duty which may support a claim for damages in a constitutional tort action.

*Id*. at 178–79 (internal citations omitted). And while the Court of Appeals has limited the availability of the *Brown* remedy in subsequent cases, it has done so only where it did not support the two aims of *Brown*: (1) "the private interest that citizens harmed by constitutional violations have an avenue of redress;" and (2) "the public interest that future violations be deterred." *Martinez v. City of Schenectady*, 97 N.Y.2d 78, 83 (N.Y. 2001).

In *Martinez*, the court declined to extend the *Brown* remedy to a plaintiff seeking damages as a result of the state's failure to suppress evidence collected in violation of the Fourth Amendment. *Id*.; MTD at 13. The court held that the "deterrence objective" of *Brown* could be satisfied by the "exclusion of the constitutionally challenged evidence" at the plaintiff's criminal trial, and thus did not warrant an award of damages. *Id*. at 83–84.  But the gravamen of Plaintiff's claims have no similar preclusive remedy, and the tort of false imprisonment seeks redress only for one's non-privileged confinement by any other person; it is not specific to those duties imposed on government officials by the state constitution, and thus does not recognize the important constitutional dimension implicated by the City's callous indifference toward Plaintiff's state due process rights.

Moreover, this district recently reaffirmed precedent grounded in *Brown* which allows state constitutional claims against a municipality to proceed parallel to related § 1983 claims against an individual state actor if the constitutional torts are pled based on a theory of *respondeat superior*. *See Buari v. City of New York*, 530 F.Supp.3d 356, 409–10 (S.D.N.Y. 2021) (allowing a state due process claim against the City to proceed alongside its federal

counterpart against the officers); *see also Alwan v. City of New York*, 311 F. Supp. 3d 570, 587 (E.D.N.Y. 2018) ("Because § 1983 does not authorize respondeat-superior liability, it cannot provide an adequate alternative remedy for Plaintiff's New York State constitutional claims, to the extent they are asserted against the City.") (internal citations omitted); *Logan v. City of Schenectady*, 2019 WL 3803631, at *9 (N.D.N.Y. Aug. 13, 2019) (dismissing state constitutional claims against individual defendants because § 1983 provides am adequate remedy, but declining to dismiss the same against the municipality); *Brown v. City of New York*, 2017 WL 1390678, at *15 (S.D.N.Y. Apr. 17, 2017) (same); *Espinoza v. City of New York*, 194 F. Supp. 3d 203, 208 (E.D.N.Y. 2016) (same).

As in the above-cited cases, Plaintiff pled his state constitutional claims against the City under a theory of *respondeat superior*. C.¶72. Thus, they are cognizable under *Brown* and should survive alongside Plaintiff's claims brough pursuant to § 1983. Consequently, if the *Monell* claim is ultimately dismissed, the same claims would still go forward against the City for violations of the state constitution.

## III.   PLAINTIFF SHOULD BE GIVEN LEAVE TO AMEND, IF THE CURRENT ALLEGATIONS ARE INSUFFICIENT

Plaintiff also asks that, in the event dismissal is granted, he been given leave to replead, to take account of the Court's ruling and to fill in any deficiencies. *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015).

**CONCLUSION**

WHEREFORE, Plaintiff respectfully requests that the City Defendants' motion to dismiss be denied in its entirety, as Plaintiff's First Amended Complaint sufficiently alleges each federal and state cause of action against the City Defendants.

Dated:  New York, New York
       April 4, 2022

Rickner PLLC

By:      /s/

      Rob Rickner

14 Wall Street Suite 1603
New York, New York 10005
Phone: (212) 300-6506
Fax: (888) 390-5401

*Attorney for Plaintiff*

12