UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------x

MODESTO RODRIGUEZ,

Plaintiff,

No. 21-CV-8565 (CM)

-against-

THE CITY OF NEW YORK, WARDEN STEVEN
BASTIAN, OFFICER MICHELLE GONZALEZ,
ANTOINETTE DOUGLAS, AND LACHONDA
LUCAS,

Defendants.

--------------------------------------------------------------x

**MEMORANDUM ORDER AND DECISION GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT**

McMahon, J.

This is a civil rights action. It arises from Plaintiff Modesto Rodriguez's ("Plaintiff") arrest

and incarceration for the violation of a special condition of his parole: possessing a phone with an

operable camera. Plaintiff alleges that his parole officer, Defendant Michelle Gonzalez

("Gonzalez"), imposed this special condition, approved his phone – which had a working camera

– for use, and then charged him with a violation for possessing the device she previously approved.

Plaintiff was arrested and incarcerated in October 2019 for that parole violation. Plaintiff

filed a writ of *habeas corpus*, and on March 19, 2020, Justice Margaret L. Clancy of the Supreme

Court of New York, County of the Bronx, granted the writ, finding insufficient evidence to

establish probable cause for any violation.

After the writ was granted, Plaintiff remained incarcerated for nearly two more weeks. He

1

was ultimately released on March 31, 2020.

Plaintiff now asserts seven claims against various New York City and State defendants: **Count I** for prosecution without probable cause under 42 U.S.C. § 1983 against Officer Gonzalez; **Count II** for violation of due process under 42 U.S.C. § 1983 against Officer Gonzalez; **Count III** for deliberate indifference to over-detention under 42 U.S.C. § 1983 against New York State Department of Corrections and Community Supervision ("DOCCS") Officers Lachonda Lucas and Antoinette Douglas (together with Gonzalez, the "State defendants") and Department of Corrections ("DOC") Warden Steven Bastian; **Count IV** for false imprisonment (common law) against the City of New York (the "City"); **Count V** for negligence (common law) against the City; **Count VI** for violations of Article I §§ 1, 6, 8, 9, 11, and 12 of the New York State Constitution against the City; and **Count VII** for violation of Plaintiff's rights under *Monell v. Department of Soc. Svcs.*, 436 U.S. 658 (1978) against the City.

The State defendants move for summary judgment on Counts I, II, and III on grounds of absolute and qualified immunity, and otherwise move to dismiss the claims pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. The City moves to dismiss Counts III, IV, V, VI, and VII pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

For the following reasons, all motions are granted in part, denied in part.

## FACTUAL BACKGROUND[1]

### A. The Parties

Plaintiff Modesto Rodriguez is a resident of Bronx county who was under parole supervision of DOCCS in 2019. (*See* AC ¶¶2, 10, 18). Plaintiff's underlying conviction was a sex

---

[1] Unless specifically noted, all facts in this section are drawn from the Amended Complaint ("AC"). (Dkt. No. 10).

offense, but not one that involved the use of a cell phone or technology. (*See* Dkt. No. 42 ("Pls. 56.1") at ¶11).[2]

Defendant Michelle Gonzalez is a DOCCS parole officer and was Plaintiff's parole officer in 2019. (AC ¶¶14, 18).

Defendants Lachonda Lucas and Antoinette Douglas are employees of DOCCS who interacted with Plaintiff's counsel following the grant of Plaintiff's writ of *habeas corpus* in 2020. (*Id.* ¶¶15, 16, 35-37).

Defendant the City of New York is a municipal entity that, through the DOC, maintains correctional facilities on Rikers Island where Plaintiff was incarcerated for a parole violation in 2019 and remained incarcerated until March 31, 2020. (*Id.* ¶¶11-12, 17, 30).

Defendant Warden Steven Bastian is an official at Rikers Island, employed by the DOC. (*Id.* ¶13). It is undisputed that Warden Bastian retired from the DOC in February 2020. (*See* Dkt. No. 22 ("MTD Br."), at 5 n. 1 *and* Dkt. No. 27 ("MTD Opp."), at 1 n.1).

### B. The Special Parole Condition and Violation

On October 22, 2019, while Plaintiff was under DOCCS parole supervision, Defendant Gonzalez imposed a special condition of parole prohibiting Plaintiff from having a cell phone with an operable camera. (AC ¶18). That same day, Defendant Gonzalez also allegedly checked the phone that Plaintiff owned and told him that he could use the phone, as it complied with the special condition. (*Id.* ¶20).

Nine days later, on October 31, 2019, Defendant Gonzalez charged Plaintiff with a parole violation for possessing and using the same cell phone she had approved. On or about that date, Plaintiff was arrested and incarcerated at Rikers Island. (*Id.* ¶21). Plaintiff alleges that the only

---

[2] This fact is not in the AC but is asserted in Plaintiff's Rule 56.1 statement in opposition to the State Defendants' motion for summary judgment and is undisputed. It is included and considered for purpose of resolving that motion.

reason he was incarcerated was because Defendant Gonzalez imposed the allegedly unconstitutional special condition on him and then tricked him into violating the special condition by approving his phone for use. (*Id.* ¶23).

On November 13, 2019, a preliminary hearing was held on the charged parole violation. (*Id.* ¶22). The hearing officer found there was probable cause to initiate the parole revocation proceedings. (*Id.*).

## C. Plaintiff's Petition for a Writ of *Habeas Corpus*

In January 2020, Plaintiff filed a petition for writ of *habeas corpus* in the Supreme Court of New York, Bronx County. He argued that (1) the special condition was arbitrary and infringed on his constitutional rights and (2) there was insufficient evidence to support the probable cause determination at his preliminary hearing. (AC ¶25; *see* Dkt. No. 36-1, at 11-15, 19). DOCCS and the warden of the Eric M. Taylor Center, a facility on Rikers Island, were named as respondents. (*See* AC ¶25; Dkt. No. 36-1, at 7).

On March 19, 2020, Justice Clancy issued a decision granting the writ of *habeas corpus* (the "*habeas* decision").[3] Justice Clancy first recognized that, "At this stage of the parole revocation proceedings, the court's power is limited to determining whether the required procedural rules were followed and whether there is sufficient evidence in the record which, if believed, would support the hearing officer's probable cause determination. (Dkt. No. 36-1, at 20). She then found the evidence insufficient to support a finding of probable cause. (*Id.* at 21). Specifically, Justice Clancy found the following: (1) it was "undisputed that two separate parole officers approved of petitioner's possession of that particular cell phone;" (2) it was "undisputed

---

[3] The Court may take notice of and consider the *habeas* petition and decision, as it is integral to Plaintiff's AC, which references and relies on the petition and decision and quotes large portions of it. (*See e.g.*, AC ¶26-28). In considering a motion to dismiss, the court "may consider any . . . documents upon which the complaint relies and which are integral to the complaint." *Subaru Distributors Corp. v. Subaru of America, Inc.*, 425 F.3d 119, 122 (2d Cir. 2005).

that the cell phone was capable of taking pictures . . . because it had a camera;" and (3) "there were

no pictures on the phone taken after the special conditions were imposed." (*Id.* at 22). She

concluded, "it can hardly be a violation of a parole condition for petitioner to possess the very

same photo-capable cell phone that he received permission to possess by his parole officer when

the special condition was imposed." (*Id.*).

While Justice Clancy did "not reach petitioner's constitutional argument concerning the

validity of the special condition at issue," she, "Nevertheless . . . [wa]s compelled to make [certain]

observations" concerning that special condition. (*Id.*; *see* AC ¶27). Herewith her "observations":

> [I]t is difficult to fathom how a blanket restriction on the possession of a cell
> phone with a camera is rationally related to petitioner's past conduct or any
> potential for recidivism. The Court is also at a loss to understand how any parolee
> would be able to comply with this special condition. Many people rely exclusively
> on a cell phone because they cannot afford both a cell phone and a traditional
> land-line telephone. A parolee is required to maintain constant contact with a
> parole officer and to notify parole of any change in circumstances concerning his
> or her release, employment, residence, etc. Given the nature of today's smart
> phones, however, it is impossible to find a cell phone that does not also have a
> camera. The same holds true for the flip phones and slide phones that have all but
> disappeared over the last ten years. Apparently, petitioner was given permission
> to possess one cell phone that no longer exists.

(Dkt. No. 36-1, at 23; AC ¶27). However, as she did not need to decide the constitutional issue in

order to issue the writ, she made no final finding on the constitutionality of the condition, one way

or the other.

Having granted the petition for a writ of *habeas corpus*, Justice Clancy vacated the parole

warrant and ordered that Plaintiff be released and restored to parole supervision, unless some other

valid reason existed to hold Plaintiff in custody. None did. (AC ¶28).

### D. Plaintiff Is Not Released From Custody Until March 31, 2020

Plaintiff alleges that the writ was promptly distributed to DOC and DOCCS officials after

it was granted on March 19, 2020 (AC ¶29) and that Plaintiff's counsel "notified both the DOC

and DOCCS multiple times starting on March 19, 202[0],[4] about the need to release Plaintiff immediately. But nothing was done." (*Id.* ¶38).

Plaintiff asserts that he was not timely released because of an unconstitutional City policy. Specifically, he alleges that it was the official policy of the City "to effectively ignore writs of habeas corpus until DOCCS lifts the parole hold, even if there is no justification for the detention." (*Id.* ¶32). In support of this allegation, Plaintiff quotes DOC Captain Anthony Monastero, head of the Custody Management Unit, who explained in sworn testimony in a separate case, *Uviles v. City of New York*, No. 19-cv-3911, in the Eastern District of New York:

> Q: … [I]s DOC's policy that the warrant remains in effect until the parole hearing determines whether to lift the warrant or not?
>
> A. Well, the correct answer would be that the parole warrant stays in effect until we receive a parole warrant lift. The parolee can leave the hearing, the final hearing or preliminary hearing, and the judgment can be that the parole warrant is no longer active. But at DOC, we can't act on that until we get a parole warrant lift from the New York State DOCCS Division of Parole. Regardless of what happens in the hearing.

(AC ¶32).

Plaintiff further alleges that DOCCS employees Defendants Lucas and Douglas knew about this unconstitutional policy and had the ability to lift the parole hold but "deliberately delayed [lifting the hold], inevitably causing Plaintiff Rodriguez to remain in custody." (*Id.* ¶34; *see id.* ¶¶36-37). Specifically, on March 22, 2020, Defendant Lucas was allegedly informed about the delay in releasing Plaintiff, at which time "she knew the system they use for tracking parole warrants is inaccurate, writing [to Plaintiff] that 'DOCS look up often lists the warrants as being

---

[4] Plaintiff's complaint states that counsel notified DOC and DOCCS on March 19, *2021* and notified Defendant Lucas specifically on March 22, *2021*. The Court (and defendants) assume that the year "2021" is a clerical error and that plaintiff's counsel meant to say "2020," as it is undisputed that all the relevant events in this section of the complaint occurred in 2020 and that Plaintiff was released on March 31, 2020. (*See* Dkt. No. 35 ("State Br."), at 2 n. 2).

active but they are usually not.' (sic)." (*Id.* ¶35). Defendant Lucas told Plaintiff's counsel that "DDOI [Declared Delinquent Other Institution] staff will check the status in a more reliable system" but Plaintiff alleges that she "never actually had DDOI staff check the status" of Plaintiff's parole warrant and "did not direct DDOI take any other steps to ensure Plaintiff Rodriguez's release from custody." (*Id.* ¶36). Similarly, Defendant Douglas allegedly was notified of the court order but likewise "did nothing to secure Plaintiff Rodriguez's release by lifting the parole hold." (*Id.* ¶37).

Plaintiff was not released until March 31, 2020.

It bears noting that March 2020 was the month in which COVID-19 shut down the world. Jail – never a good place to be – was very much a place to be avoided at the outbreak of the COVID-19 epidemic.

### E.  Plaintiff Files Suit

Plaintiff filed this lawsuit on June 29, 2021 in the Supreme Court of the State of New York, Bronx County. (*See* Dkt. No. 1). Defendants timely removed this action to this Court.

After the State Defendants moved to dismiss on December 17, 2021 (Dkt. No. 7), Plaintiff filed an amended complaint. (*See* Dkt. No. 10).

On February 17, 2022, the City moved to dismiss the AC (Dkt. No. 21), and the State defendants filed a Notice of Motion for summary judgment on immunity grounds as well as a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 23). Thereafter, Plaintiff was deposed pursuant to the Court's Individual Rule V(E)(4), and on May 4, 2022, the State defendants renewed their motion to dismiss and motion for summary judgment. (Dkt. No. 34).

## STANDARD

### A.  Motion to Dismiss Pursuant to Rule 12(b)(6)

In order to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To achieve "facial plausibility," a claim must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). To survive a motion to dismiss, the plaintiff must allege facts that "nudge[] [plaintiff's] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Further, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (internal citations omitted).

"In determining the adequacy of a claim under Rule 12(b)(6), consideration is limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated into the complaint by reference, and to matters of which judicial notice may be taken." *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991). The court may consider the full text of documents that are cited in, incorporated by reference in, or "integral" to the complaint. *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Companies, Inc.*, 75 F.3d 801, 809 (2d Cir. 1996).

### B.  Summary Judgment

Summary judgment must be granted when there is "no genuine dispute as to any material fact and the movant[s] [are] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A genuine dispute of material fact

exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. At summary judgment, the movants bear the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Feingold v. New York*, 366 F.3d 138, 148 (2d Cir. 2004).

Once the movants meet that burden, the non-movants may defeat summary judgment only by producing evidence of specific facts that raise a genuine issue for trial. *See* Fed. R. Civ. P. 56(c); *Anderson*, 477 U.S. at 248; *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002). To survive summary judgment, the non-movants must present concrete evidence and rely on more than conclusory or speculative claims. *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir. 1980). In assessing the record to determine whether genuine issues of material fact are in dispute, a court must resolve all ambiguities and draw all reasonable factual inferences in favor of the non-moving party. *See Parkinson v. Cozzolino,* 238 F.3d 145, 150 (2d Cir. 2001).

## DISCUSSION

### I.   The State Defendants' Motion to Dismiss Counts I, II, and III For Failure to State a Claim is Denied; the State Defendants' Motion for Summary Judgment on Counts I, II, and III on Absolute and Qualified Immunity Grounds is Denied in Part, Granted in Part.

The State defendants Officers Gonzalez, Lucas and Douglas move to dismiss Counts I, II, and III for failure to state a claim and also move for summary judgment on these same counts on absolute and qualified immunity grounds. The motion to dismiss is denied; the motion for summary judgment is granted in part, denied in part. The Court will first discuss whether the AC states a claim, and then will turn to whether any of the State defendants is entitled to either absolute or qualified immunity that would preclude moving forward against her on that claim.

**A.  The Motion to Dismiss Count I (Malicious Prosecution) and the Motion for Summary Judgment on Count I Are Both Denied**

   i.  Plaintiff States a Claim for Malicious Prosecution

Plaintiff asserts a claim against Defendant Gonzalez pursuant to 42 U.S.C. § 1983 for prosecution without probable cause, in violation of his Fourth Amendment right "to be free from unreasonable or unlawful searches and seizures." (*See* AC ¶¶43, 45).

"Th[e Supreme] Court's precedents recognize" "a Fourth Amendment claim under § 1983 for malicious prosecution, sometimes referred to as a claim for unreasonable seizure pursuant to legal process." *Thompson v. Clark*, 596 U.S. ___, 142 S.Ct. 1332, 1337 (2022). "To state a § 1983 malicious prosecution claim a plaintiff 'must show a violation of his rights under the Fourth Amendment and must establish the elements of a malicious prosecution claim under state law.'" *Cornelio v. Connecticut*, 32 F.4th 160, 179 (2d Cir. 2022) (quoting *Manganiello v. City of New York*, 612 F.3d 149, 160-61 (2d Cir. 2010)). Under New York law, the elements of a malicious prosecution tort are that "'(1) the defendant initiated a prosecution against plaintiff, (2) without probable cause to believe the proceeding can succeed, (3) the proceeding was begun with malice[,] and[ ] (4) the matter terminated in plaintiff's favor." *Rentas v. Ruffin*, 816 F.3d 214, 220 (2d Cir. 2016) (quoting *Cameron v. City of New York*, 598 F.3d 50, 63 (2d Cir.2010)).

As to the constitutional violation, Plaintiff has sufficiently pleaded a violation of his Fourth Amendment right to be free from unreasonable or unlawful seizure. To satisfy this element, a plaintiff must assert "a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." *Rohman v. New York City Transit Authority (NYCTA)*, 215 F.3d 208, 215 (2d Cir. 2000) (citing *Murphy v. Lynn*, 118 F.3d 938, 944–46 (2d Cir.1997)). As the Second Circuit has explained: "'A plaintiff asserting a Fourth Amendment malicious prosecution claim under § 1983 must . . . show some deprivation of liberty consistent with the concept of "seizure."'"

*Id.* (quoting *Singer v. Fulton County Sheriff*, 63 F.3d 110, 116 (2d Cir.1995)).

In this case, Plaintiff has done so. He asserts that he was wrongfully arrested and incarcerated at Riker's Island after Defendant Gonzalez "manufactur[ed] a parole violation" by first approving Plaintiff's phone, then charging Plaintiff with a violation for possessing that very phone. (*See* AC ¶¶42-46). Plaintiff alleges that as of the date of his parole revocation hearing, "the only reason Plaintiff Rodriguez was incarcerated was because Defendant Gonzalez . . . tricked Plaintiff Rodriguez into violating [the special condition] by telling him he could have his phone." (*Id.* ¶23, ¶43). Plaintiff has sufficiently pleaded a deprivation of his liberty in violation of his Fourth Amendment right.

As to the first element of a malicious prosecution claim under state law, the parties "assum[e]" for the purposes of their briefing that "the malicious prosecution tort is applicable to administrative parole revocation proceedings." (*See* State Br., at 12). The Court does not simply make that assumption; it confirms that the tort is applicable. "Although a 'judicial proceeding is the Sine qua non of a cause of action in malicious prosecution' . . . '[a] claim for malicious prosecution may also lie when an administrative proceeding is commenced which contains sufficient attributes of a judicial proceeding.'" *See Karlyg v. Merino*, No. 20-CV-991, 2021 WL 4222450, at *4, n. 4 (E.D.N.Y. Sept. 15, 2021) (quotations omitted, alterations in original); *see Storman v. Klein*, 395 Fed.Appx. 790, 793 (2d Cir. 2010) (summary order). Such attributes include "'a hearing and trial of the issues on evidence and testimony under oath, with the right of cross-examination.'" *Klein*, 395 Fed.Appx. at 793 (quoting *Groat v. Town Bd. of Town of Glenville*, 426 N.Y.S.2d 339, 341 (N.Y. App. Div. 1980)). In this state, courts have found that parole revocation hearings contain such "'sufficient attributes of a judicial proceeding to support a cause of action for malicious prosecution.'" *Karlyg*, 2021 WL 4222450, at *4, n. 4 (quoting *Nazario v. State*, 884

N.Y.S.2d 580, 590 (N.Y. Ct. Cl. 2009), *aff'd*, 905 N.Y.S.2d 328 (N.Y. App. Div. 2010) and citing cases). And here, Plaintiff's preliminary hearing contains such attributes, including testimony under oath and cross-examination. (*See* Dkt. No. 36-4). Accordingly, the malicious prosecution tort is applicable to Plaintiff's parole revocation proceeding. Plaintiff has alleged that such a prosecution was initiated against him. Plaintiff thus sufficiently pleads the first element.

Second, Plaintiff has alleged there was no probable cause for the proceeding. "[T]he gravamen of the Fourth Amendment claim for malicious prosecution, as [the Supreme] Court has recognized it, is the wrongful initiation of charges without probable cause . . ." *Thompson*, 142 S.Ct. at 1337; *see Manuel v. Joliet*, 580 U.S. 357, 363–364 (2017); *Albright v. Oliver*, 510 U.S. 266, 274-75 (1994). "[P]robable cause must be determined with reference to the facts of each case" and "must be determined by reference to the totality of the circumstances." *Manganiello*, 612 F.3d at 161-62. "Probable cause may . . . exist where the officer has relied on mistaken information, so long as it was reasonable for him to rely on it." *Id.* at 161. "However, 'the failure to make a further inquiry when a reasonable person would have done so may be evidence of lack of probable cause.'" *Id.* (quoting *Colon v. City of New York*, 60 N.Y.2d 78, 82 (1983)). Probable cause is not supported where a prosecutor knowingly uses "'false evidence to obtain a tainted conviction'" or an officer "'fabricat[es] and forward[s] . . . known false evidence.'" *Id.* at 162 (quoting *Ricciuti v. N.Y.C. Transit Authority*, 124 F.3d 123, 130 (2d Cir.1997)).

Here, Defendant Gonzalez contests she had probable cause because Plaintiff was in possession of a phone that violated the special condition. Yet, as discussed further below (*see infra* §I.A.iii), Plaintiff alleges that Defendant Gonzalez "manufactur[ed]" the parole violation itself (*see* AC ¶43) when she inspected Plaintiff's phone and approved it for use. Plaintiff alleges she "set a trap for Plaintiff" (*id.* at ¶20) and absent this "trap," there was no probable cause for the violation

and proceeding. Justice Clancy of the New York State Supreme Court specifically found in the *habeas* proceedings that Gonzalez lacked probable cause to violate Plaintiff on the stated ground, explaining, "it can hardly be a violation of a parole condition for petitioner to possess the very same photo-capable cell phone that he received permission to possess by his parole officer when the special condition was imposed." (Dkt. No. 36-1, at 22). Plaintiff has sufficiently pleaded that Defendant Gonzalez did not have probable cause to initiate the parole revocation proceeding.

Plaintiff has also sufficiently alleged malice. "A lack of probable cause generally creates an inference of malice." *Boyd v. City of New York*, 336 F.3d 72, 78 (2d Cir.2003); *see Rentas*, 816 F.3d at 221-22 ("Actual malice can be inferred when a plaintiff is prosecuted without probable cause."). As the Second Circuit has explained, if "a jury could find that probable cause for the charges against the plaintiffs was lacking . . . that finding alone would support an inference of malice." *Ricciuti v. New York City Transit Auth.*, 124 F.3d 123, 131 (2d Cir. 1997). Plaintiff has sufficiently alleged a lack of probable cause – specifically that the entire violation was a setup and that Justice Clancy's *habeas* decision intimates as much. The Court can properly infer malice from these allegations at the pleading stage.

Finally, Defendant Gonzalez does not dispute that the proceedings terminated favorably for Plaintiff. (*See* State Br., at 20). Plaintiff alleges that Justice Clancy determined there was insufficient evidence to establish probable cause for the parole violation that resulted in Plaintiff's arrest and incarceration at Rikers Island, vacated the parole warrant, and ordered that Plaintiff be released and restored to parole supervision. (*See* AC ¶28). Plaintiff sufficiently pleads this element.

ii. Defendant Gonzalez is Not Entitled to Absolute Immunity on Count I

Defendant Gonzalez argues that she is entitled to absolute immunity on Plaintiff's claim for malicious prosecution (Count I) because she was also "the administrative prosecutor at

Plaintiff's preliminary hearing" who "appeared representing DOCCS to present the case . . . chose the charge on which to proceed, . . . called and questioned a witness, and chose not to make a summation." (State Br., at 13).

Plaintiff does not dispute that Defendant Gonzalez is entitled to absolute immunity for the actions she took in a prosecutorial role at the preliminary hearing. (*See* SJ Opp., at 4). Under Second Circuit law, parole officers who "initiat[e] parole revocation proceedings and . . . present[] the case for revocation to hearing officers" are to "receive absolute immunity for their actions . . . because such acts are prosecutorial in nature." *Scotto v. Almenas*, 143 F.3d 105, 112 (2d Cir. 1998); *see also Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010).

Plaintiff counters, however, Defendant Gonzalez "is nonetheless liable" for the acts she took prior to initiating the prosecution, specifically her actions related to "fabricating the grounds for the arrest and prosecution." (SJ Opp., at 4). Defendant Gonzalez "cannot immunize herself from liability for these acts by later initiating the prosecution itself." (*Id.*).

Plaintiff is correct.

"A government official cannot immunize for Section 1983 purposes all unlawful conduct performed prior to and independent of a later immunized act, merely by subsequently engaging in conduct entitled absolute immunity." *Victory v. Pataki*, 814 F.3d 47, 66–67 (2d Cir. 2016), *as amended* (Feb. 24, 2016). For example, while the Second Circuit has held that acts of parole officers that "are prosecutorial in nature" entitle those officers to absolute immunity, it has also held that acts by those officers that are *not* prosecutorial in nature *are not protected* by absolute immunity. *See Scotto*, 143 F.3d at 112-113. Non-immunized acts include "preparing [a] parole violation report and . . . recommending that an arrest warrant issue." *Id.* at 112; *see also Dettelis v. Sharbaugh*, 919 F.3d 161, 164 (2d Cir. 2019) ("[I]n performing investigatory duties, for

example, the filing of a violation report or recommending the issuance of an arrest warrant, a parole officer is entitled only to qualified immunity.") (citing cases). In so finding, the Second Circuit has specifically "decline[d] to extend absolute immunity more than is strictly necessary to safeguard the independent exercise of the prosecutorial function." *Scotto*, 143 F.3d at 113.

Here, Defendant Gonzalez is *not* entitled to absolute immunity for actions that were not prosecutorial in nature. (*See* AC ¶¶43, 45). These actions include the following: Defendant Gonzalez allegedly "checked the phone Plaintiff Rodriguez owned and affirmatively told him that this specific phone was approved and he could use it," and then "violated Plaintiff Rodriguez for having the cell phone that she knew about, had checked, and previously approved." (*Id.* ¶¶20-21). Plaintiff claims that Defendant Gonzalez essentially manufactured the probable cause that became the basis for the parole revocation proceedings and his arrest and incarceration. There is nothing "prosecutorial" about any of that.

Defendant Gonzalez is not entitled to absolute immunity that would shield her from prosecution on Count I.

   iii.  <u>Genuine Issues of Fact Remain as to Whether Defendant Gonzalez is Entitled to Qualified Immunity on Count I</u>

In the alternative, Defendant Gonzalez argues that she is entitled to qualified immunity on Count I for the actions she is alleged to have taken prior to the preliminary hearing.

"The defense of qualified immunity 'protects government officials from suit if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Yunus v. Robinson*, No. 17-CV-5839, 2019 WL 168544, at *3 (S.D.N.Y. Jan. 11, 2019) (quoting *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013)). "The qualified immunity analysis asks whether (1) a plaintiff has sufficiently pled the violation of a constitutional or statutory right, (2) whether that right was 'clearly established,' and

(3) whether it was 'objectively reasonable' for the official to believe their conduct was lawful." *Id.* (quoting *Gonzalez*, 728 F.3d at 154-55). If an officer's conduct does not violate a "clearly established statutory or constitutional right of which a reasonable person would have known" and it was "objectively reasonable" for the officer to believe that her actions were lawful at the time, the officer is entitled to qualified immunity. *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007) (quoting *Cerrone v. Brown*, 246 F.3d 194, 199 (2d Cir. 2001)).

As explained above, Plaintiff has sufficiently pleaded that he was prosecuted without probable cause in violation of his Fourth Amendment right. (*See* AC ¶¶43, 45). "The right not to be arrested or prosecuted without probable cause has, of course, long been a clearly established constitutional right." *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991). Having pled violation of a clearly established constitutional right, Plaintiff's malicious prosecution claim "therefore turn[s] on whether the defendant officer['s] probable cause determination was objectively reasonable . . ." *Betts v. Shearman*, 751 F.3d 78, 84 (2d Cir. 2014).

Plaintiff argues that as a matter of law it was "objectively unreasonable" for Defendant Gonzalez to believe she had probable cause to arrest where she "fabricated" the parole violation by approving his phone and then charged Plaintiff with a violation for having the phone she approved. (SJ Opp., at 5-6). Plaintiff relies on the Second Circuit's decision in *Scotto v. Almenas*, 143 F.3d 105 (2d Cir. 1998). In that case, the Court of Appeals held that a parole officer could not "establish his entitlement to qualified immunity as a matter of law" where the plaintiff alleged that the officer "fabricated a parole violation and arrested him knowing he lacked probable cause to do so." *Id.* at 113. The Second Circuit explained, "Such conduct, if proved, would plainly violate [the plaintiff's] clearly established right to be free from arrest in the absence of probable cause." *Id.* "Moreover, it would be objectively unreasonable for [the officer] to believe he had probable cause

to arrest [plaintiff] if [officer] himself fabricated the grounds for arrest." *Id.*

In *Scotto*, the plaintiff was prohibited, as a special condition of parole, from "participating in any business without the approval of his parole officer." *Id.* The plaintiff alleged that he sought his parole officer's approval to participate in a redevelopment project for a restaurant and that the parole officer was "supportive" of the initiative. *Id.* at 108. With that encouragement, the plaintiff entered into a "Consultant Agreement" with the restaurant owner for the operation of a restaurant. *Id.* The owner, in turn, allegedly approached plaintiff's parole officer to enlist his help in preventing plaintiff from pursuing a civil suit against the owner when the plaintiff's relationship with the restaurant owner soured. *Id.* at 108-109. The parole officer charged the plaintiff with various parole violations, including that the plaintiff entered into the business contract without notifying the parole officer. *Id.* at 109. The plaintiff was arrested. *Id.* Five days later, the plaintiff obtained a writ of *habeas corpus* from a state court judge and was released. The plaintiff thereafter sued for malicious prosecution, among other claims. On appeal, the Second Circuit determined that on the facts alleged, "further factual development, either at trial or at the summary judgment stage, will be necessary to determine whether qualified immunity is available to [the parole officer]." *Id.* at 113.

Since *Scotto*, district courts have evaluated different circumstances in determining whether an officer was entitled to qualified immunity as a matter of law on a §1983 claim for malicious prosecution. For example, in *Richardson v. City of New York*, No. 11 Civ. 02320, 2013 WL 6476818 (S.D.N.Y. Dec. 10, 2013), Judge Schofield declined to dismiss a claim for malicious prosecution against a police captain, finding the captain was not entitled to qualified immunity as a matter of law where there were "disputed issues of fact exist as to whether [the captain's] conduct violated clearly established statutory or constitutional rights" and where plaintiff "raised triable

questions of fact as to whether there was probable cause to arrest and charge him." *Id.* at *9.

In Judge Schofield's case, the plaintiff was under parole supervision when he was involved in an altercation with a few police officers, including the captain. *Id.* at *1-2. In that altercation, the plaintiff was allegedly assaulted, tackled, and beaten by the officers. *Id.* The plaintiff was arrested and charged in criminal court with assault on the captain, who was also the arresting officer. *Id.* at *3. The plaintiff plead not guilty and posted bail. After the plaintiff was released, the plaintiff's parole officer interviewed the captain and, based on that interview, charged the plaintiff with a parole violation of "'punch[ing] the arresting officer . . . in the face'"; the plaintiff was remanded to Rikers Island. *Id.*

The plaintiff requested a probable cause hearing. At that hearing, the hearing officer found the captain's testimony "incredulous" [sic] and found no probable cause for the charge of assaulting a police officer. *Id.* The hearing officer lifted the warrant.

After being released, the plaintiff sued for, *inter alia*, malicious prosecution. In declining to dismiss the claim for malicious prosecution, Judge Schofield found there were "disputed issues of fact exist as to whether [the captain's] conduct violated clearly established statutory or constitutional rights" and where plaintiff "raised triable questions of fact as to whether there was probable cause to arrest and charge him." *Id.* at *9. Judge Schofield noted in particular that "a reasonable jury could find that [the captain] lacked probable cause on the basis of the assault charge to seek Plaintiff's parole revocation or to prosecute him in criminal court . . ." *Id.*

Likewise, here, Plaintiff has "raised triable questions of fact as to whether there was probable cause to arrest and charge him." *See id.*

Defendant Gonzalez argues that it was objectively reasonable for Defendant Gonzalez to believe she had probable cause because Plaintiff did not have permission to have a cell phone with

a camera, and Plaintiff was found with a phone with an operable camera. (State Br., at 15). She argues that this alone "gave a reasonable basis for her to think Plaintiff was in violation" of the special condition. (*Id.*). She adds that her determination is reinforced by the fact that the hearing officer agreed there was probable cause (*Id.*; *see* AC ¶23).

However, Defendant Gonzalez cites no case establishing that the hearing officer's approval of Defendant Gonzalez's probable cause determination in and of itself establishes that Defendant Gonzalez's probable cause determination was objectively reasonable as a matter of law. And the law is clear that "it would be objectively unreasonable for [a parole officer] to believe he had probable cause . . . if [he] fabricated the grounds for arrest." *Scotto*, 143 F.3d at 113. Moreover, a New York State Supreme Court Justice concluded that Officer Gonzalez did *not* have probable cause, citing to facts which suggest that Officer Gonzalez could not possibly have thought otherwise. Justice Clancy found that both Gonzalez and a second parole officer, Officer Castillo, approved Plaintiff's use of the very phone whose possession underlay the violation. (*See* Dkt. No. 36-1, at 22). At the very least this raises a genuine issue of fact on the question of objective reasonableness; in the opinion of this court, it might come close to resolving that issue in Plaintiff's favor.[5]

In support of his claim, Plaintiff presents his own sworn deposition testimony testifying as to the alleged setup, as well as the testimony of Defendant Gonzalez at the underlying preliminary hearing, where she testified that she checked Plaintiff's phone after imposing that special condition. (*See* Pls. 56.1, at ¶¶4, 12). Plaintiff also presents the findings of the court in the *habeas* decision (*id.*), where Justice Clancy noted that: (1) it was "undisputed that two separate parole officers approved of petitioner's possession of that particular cell phone"; (2) it was "undisputed

---

[5] Plaintiff does not cross-move for summary judgment in his favor on this issue, however, so I won't go there.

that the cell phone was capable of taking pictures . . . because it had a camera"; and (3) "there were no pictures on the phone taken after the special conditions were imposed." (*See* Dkt. No. 36-1, at 22). The Court finds that Plaintiff has proffered sufficient evidence to raise a genuine issue of material fact on objective reasonableness, thereby defeating Defendant Gonzalez's motion for qualified immunity.

### B. The Motion to Dismiss Count II (Due Process) is Denied; the Motion for Summary Judgment on Count II Is Granted

    i.   Plaintiff States a Claim for Violation of His Due Process Rights

Plaintiff alleges that Defendant Gonzalez violated his Fourteenth Amendment right to due process by imposing the special condition on him, approving his phone despite the imposition of the special condition, and then charging him with a violation "without warning." (AC ¶48). Plaintiff alleges that Defendant Gonzalez's imposition of the special condition was unconstitutional because the condition "had no rational relation to Plaintiff's past or potential future conduct, and was functionally impossible to follow" (*id.* ¶49); however, his second cause of action is grounded not in the unconstitutionality of the condition itself[6] but in the alleged due process violations -- both of imposing the condition and then of charging him with violating the condition without regard to his due process rights. This is reflected in the way the claim is phrased and in the caption of the claim, which states: "Due Process Violation Under 42 U.S.C. §1983 Against Officer Gonzalez." (*See* AC, at p. 8).

Defendant Gonzalez challenges that because Plaintiff "does not distinguish whether his claim regarding the camera condition is under procedural or substantive due process . . . Plaintiff fails to state a cause of action on that basis alone." (State Br., at 22). Defendant Gonzalez further

---

[6] This, the reader will recall, is the issue that Justice Clancy did not reach -- though she intimated that the constitutionality of the condition was questionable.

argues that Plaintiff fails to plead either a substantive or procedural due process claim in any event because he fails to identify any liberty interest that was violated or how the imposition of the camera condition was a "gross abuse" of authority. (*Id.*).

In his brief in opposition to the motion for summary judgment, Plaintiff argues that Defendant Gonzalez's imposition of the special condition "likely violates both procedural and substantive due process" and urges that he can he can sustain a due process claim against Defendant Gonzalez on the grounds that the imposition of the condition violated "multiple liberty interests" guaranteed by the 14th Amendment. (SJ Opp., at 16). He maintains that the imposition of the special condition was arbitrary and capricious in violation of the due process clause. (*Id.* at 7).[7]

The Court finds that Plaintiff has failed to state a procedural due process claim but states a claim for violation of his substantive due process rights.

*1. Procedural Due Process*

"[T]he procedural component [of the due process clause] bars 'the deprivation by state action of a constitutionally protected interest in life, liberty, or property . . . without due process of law.'" *Walker v. Mattingly*, No. 09-cv-845, 2012 WL 1160772, at *5 (W.D.N.Y. Apr. 5, 2012) (citing *Zinernon v. Burch*, 494 U.S. 113, 125 (1990)). "'To award damages under 42 U.S.C. § 1983 for an alleged violation of procedural due process, a court must find that, as the result of conduct performed under color of state law, the plaintiff was deprived of life, liberty, or property without due process of law.'" *Id.* (quoting *Bedoya v. Coughlin*, 91 F.3d 349, 351 (2d Cir.1996)).

There is no dispute in this case that Defendant Gonzalez acted under color of state law.

---

[7] Plaintiff also asks that in the event that the Court finds the claim unclear that he be granted leave to replead. There is little question that the claim is "unclear" but the application for leave to replead is denied, for reasons that will become clear to the reader.

What remains to be assessed to determine "the viability of [plaintiff's] procedural due process claim" is "(1) whether [plaintiff] possessed a liberty or property interest and, if so, (2) what process [plaintiff] was due before he could be deprived of that interest." *Abascal v. Bellamy*, No. 10-cv-1406, 2011 WL 2436931, at *3 (S.D.N.Y. Jun. 8, 2011) (citing *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 313 (2d Cir. 2002)).

Plaintiff has not identified a protected property interest; instead, he argues that the imposition of the condition violated "multiple liberty interests" (none of which is specified). (SJ Opp., at 16).

Insofar as the liberty interest of parolees are concerned, these rights "have not been well-defined." *Singleton v. Doe*, 210 F. Supp. 3d 359, 372 (E.D.N.Y. 2016). Of course, "'[p]arolees are . . . not without constitutional rights.'" *Id* (quoting *United States ex rel Sperling v. Fitzpatrick*, 426 F.2d 1161, 1164 (2d Cir. 1970)) (alterations in original). However, "Parolees are not entitled to the same level of absolute liberty afforded other citizens. Instead, their liberty rights are 'properly dependent on observance of special parole restrictions.'" *Cusamano v. Alexander*, 691 F. Supp. 2d 312, 319 (N.D.N.Y. 2009) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972)); *see Singleton*, 210 F. Supp. 3d at 372 (citing cases). "The status of a parolee is frequently described as 'unique' because he is 'neither physically imprisoned nor free to move at will.'" *Cusamano*, 691 F. Supp. 2d at 319 ( (quoting *United States v. Polito*, 583 F.2d 48, 54 (2d Cir. 1978)).

Under N.Y. Comp. Codes R. & Regs., tit. 9, § 8003.3, parolees may be subject to special conditions – the imposition of which is left to the discretion of the New York State Board of Parole and parole officers. Specifically, this regulation states:

> A special condition may be imposed upon a releasee either prior or subsequent to release. The releasee shall be provided with a written copy of each special condition imposed. Each special condition may be imposed by a member or members of the

Board of Parole, an authorized representative of the Division of Parole, or a parole officer.

*Id.* The Parole Board or parole officer's discretionary imposition of special conditions under this title is "not subject to judicial review in the absence of a showing that the board or its agents acted in an arbitrary and capricious manner." *Pena*, 2002 WL 31886175, at *9. Moreover, "Review of conditions of parole are generally matters for state courts." *Id.*; *see Walker*, 2012 WL 1160772, at *6.

Observing such a regulatory scheme, some courts in this Circuit have found that parolees do not have a "protected liberty interest in being free from special conditions." *See Pena v. Travis*, No. 01 Civ. 8534 SAS, 2002 WL 31886175, at *13 (S.D.N.Y. Dec. 27, 2002); *see also Maldonado v. Mattingly*, No. 11-CV-1091Sr, 2019 WL 5784940, at *7 (W.D.N.Y. Nov. 6, 2019); *Cusamano*, 691 F. Supp. 2d at 319; *Walker*, 2012 WL 1160772, at *6 (citing cases).

On the other hand, some courts in this Circuit take the position that parolees have "some" due process right to be free from *certain* special conditions of parole, and that "parolees are entitled to some form of due process in the imposition of special conditions of parole." *See Pollard v. United States Parole Comm'n*, No. 15-CV-9131 (KBF), 2016 WL 3167229, at *4 (S.D.N.Y. June 6, 2016); *see also Singleton*, 210 F. Supp. 3d at 372-74; *Yunus*, 2019 WL 168544, at *20.

Those courts that have identified "some" due process right in the context of state-imposed parole conditions suggest there must be such a right for various reasons, including that under Supreme Court and Second Circuit precedent, it is established that: (1) parole revocations implicate a parolee's due process rights; (2) due process protections attach in the related field of federal conditions of supervised release; (3) parolees "occupy the highest end of a 'continuum' of liberty interests afforded to prisoners'"; and (4) impermissibly vague special conditions of parole have been struck down as violative of the due process clause. *See Singleton*, 210 F. Supp. 3d at

372-73; *Pollard*, 2016 WL 3167229, at *4.

But neither the Second Circuit nor the Supreme Court has ever decided whether the courts that have found a due process liberty interest in being free from certain state-imposed conditions of parole or those that have not are correct.

This Court agrees with the view of the courts in *Singleton*, *Pollard*, and *Yunus* that parolees have some liberty interest in being free from certain special conditions of parole.

Yet, even those courts that recognize "some" due process right related to the imposition of special conditions of parole also recognize that it is unsettled what "process . . . is due to a . . . sex offender before he is subject to certain special conditions of parole." *Singleton*, 210 F. Supp. 3d at 374 (citing cases).

Plaintiff himself does not offer any indication of what process he believes he was due. Accordingly, even if Plaintiff had a constitutionally protected interest in being free from the special condition imposed in this case, Plaintiff's procedural due process claim must fail on the second prong – he fails to plead what process, if any, he was due before that condition could be imposed.

Plaintiff fails to state a procedural due process claim.

### 2. *Substantive Due Process*

"Substantive due process protects individuals against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense." *Lawrence v. Achtyl*, 20 F.3d 529, 537 (2d Cir. 1994). "'The first step in substantive due process analysis is to identify the constitutional right at stake.'" *Hurd v. Fredenburgh*, 984 F.3d 1075, 1084 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 109 (2021) (quoting *Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (2d Cir. 1995). "Next, the plaintiff 'must demonstrate that the state action was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Id.* (quoting *Southerland v. City*

*of New York*, 680 F.3d 127, 151-52 (2d Cir. 2012)); *see Scott v. Rosenberger*, No. 19-CV-1769,

2020 WL 4274226, at *5 (S.D.N.Y. Jul. 24, 2020) (quoting *McCaul v. Ardsley Union Free Sch.

Dist.*, 514 F. App'x 1, 3 (2d Cir. 2013) ("'To plead a substantive due process claim, a plaintiff must

assert that: (1) a constitutionally cognizable property or liberty interest is at stake, and (2)

defendants' alleged acts were arbitrary, conscience-shocking, or oppressive in the constitutional

sense . . .'")).

As to the first step – identifying the constitutional right – as discussed in the preceding

section on procedural due process, the Court agrees that Plaintiff had a liberty interest in being free

from certain state-imposed special conditions of parole. (*See supra*, at §I.B.i.1).

However, "To the extent that a parolee's special conditions may implicate his liberty

interests, those liberty interests are not infringed 'in the absence of a showing that the [parole]

board or its agents acted in an arbitrary and capricious manner.'" *Singleton*, 210 F. Supp. 3d at

373. As the Second Circuit explained in *Birzon v. King*, 469 F.2d 1241 (2d Cir.1972):

> [W]hen a convict is conditionally released on parole, the Government retains a
> substantial interest in insuring that its rehabilitative goal is not frustrated and that
> the public is protected from further criminal acts by the parolee. Although a parolee
> should enjoy greater freedom in many respects than a prisoner, we see no reason
> why the Government may not impose restrictions on the rights of the parolee that
> are reasonably and necessarily related to the interests that the Government retains
> after his conditional release.

*Id.* at 1243; *see Yunus*, 2019 WL 168544, at *20. Thus, if a condition is imposed that bears "a

reasonable relationship to the parolee's prior conduct or to a legitimate government interest such

as rehabilitation, the prevention of recidivism and future offenses, and protection of the public," it

is not arbitrary and capricious and does not violate the parolee's due process rights. *Yunus*, 2019

WL 168544, at *20 (citing *Singleton*, 210 F. Supp. 3d at 372–74 (citing cases)). By contrast, if the

condition bears no such "reasonable relationship," the parolee may properly challenge that

condition as violative of his limited due process right to be free from conditions that are not

reasonably related to his prior conduct or to the government's interest in his rehabilitation. *See Singleton*, 210 F. Supp. 3d at 74 ("as a parolee, Plaintiff has a limited due process right that entitles him to conditions of parole that are reasonably related to his prior conduct or to the government's interest in his rehabilitation").

Here, Plaintiff has plead that Defendant Gonzalez's imposition of the special condition was arbitrary and capricious – oppressive – and in violation of his due process rights because the special condition "had no rational relation to Plaintiff's past or potential future conduct, and was functionally impossible to follow given that all generally available cell phones have cameras." (AC ¶49). I agree with Plaintiff that these allegations sufficiently plead a substantive due process claim.

### ii.  Defendant Gonzalez is Entitled to Qualified Immunity on Count II

Defendant Gonzalez argues she is entitled to qualified immunity on Count II because her conduct did not violate any "clearly established" substantive due process right.[8]

For the reasons that follow, the Court agrees.

Courts may grant qualified immunity on the ground that a purported right was not "clearly established" by prior case law. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). To be clearly established, a right must be sufficiently clear that every "reasonable official would [have understood] that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). While it is not necessary that "the very action in question" have been previously held unlawful, "in the light of pre-existing law, the unlawfulness of the officer's conduct must be apparent." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1866–67 (2017) (internal quotation marks omitted).

---

[8] If plaintiff had actually pleaded a procedural due process claim, it would also have been dismissed on qualified immunity grounds, since the law concerning what process a sex offender is due before he is subjected to certain special conditions of parole is obviously unsettled. *See Singleton*, 210 F. Supp. 3d at 374 (citing cases).

In other words, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011); *White v. Pauly*, 580 U.S. 73, 137 S. Ct. 548, 551 (2017)). This standard protects the balance between vindication of constitutional rights and government officials' effective performance of their duties by ensuring that officials can "'reasonably . . . anticipate when their conduct may give rise to liability for damages.'" *Anderson*, 483 U.S. at 639 (quoting *Davis v. Scherer*, 468 U.S. 183, 195 (1984)).

"A legal principle is clearly established in the qualified immunity context either when supported by 'controlling authority' or a 'robust 'consensus of cases of persuasive authority.'" *Wagschal v. Skoufis*, 442 F.Supp.3d 612, 624 (S.D.N.Y. 2020) (quoting *al-Kidd*, 563 U.S. at 742). "Only Supreme Court and Second Circuit precedent existing at the time of the alleged violation is relevant in deciding whether a right is clearly established." *Moore v. Vega*, 371 F.3d 110, 114 (2d Cir. 2004); *see Wagschal*, 442 F.Supp.3d at 624 (quoting *Okin v. Vill. of Cornwall–On–Hudson Police Dep't*, 577 F.3d 415, 433 (2d Cir. 2009)) ("For controlling authority, this Court generally 'look[s] to Supreme Court and Second Circuit precedent existing at the time of the alleged violation to determine whether the conduct violated a clearly established right.'").

As this Court has noted on previous occasions, the Supreme Court has implied in certain circumstances that circuit precedent alone may be insufficient support for a finding of "clearly established law" but it has never explicitly held as much in the qualified immunity context. *See Wagschal*, 442 F.Supp.3d at 624 (citing cases). Indeed, in a recent case on qualified immunity, *City of Tahlequah, Oklahoma v. Bond*, 142 S.Ct. 9 (2021), the Supreme Court admonished the Tenth Circuit for finding a right "clearly established" on the grounds that the Tenth Circuit relied on its own cases that were factually inapposite and that "did not come[] close to establishing that the officers' conduct was unlawful" but *not* on the grounds that circuit court cases cannot create a

clearly established right. *See id.* at 11-12. For this reason, this Court will consider Second Circuit precedent in determining whether the right in this case was clearly established.

"To determine whether a particular right was clearly established at the time defendants acted, a court should consider: '(1) whether the right in question was defined with "reasonable specificity"; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.'" *Calhoun v. N.Y. State Div. of Parole Officers*, 999 F.2d 647, 654 (2d Cir. 1993) (quoting *Jermosen v. Smith*, 945 F.2d 547, 550 (2d Cir.1991), *cert. denied*, 503 U.S. 962 (1992)).

Although, as the Court has discussed in the preceding section, Plaintiff has pleaded a violation of *some* substantive due process right in this case, "the qualified immunity analysis requires greater particularity." *Yunus*, 2019 WL 168544, at *19 (citing *White v. Pauly*, 137 S. Ct. 548, 551-52 (2017)). "[I]n the qualified immunity analysis, the Supreme Court has admonished that rights should not be defined at a high level of generality and instead must be 'particularized to the facts of the case.'" *Hurd*, 984 F.3d at 1084 (quoting *White v. Pauly*, —— U.S. ——, 137 S. Ct. 548, 552, 196 L.Ed.2d 463 (2017)); *see Bond*, 142 S.Ct. at 11 ("We have repeatedly told courts not to define clearly established law at too high a level of generality"). As explained above, the law and right must be "sufficiently clear" (*Anderson*, 483 U.S. at 640), "apparent" (*Ziglar*, 137 S. Ct. at 1867), or "beyond debate." *Ashcroft*, 131 S.Ct. at 2083. Any other construction would render it entirely impossible for officials to "'reasonably . . . anticipate when their conduct may give rise to liability for damages'" and thus unable to engage in effective performance of their duties. *Anderson*, 483 U.S. at 639.

A parolee's due process right to be free from state-imposed special conditions of parole

restricting technology use was *not* clearly established in 2019, which is when the condition at issue in this case was imposed. There were certainly Second Circuit decisions on the books that invalidated special conditions restricting access to technology in federal conditions of supervised release. *See Yunus*, 2019 WL 168544, at *23 (citing *United States v. Sofsky*, 287 F.3d 122, 126 (2d Cir. 2002) and *United States v. Peterson*, 248 F.3d 79, 82-84 (2d Cir. 2001)). Most of these cases involve First Amendment or other challenges – not due process challenges – to internet restrictions, which restrictions were deemed unduly draconian in light of the facts of the underlying crime. *See United States v. Eaglin*, 913 F.3d 88, 97-98 (2d Cir. 2019) (discussing cases).

However, these cases do not govern state parole conditions. Federal law specifically limits what sorts of conditions can be imposed on a supervised releasee, *see* 18 U.S.C. §§ 3553(a), 3563(b), and these cases were decided in the context of that law. Neither the Supreme Court nor the Second Circuit has ever extended the reasoning of those cases to parole conditions imposed on state parolees, as opposed to federal supervised releasees.

In the context of state parole conditions, the law is not so clearly established. My colleague Judge Nathan's 2019 decision in *Yunus* is instructive in this regard. In *Yunus*, the plaintiff was a parolee and sex offender who was subject to certain special conditions of parole, including restrictions on possessing a smartphone and laptop. *Yunus*, 2019 WL 168544, at *1. Plaintiff was subject to re-incarceration for possessing a smartphone and laptop and sued under 42 U.S.C. § 1983, alleging among other things that the special conditions of parole violated his rights under the due process clause. *Id.* Judge Nathan found that the state parole officer's imposition of a parole condition restricting Plaintiff's access to technology was shielded from suit by qualified immunity, because "Plaintiff's due process rights here were not clearly established for the purposes of qualified immunity." *Id.* at *23. Specifically, Judge Nathan noted that plaintiff failed to identify a

case that clearly established that parole conditions restricting his access to technology were unlawful. *Id.* She pointed out that federal cases interpreting the "somewhat more stringent statutory standard imposed" on conditions of federal supervised release involve a "different legal standard" and "are not controlling authority as to the constitutional analysis of state parole conditions." *Id.* And while she acknowledged at least one district court case, *Singleton*, "sustain[ed] on summary judgment a challenge to a parole condition limiting a parolee's ability to own a phone with a camera where there was no evidence that it was related to prior conduct," she noted that the court in that case also granted the defendant's motion for qualified immunity, on the grounds that "due process rights in this context are 'not clearly defined.'" *Id.* (quoting *Singleton*, 210 F. Supp. 3d at 374).

> Judge Nathan explained:

> [W]hile a consensus is emerging that it is arbitrary and capricious under the Due Process Clause to impose these kinds of technology and internet restrictions without an individualized link to prior conduct or another legitimate government interest, it has not yet been sufficiently clearly established for the purposes of the qualified immunity analysis.

*Id.* Accordingly, Judge Nathan held that the parole officer was entitled to qualified immunity on plaintiff's due process claim challenging the parole conditions restricting his access to technology.

In *Singleton*, the plaintiff was a parolee and designated "discretionary sex offender" who brought a § 1983 action against two parole officers and a psychologist for alleged violations of his constitutional due process rights after special conditions were imposed on him that, *inter alia*, restricted his use of a cellular telephone. *Singleton*, 210 F. Supp. 3d at 362. Like Rodriguez, the plaintiff in *Singleton*, was prohibited from possessing a cell phone "that is video or photo capable." *Id.* at 363. Later, plaintiff was found with cell phone that had a camera and explicit photos on it, whereupon he was forbidden to have a cell phone at all. *Id.* at 363. The plaintiff sued both for money damages and for injunctive relief; plaintiff specifically challenged the special condition

prohibiting his use of a cell phone as violating his due process rights. Defendants moved for summary judgment, including on the ground that they were entitled to qualified immunity for the imposition of the special conditions.

My Eastern District colleague, Chief Judge Brodie, determined that plaintiff could not recover money damages from Defendants for the special conditions imposed because, "Although parolees are entitled to certain limited due process rights in the conditions of their parole, those due process rights are not clearly defined." *Id.* at 374. Judge Brodie recognized that neither the Supreme Court nor the Second Circuit had clearly established what due process rights a sex offender has in being free from certain special conditions of parole.

Likewise, here, Plaintiff fails to point to any law that "clearly establishes" his due process right to be free from the condition imposed in this case. Curiously, Plaintiff points to both *Singleton* and *Yunus*, in which the courts concluded that no such right had yet been clearly established. Plaintiff also points to *Lando v. Annucci*, No. 9:18-CV-1472 (TJM/TWD), 2021 WL 1131475, at *6 (N.D.N.Y. Mar. 4, 2021), *R&R adopted sub nom.*, 2021 WL 1124721 (N.D.N.Y. Mar. 24, 2021), which did not deal with cell phone restrictions at all. *Id.* at *7.

Principally, Plaintiff relies on *Packingham v. North Carolina*, 137 S. Ct. 1730 (2017), in which the Supreme Court struck down a North Carolina statute that made it a felony for convicted sex offenders to access social media as violative of the First Amendment. Plaintiff argues that "both the *Singleton* and *Packingham* decisions (and their progeny)" demonstrate that it is clearly established that his "particular cell phone restriction is unconstitutional." (SJ Opp., at 8).

Plaintiff's reading of the law is simply incorrect. As stated previously, *Singleton* expressly found no clearly established due process right for the purpose of its qualified immunity analysis. And *Packingham* does not deal with due process at all. Moreover, since *Packingham* was decided,

several courts in this Circuit have considered the question of whether it applies to conditions of parole at all. *See Lopez v. Stanford*, No. 18CV3493RRMLB, 2020 WL 6900909, at *9 (E.D.N.Y. Nov. 24, 2020), *app. dism.*, 20-4279 (2d Cir. 2021); *Yunus*, 2019 WL 168544, at *16. The consensus is that "it has not been established in this jurisdiction that [*Packingham*] applies to conditions of supervised release and a number of other federal courts have indicated that it might not." *Yunus*, 2019 WL 168544, at *17 (citing *United States v. Rock*, 863 F.3d 827, 831 (D.C. Cir. 2017). Plaintiff thus has not shown any "clearly established" due process right under *Packingham*, *Singleton*, or any other controlling case law.

Defendant Gonzalez is entitled to qualified immunity shielding him from Plaintiff's due process claim. Accordingly, her motion for summary judgment as to Count II is granted and the claim dismissed.

## C. The State Defendants' Motion to Dismiss Count III (Deliberate Indifference to Over-Detention) Is Denied; the Motion for Summary Judgment on Count III is Denied.

### i. Plaintiff States a Claim for Deliberate Indifference to Over-detention Against Defendants Douglas and Lucas

Plaintiff alleges that his continued incarceration between March 19, when the *habeas* decision issued, and March 3, when he was finally released, violated his Eighth and Fourteenth Amendment rights, and Defendants Douglas and Lucas are liable for that over-detention pursuant to §1983 for their deliberate indifference to this over-detention. (*See* AC ¶¶54-56). Plaintiff argues that he "plead sufficient facts to establish either an Eighth or a Fourteenth Amendment violation" on his over-detention claim. (SJ Opp., at 10). The Court analyzes each in turn.

#### 1. Eighth Amendment

"'A plaintiff asserting an Eighth Amendment claim pursuant to 42 U.S.C. § 1983 must meet two requirements. First, the alleged deprivation must be, in objective terms, sufficiently serious. Second, the charged official must act with a sufficiently culpable state of mind.'" *Hurd*,

984 F.3d at 1084 (quoting *Francis v. Fiacco*, 942 F.3d 126, 150 (2d Cir. 2019)). "To satisfy the first requirement, a plaintiff must plead 'a harm of a magnitude that violates a person's eighth amendment rights.'" *Id.* (quoting *Calhoun*, 999 F.2d at 654). "'The Eighth Amendment[ ] . . . proscribes more than physically barbarous punishments. It prohibits penalties that are grossly disproportionate to the offense, as well as those that transgress today's broad and idealistic concepts of dignity, civilized standards, humanity, and decency.'" *Id.* (quoting *Hutto v. Finney*, 437 U.S. 678, 685 (1978)).

An "unauthorized detention of just one day past an inmate's mandatory release date qualifies as a harm of constitutional magnitude under the first prong of the Eighth Amendment analysis." *Id.* at 1085. This is because "The Eighth Amendment prohibits 'the unnecessary and wanton infliction of pain,' including punishments that are 'totally without penological justification.'" *Id.* (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)) And "There is no penological justification for incarceration beyond a mandatory release date because 'any deterrent and retributive purposes served by [the inmate's] time in jail were fulfilled as of that date.'" *Id.* As the Second Circuit recently noted, "Next to bodily security, freedom of choice and movement has the highest place in the spectrum of values recognized by our Constitution" (*id.*) and "freedom from unlawful restraint is a right so core to our understanding of liberty that suffering even one day of unlawful detention is a harm recognized by the Constitution." *Id.* at n. 4.

Yet, "The constitutional claim is not measured by the punishment alone, for 'an Eighth Amendment violation typically requires a state of mind that is the equivalent of criminal recklessness.'" *Id.* at 1084 (quoting *Francis*, 942 F.3d at 150). "'This standard requires that only the deliberate infliction of punishment, and not an ordinary lack of due care for prisoner interests or safety, lead to liability.'" *Id.* (quoting *Francis*, 942 F.3d at 150). "Under this standard, prison

officials can be found 'deliberately indifferent to their own clerical errors on the basis of their refusals to investigate well-founded complaints regarding these errors.'" *Id.* at 1084-1085 (quoting *Francis*, 942 F.3d at 151). However, "If a period of prolonged detention results from discretionary decisions made in good faith, mistake, or processing or other administrative delays, as opposed to the deliberate indifference of prison officials, then there is no Eighth Amendment liability." *Id.* at 1086.

Here, Plaintiff alleges that he was entitled to immediate release on March 19, "because the writ itself vacated the warrant," and that he was subjected to twelve additional days of detention (at that outset of the COVID-19 pandemic) between March 19 and March 31. (*See* AC ¶¶33, 35). Under Second Circuit law, such an over-detention "qualifies as a harm of constitutional magnitude" in violation of the Eighth Amendment. *See Hurd*, 984 F.3d at 1085.

Defendants Douglas and Lucas argue that Plaintiff's claim fails because under New York law, he was not "entitled to release the same day that the State court order took effect" and that the AC "fails to allege when the State court order granting release became effective by being entered." (State Br., at 23-24). Instead, they argue that "the controlling statute requires . . . discharge 'forthwith' after a release decision" and that "forthwith" means "promptly and with reasonable dispatch" – not "immediately." (State Br., at 8-9 (citing C.P.L.R. § 7010(a) and *Onondaga Cty. v. N.Y.S. Dep't of Corr. Servs.*, 97 A.D.2d 957, 957 (N.Y. App. Div. 4th Dept. 1983), *aff'd* 62 N.Y.2d 826 (1984)). They argue that Plaintiff's rights were not violated because the delay in his release was "reasonable." (State Br., at 9, 24).

Defendants' arguments on this point are, at this moment, unpersuasive. The Second Circuit has recently held that "just one day" of over-detention "qualifies as a harm of constitutional magnitude," *Hurd*, 984 F.3d at 1085, and it is well-established under New York State law that a

writ of *habeas corpus* itself "may be sustained only when the petitioner is subject to *immediate release* from custody." *People ex rel. Kennedy v. Warden, Vernon C. Bain Center*, 45 Misc. 3d 945, 992 N.Y.S.2d 876 (Sup. Ct. N.Y. Cnty. 2014) (citing cases) (emphasis added); *see People v. Superintendent, Fishkill Correctional Facility, N.Y.S. DOCCS*, 190 A.D.3d 863, 140 N.Y.S.3d 547 (2d Dep't 2021). Even taking Defendants' argument that a writ only requires release "with reasonable [but perhaps not immediate] dispatch," the law also requires that it be "prompt," and whether twelve days qualifies as "prompt" at the very least raises a genuine issue of material fact, given that Plaintiff's liberty was at stake.

As Justice Clark once explained on behalf of a unanimous Supreme Court, a writ of *habeas corpus* is "the highest safeguard of liberty." *Smith v. Bennett*, 365 U.S. 708, 712 (1961). My late colleague Judge Sweet similarly wrote, "The writ, along with the right to trial by jury, is among the most fundamental features distinguishing our free society from a police state, where unbridled and arbitrary imprisonment is used as an instrument of tyranny." *Rosa v. Senkowski*, No. 97-cv-2468, 1997 WL 436484, at *5 (S.D.N.Y. Aug. 1, 1997), *aff'd*, 148 F.3d 134 (2d Cir. 1998) (citing *Johnson v. United States*, 333 U.S. 10, 17 n. 8 (1948)). Its "'great object . . . is the liberation of those who may be imprisoned without sufficient cause.'" *Id.* (quoting *Ex Parte Watkins*, 28 U.S. (3 Pet.) 193, 202 (1830)). It does not follow that it is "reasonable" to subject someone to twelve additional days of detention after a writ of *habeas corpus* is granted. Plaintiff has pleaded that he was entitled to be released upon the grant of the writ, yet was subjected to nearly two additional weeks of detention.

As to Defendant Douglas and Lucas' state of mind, Plaintiff has alleged they were deliberately indifferent to his over-detention because they knew the writ had been granted but did nothing to effectuate plaintiff's release. Defendant Lucas admitted that the warrant was

inaccurately listed in the system as "active;" she promised to have "staff check the status in a more reliable system," but Plaintiff alleges that neither officer did anything further to lift the parole hold in order to secure Plaintiff's release. (*See* AC ¶¶34-37). Whether such conduct rises to the level of "deliberate indifference" is an issue of fact precluding dismissal. Plaintiff has specifically pleaded that there was a system error that caused a delay in his release, and that Defendant Lucas promised to look into the issue but did not do so. Plaintiff also alleges that Defendant Douglas knew that he had been ordered released but did nothing to obviate the delay in getting Plaintiff out of jail. Each of these alleged failures to investigate and respond could have resulted at least in part in the infliction of Plaintiff's unjustified detention.

Although Defendants Douglas and Lucas argue they did not have authority to secure his release, that is a factual issue that is not properly resolved on this motion. Plaintiff alleges they had such authority by asserting that Defendants Douglas and Lucas "work[] for DOCCS" and were "responsible" for his "timely release" (AC ¶¶15-16). Crediting Plaintiff's allegations, as the Court must at this stage, Plaintiff has sufficiently alleged a culpable state of mind as to Defendants Douglas and Lucas.

Accordingly, Plaintiff's complaint states a claim for deliberate indifference to over-detention under the Eighth Amendment.

### 2. *Fourteenth Amendment*

As explained previously, "'The first step in substantive due process analysis is to identify the constitutional right at stake.'" *Hurd*, 984 F.3d at 1087 (quoting *Kaluczky*, 57 F.3d at 211. "Next, the plaintiff 'must demonstrate that the state action was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Id.* (quoting (quoting *Southerland v. City of New York*, 680 F.3d 127, 151-52 (2d Cir. 2012)).

"'Freedom from bodily restraint has always been at the core of the liberty protected by the

Due Process Clause from arbitrary governmental action." *Id.* at 1088 (quoting *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). "'[C]ommitment for any purpose constitutes a significant deprivation of liberty that requires due process protection.'" *Id.* (quoting *Foucha*, 504 U.S. at 80).

As with the Eighth Amendment claim, Plaintiff has alleged a violation of his liberty interest by his continued incarceration following the grant of the writ of *habeas corpus*. However, he fails to allege that either Defendant Douglas or Defendant Lucas' conduct was "egregious and shocking to the conscience," as required. *See Hurd*, 984 F.3d at 1089. He alleges that Defendants Douglas and Lucas knew of the writ, knew of an error in the computer system that meant his parole warrant was still listed as active, but failed to act to secure his release. While such conduct may constitute negligence (and the State Defendants admit as much, *see* State Br., at 23), as a matter of law, it does not constitute conduct "egregious" or "shocking to the conscience." Plaintiff's complaint fails to state a claim for deliberate indifference to over-detention under the Fourteenth Amendment.[9]

ii. Genuine Issues of Fact Remain as to Whether Defendants Douglas and Lucas Are Entitled to Qualified Immunity on Count III

Defendants Douglas and Lucas argue that in 2020 it was not "clearly established" that a twelve-day delay in Plaintiff's release violated the law, and so they are entitled to qualified immunity on Count III. This argument fails.

The standard for qualified immunity discussed above is incorporated by reference. (*See supra*, §I.A.iii). As explained above, courts may grant qualified immunity on the ground that a purported right was not "clearly established" by prior case law. *Pearson*, 555 U.S. at 236. The "unlawfulness of the officer's conduct must be apparent," *Ziglar*, 137 S. Ct. at 1867, or "beyond debate." *Ashcroft*, 131 S.Ct. at 2083.

---

[9] There is no contradiction between the finding that Plaintiff has stated a substantive due process claim as to imposition of the condition but not as to deliberate indifference to his right to get out immediately.

Here, Plaintiff alleges that at the time of his over-detention in 2020, he had a clearly established right to "prompt release" upon the grant of the writ of *habeas corpus*. (SJ Opp, at 11). That is a reasonably specific right. As discussed above, the decisional law of the Supreme Court and the Second Circuit supported the existence of the right to prompt release upon the grant of a writ of *habeas corpus*. (*See supra*, § I.D.i.1); *see Rosa*, 1997 WL 436484, at \*5.

While Plaintiff does not indicate the precise amount of time constitutes a "prompt" release, the Second Circuit has recently counseled in *Hurd* against engaging in such an "arbitrary task of distinguishing between the permissible and impermissible length of unauthorized detention under the Constitution." *Hurd*, 983 F.3d at 1085 n. 4. Instead, the relevant "approach" has long been to "recogniz[e] a harm of constitutional magnitude whenever an inmate is detained without authorization but finding a constitutional violation only where that harm is deliberately inflicted." *Id.* This approach reflects the fundamental principal that has long existed in the law: "freedom from unlawful restraint is a right . . . core to our understanding of liberty." *Id.*

Although *Hurd* was decided in 2021, its principals were well-established in 2020. *See e.g.*, *Brown v. Coughlin*, 704 F.Supp. 41, 45 (S.D.N .Y.1989) ("Failure to act while [plaintiff] remained imprisoned beyond his release date is not conduct protected by qualified immunity."). Under preexisting law, no reasonable official would believe it was permissible to simply do nothing and allow a person to remain in custody for twelve additional days after the grant of a writ of *habeas corpus*. None of Defendants' cases suggest otherwise. Indeed, as Plaintiff points out (SJ Opp., at 10), none of Defendant's cases dealt with a person who had been granted a valid writ of *habeas corpus*. In this regard, they are inapplicable. The Court finds Plaintiff had a clearly established right to prompt release after the grant of the writ.

The remaining questions – whether the harm was deliberately inflicted, and whether it was

even possible for DOCCS to act faster than it did[10] – are questions of fact that cannot be resolved on a pre-discovery motion for summary judgment.

Defendants Douglas and Lucas are not entitled to qualified immunity on Plaintiff's over-detention claim. Their motion for summary judgment as to Count III is denied.

## II.     Count III (Deliberate Indifference to Over-Detention) Against Warden Bastian is Dismissed with Prejudice

It is undisputed that Warden Bastian retired from the DOC in February 2020 before the events underlying the claim against him took place. (*See* MTD Br., at 5 n. 1 *and* MTD Opp., at 1 n.1). The period of Plaintiff's alleged "over-detention" occurred in March 2020, after Defendant Bastian retired. Plaintiff does not dispute that the Warden retired in February 2020 and in his opposition stated he would "voluntarily withdraw[]" his claims against Warden Bastian. (MTD Opp., at 1 n.1). However, Plaintiff did not file a notice or stipulation of dismissal to that effect pursuant to Rule 41(a)(1) and does not specify whether his withdrawal is with or without prejudice.

Having failed to file a notice of dismissal or stipulation as to Warden Bastian, the Court will treat Plaintiff's agreement to "voluntarily withdraw[]" his claim against Warden Bastian as a "request" for a court order dismissing the claim against Warden Bastian pursuant to Rule 41(a)(2). The Court will grant the request on the condition that the dismissal is with prejudice. Given that Plaintiff concedes that the Warden retired before the relevant events underlying the claim took place, there is no basis for asserting the over-detention claim against the Warden and it would be futile to attempt to reassert this meritless claim in the future.

Count III is dismissed with prejudice as against Warden Bastian.

---

[10] The court cannot help but note that the writ was granted on March 19, 2020, which was literally at the beginning of the COVID-19 shutdown in March 2020. On the one hand, the threat of the virus would seem to make Plaintiff's continued incarceration all the more egregious; on the other, the whole world was falling apart at that time, and it well may be something of a miracle that the DOCCS officials were able to sort this out in as few as twelve days. But whether that period is unreasonable is not something that can be decided on a pre-discovery motion.

**III.   The City's Motion to Dismiss Counts IV, V, VI, and VII for Failure to State a Claim is Granted in Part, Denied in Part**

**A.   The City's Motion to Dismiss the False Imprisonment (Count IV) Claim is Denied**

Plaintiff asserts one claim for common law false imprisonment against the City under the doctrine of *respondeat superior*.

Under New York law, the elements of a false imprisonment claim are: "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Broughton v. State*, 37 N.Y.2d 451, 456, 373 N.Y.S.2d 87, 335 N.E.2d 310 (1975), *cert. denied*, 423 U.S. 929 (1975). Where a plaintiff "was lawfully detained pursuant to a facially valid warrant issued by the New York State Division of Parole," such detention is "a privileged confinement [and] will not give rise to an action against the entity that detained plaintiff." *Dupree v. Pough*, 454 F.Supp.2d 166, 170 (S.D.N.Y. 2006). However, a claim for false imprisonment may proceed past a motion to dismiss where a plaintiff pleads that "the confinement was not otherwise privileged because the DOCCS warrant was invalid." *See Iverson v. Annucci*, No. 18-CV-0886, 2020 WL 1083152, at *6 (W.D.N.Y. Feb. 28, 2020).

The City contests only the fourth element, arguing that Plaintiff's detention was privileged because "the City was entitled to" wait on the State's advice "that the parole warrant is lifted and the inmate may be discharged" and, absent any such advice, could "assume that Plaintiff's detention remained in effect." (MTD Br., at 11). It argues that "up until the point that City DOC received the warrant lift from State DOCCS (and immediately thereafter released Plaintiff), it reasonably believed that Plaintiff was being held under a valid warrant and it did not have the authority to release Plaintiff." (Dkt. No. 32, at 8). The City raises several factual issues as well, arguing that the City "did not receive notice of the writ" because "Plaintiff failed to update the

Bronx Supreme Court on where he was being held and the only City employee who Plaintiff alleges was told about the writ had already retired when the writ was granted." (*Id.*). Plaintiff alleges that the City was notified. (*See* AC ¶29).

Setting aside the City's factual arguments, which cannot be considered on this motion, the Court cannot conclude as a matter of state law that the confinement was privileged. Plaintiff has alleged that, after Justice Clancy vacated the parole warrant and ordered Plaintiff's release, the City – and the warden at Rikers Island– were notified and should have secured his "timely" released but instead "ignored" the writ of habeas corpus. (*See* AC ¶¶28, 31). In other words, he has alleged that the warrant was no longer valid, and the confinement was not privileged.

This situation is like that of the plaintiff in *Uviles v. City of New York*, No. 19-cv-3911, 2020 WL 8642289 (E.D.N.Y. June 30, 2020). There, like here, there was "a parole warrant" that was no longer valid, yet plaintiff remained incarcerated. *Id.* at *1. Specifically, the plaintiff posted bail on all the charges remaining against him and was thus entitled to be released from custody. *Uviles v. City of New York*, No. 19-cv-3911, 2020 WL 1916865, at *1 (E.D.N.Y. Apr. 20, 2020). "Nevertheless, plaintiff remained in custody on Rikers Island for another eighteen days." *Id.* During that time, the plaintiff repeatedly asked corrections officers why he had not yet been released and "they repeatedly told him that the computer system indicated that a parole hold was still in effect and, therefore, they could not release him." *Id.* "During the eighteen-day hold, both plaintiff's attorney and his parole officer contacted various members of DOCCS and the [DOC] in an attempt to secure plaintiff's release." *Id.* Yet, the plaintiff "remained in detention until the hold was removed." *Id.* The plaintiff alleged that he was subjected to such unlawful detention because DOCCS and DOC continue to follow a "broader policy or custom" of "routine[ly] honoring . . . informal parole holds regardless of whether the parolee was no longer being lawfully

detained." *Uviles*, 2020 WL 8642289, at *1.

In denying the defendant City's motion to dismiss the false imprisonment claim, Judge Cogan rejected on reconsideration the defendants' argument that "the confinement was privileged merely because of the existence of a parole warrant." *Id.* Judge Cogan found instead that the plaintiff "plausibly allege[d] that, at some point during his detention," the plaintiff was no longer "being held pursuant to the parole warrant or based on 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief' that he should remain detained." *Id.* (citing *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)). Because "neither DOCCS nor DOC was any longer relying upon a parole warrant – or, for that matter, a belief that there was reasonable cause for his detention – in denying him release," the confinement was not privileged. *Id.*

So too here. Construing the facts most favorably for Plaintiff, the City had been notified that the warrant had been vacated and yet failed to release Plaintiff despite the grant of the writ and order for his release. There is at the very least a genuine issue of fact as to whether continuing confinement in those circumstances was privileged. At this early stage, the Court finds Plaintiff has stated a claim for false imprisonment for his continued imprisonment following the grant of his writ of *habeas corpus*.

### B. The City's Motion to Dismiss the Negligence Claim (Count V) Is Granted.

In response to the City's motion to dismiss Count V, the common law negligence claim, Plaintiff does not rebut the City's motion but states that he "voluntarily withdraws" the claim. (*See* MTD Opp., at 1 n.1). Plaintiff does not state whether the withdrawal is with or without prejudice.

As this Court has recently explained in another case, a plaintiff cannot simply unilaterally discontinue some claims against a party without a court order. *See Thorpe v. City of New York*, No. 19-CV-5995, 2022 WL 3112125, at *1 (S.D.N.Y. Aug. 4, 2022) (citing Fed. R. Civ. P. 41).

Because in this case, the City moved to dismiss the claim and Plaintiff offered no rebuttal, I read his concessionary withdrawal as abandonment of the claim. *See Simon v. City of New York*, No. 14–CV–8391, 2015 WL 4092389, at *2 (S.D.N.Y. Jul. 6, 2015) (where plaintiffs are "on notice that Defendants were seeking dismissal of their . . . claims . . . It follows that, whether or not Defendants' arguments had merit, it was Plaintiffs' obligation to address the issue, on pain of their claim being deemed abandoned.") (citing cases).

Accordingly, the City's motion to dismiss Count V is granted and the claim is dismissed.

### C. The City's Motion to Dismiss the New York State Constitution Claim (Count VI) is Denied in Part, Granted in Part.

In response to the City's motion to dismiss Count VI, Plaintiff agreed to voluntarily withdraw his claims against the City for violations of Article 1, §§ 1, 8, 9, and 11 of the New York State Constitution. (*See* MTD Opp., at 1 n.1). For the same reason that Count V is dismissed (*supra*, §III.B), these claims are dismissed.

All that remains of Count VI for the purpose of the motion before this Court are Plaintiff's allegations that the City violated Article I § 6 (due process) and Article I § 12 (unreasonable searches and seizures) of the New York State Constitution. The City argues that these each fail as a matter of law because Plaintiff has an "alternative remedy" at law for each of these claims under the Federal Constitution and New York common law. (MTD Br., at 13-14).

In *Brown v. State of New York*, 89 N.Y.2d 172 (1996), the New York Court of Appeals recognized a private right of action for damages for violations of provisions of the State Constitution. *Id.* at 191-192. In so finding, the Court of Appeals explained that claims should not be "confine[d] . . . to tort causes of actions," as doing so "would produce the paradox that individuals, guilty or innocent, wrongly arrested or detained may seek a monetary recovery because the complaint fits within the framework of a common-law tort, whereas these claimants,

who suffered similar indignities, must go remediless because the duty violated was spelled out in

the State Constitution." *Id.* at 191. The Court explained that common law torts may be analogous

to the protections of the New York State Constitution, they cannot entirely replace such

protections:

> The common law of tort deals with the relation between individuals by imposing
> on one a legal obligation for the benefit of the other and assessing damages for harm
> occasioned by a failure to fulfill that obligation Common-law duties arise in
> virtually all relationships and protect against most risks of harm. Constitutional
> duties, by contrast, address a limited number of concerns and a limited set of
> relationships. Constitutions assign rights to individuals and impose duties on the
> government to regulate the government's actions to protect them. It is the failure to
> fulfill a stated constitutional duty which may support a claim for damages in a
> constitutional tort action.

*Id.* at 178-79 (internal citations omitted).

Later in *Martinez v. City of Schenectady*, 97 N.Y.2d 78 (2001), the Court of Appeals

clarified that *Brown* established a "narrow remedy" that specifically "addresses two interests: the

private interest that citizens harmed by constitutional violations have an avenue of redress, and the

public interest that future violations be deterred." *Id.* at 83. If a claimant fails to establish "how

money damages are appropriate to ensure full realization of her asserted constitutional rights,"

dismissal of the Constitutional claim is appropriate. *Id.* at 84.

Since then, New York courts have repeatedly found that Constitutional claims need not be

recognized where it is "neither necessary nor appropriate to ensure the full realization of

[plaintiff's] rights" to do so because "the alleged wrongs could have been redressed by an

alternative remedy, namely, timely interposed common-law tort claims." *See Lyles v State*, 2 AD3d

694, 695-696) (2d Dept. 2003], *aff'd* 3 NY3d 396 (2004); *Donas v. City of New York*, 2008 N.Y.

Slip Op. 30241(U), 2008 WL 293038 (Sup. Ct. N.Y. Co. Jan. 21, 2008), *aff'd*, 62 A.D.3d 504 (1st

Dep't 2009); *Townes v New York State Metropolitan Transp. Auth.*, 2011 N.Y. Slip Op. 32487(U),

2011 WL 4443604 (Sup. Ct. Nassau Co. Sept. 14, 2011) ("Where there exist alternative statutory

Case 1:21-cv-08565-CM    Document 45    Filed 08/22/22    Page 45 of 48

or common-law remedies, it has been held improper to find a State constitutional claim."). The same is true where "'the plaintiff has an alternative remedy under § 1983 for violations of parallel provisions of the U.S. Constitution.'" *Buari v. City of New York*, 530 F.Supp.3d 356, 409–10 (S.D.N.Y. 2021) (quoting *Alwan v. City of New York*, 311 F. Supp. 3d 570, 586 (E.D.N.Y. 2018) (citing cases)).

However, courts in this Circuit have also repeatedly found that "Because § 1983 does not authorize respondeat-superior liability, it cannot provide an adequate alternative remedy for Plaintiff's New York State constitutional claims, to the extent they are asserted against the City." *See Alwan v. City of New York*, 311 F. Supp. 3d 570, 587 (E.D.N.Y. 2018); *see also Buari v. City of New York*, 530 F.Supp.3d 356, 409-10 (S.D.N.Y. 2021) (holding that "state constitutional due process claims against the City survive to the extent they are based on a *respondeat superior* theory"); *Logan v. City of Schenectady*, No. 18-cv-01179, 2019 WL 3803631, at *9 (N.D.N.Y. Aug. 13, 2019) (same); *Brown v. City of New York*, No. 13-cv-06912, 2017 WL 1390678, at *15 (S.D.N.Y. Apr. 17, 2017) (same); *Espinoza v. City of New York*, 194 F. Supp. 3d 203, 208 (E.D.N.Y. 2016) (same). That is the case here insofar as Plaintiff's Article I § 6 due process claim is concerned. The City argues that Plaintiff's claims should be dismissed because Plaintiff has an "alternative remedy" at law under "the federal Constitution" (MTD Br., at 13), but the City does not identify an alternative state cause of action that could have been brought to redress Plaintiff's due process claim against the City based on a *respondeat superior* theory. Accordingly, as other courts in this Circuit have held, Plaintiff's "state constitutional due process claim[] against the City" may "survive to the extent [it is] based on a *respondeat superior* theory." *See Buari*, 530 F.Supp.3d at 409-410. The City's motion to dismiss Plaintiff's due process claim under Article I § 6 of the New York State Constitution is denied.

Case 1:21-cv-08565-CM    Document 45    Filed 08/22/22    Page 45 of 48

or common-law remedies, it has been held improper to find a State constitutional claim."). The same is true where "'the plaintiff has an alternative remedy under § 1983 for violations of parallel provisions of the U.S. Constitution.'" *Buari v. City of New York*, 530 F.Supp.3d 356, 409–10 (S.D.N.Y. 2021) (quoting *Alwan v. City of New York*, 311 F. Supp. 3d 570, 586 (E.D.N.Y. 2018) (citing cases)).

However, courts in this Circuit have also repeatedly found that "Because § 1983 does not authorize respondeat-superior liability, it cannot provide an adequate alternative remedy for Plaintiff's New York State constitutional claims, to the extent they are asserted against the City." *See Alwan v. City of New York*, 311 F. Supp. 3d 570, 587 (E.D.N.Y. 2018); *see also Buari v. City of New York*, 530 F.Supp.3d 356, 409-10 (S.D.N.Y. 2021) (holding that "state constitutional due process claims against the City survive to the extent they are based on a *respondeat superior* theory"); *Logan v. City of Schenectady*, No. 18-cv-01179, 2019 WL 3803631, at *9 (N.D.N.Y. Aug. 13, 2019) (same); *Brown v. City of New York*, No. 13-cv-06912, 2017 WL 1390678, at *15 (S.D.N.Y. Apr. 17, 2017) (same); *Espinoza v. City of New York*, 194 F. Supp. 3d 203, 208 (E.D.N.Y. 2016) (same). That is the case here insofar as Plaintiff's Article I § 6 due process claim is concerned. The City argues that Plaintiff's claims should be dismissed because Plaintiff has an "alternative remedy" at law under "the federal Constitution" (MTD Br., at 13), but the City does not identify an alternative state cause of action that could have been brought to redress Plaintiff's due process claim against the City based on a *respondeat superior* theory. Accordingly, as other courts in this Circuit have held, Plaintiff's "state constitutional due process claim[] against the City" may "survive to the extent [it is] based on a *respondeat superior* theory." *See Buari*, 530 F.Supp.3d at 409-410. The City's motion to dismiss Plaintiff's due process claim under Article I § 6 of the New York State Constitution is denied.

By contrast, the City correctly argues that Plaintiff has an adequate alternative remedy at law for his Article I § 12 claim of unreasonable seizure; specifically, the City argues that the claim duplicates the common law tort of false imprisonment, which Plaintiff alleges in Count IV of the AC. Because Plaintiff has an adequate alternative remedy at law for his Article I § 12 claim, the City's motion to dismiss this claim is granted.

As explained above, the City's motion to dismiss Count VI is denied in part, granted in part.

### D. The Motion to Dismiss Plaintiff's *Monell* Claim Against the City (Count VII) Is Denied

Plaintiff alleges a violation of his rights under *Monell v. Department of Soc. Svcs.*, 436 U.S. 658 (1978).

"*Monell* does not provide a separate cause of action . . . it *extends* liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) (emphasis in original). To state a claim for municipal liability under *Monell*, a plaintiff must allege: "(1) a municipal policy or custom that (2) causes the plaintiff to be subjected to (3) the deprivation of a constitutional right." *Agosto v. N.Y.C. Dep't of Educ.*, 982 F.3d 86, 97 (2d Cir. 2020). Since "*Monell* expressly prohibits *respondeat superior* liability for municipalities . . . a plaintiff must demonstrate that 'through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Id.* at 98 (quoting *Bd. of Cty. Comm'rs of Bryan Cty., Okla v. Brown*, 520 U.S. 397, 404 (1997)) (emphasis in original).

In this case, Plaintiff alleges that his unconstitutional deprivation of liberty (which as explained in the foregoing sections is sufficiently alleged) resulted from a City policy to "ignore writs of habeas corpus until DOCCS lifts the parole hold, even if there is no justification for the

detention." (AC ¶32). Plaintiff supports this allegation with the sworn testimony of DOC Captain Anthony Monastero, head of the Custody Management Unit, who explained in the *Uviles* case that, effectively, it is DOC policy that a "parole warrant stays in effect until [DOC] receive[s] a parole warrant lift [from DOCCS]. The parolee can leave the hearing, the final hearing or preliminary hearing, and the judgment can be that the parole warrant is no longer active. But at DOC, we can't act on that until we get a parole warrant lift from the New York State DOCCS Division of Parole. Regardless of what happens in the hearing." (*Id.*). Plaintiff has accordingly sufficiently alleged there was a City policy to "ignore" valid grants of writs of *habeas corpus*, which resulted in an unconstitutional deprivation of liberty. Plaintiff's allegations are sufficient at this stage of the litigation to state a *Monell* claim.

The City's motion to dismiss Count VII is denied.

## CONCLUSION

For the reasons discussed above, the Defendants' motions to dismiss Counts II and V are granted. Counts II and V are dismissed.

Count III is dismissed as against Defendant Bastian. Defendant Bastian is dismissed from this case.

The City's motion to dismiss Count VI is granted in part, denied in part. Count VI is dismissed to the extent it alleges a violation of Article I §§ 1, 8, 9, 11, and 12 and denied to the extent it alleges a violation of Article I §6 of the New York State Constitution.

The Defendants' motions as to Counts I, III, IV, and VII are otherwise denied.

The Clerk of Court is respectfully directed to close the open motions at Docket Numbers 21, 23, and 34.

This constitutes the decision and order of the Court. It is a written opinion.

Dated: August 22, 2022

_____
U.S.D.J.

BY ECF TO ALL COUNSEL