UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
MODESTO RODRIGUEZ,                                 :
                                                   :          21-CV-8565 (AS)
                                      Plaintiff,   :
                                                   :          **STATE DEFENDANTS'**
            - against -                            :          **LOCAL CIVIL RULE 56.1**
                                                   :          **STATEMENT**
THE CITY OF NEW YORK, WARDEN STEVEN                :          **OF UNDISPUTED FACTS**
BASTIAN, OFFICER MICHELLE GONZALEZ,                :
ANTOINETTE DOUGLAS AND LACHONDA                    :
LUCAS,                                             :
                                                   :
                                      Defendants.  :
                                                   :
------------------------------------------------------------ X

        Pursuant to Local Civil Rule 56.1 of the United States District Court for the Southern

District of New York, Defendants Michelle Gonzalez and Lachonda Lucas (collectively "State

Defendants"), by their attorney LETITIA JAMES, Attorney General of the State of New York,

submit the following statement of facts as to which they contend there are no genuine issues to be

tried:

    I.      **THE PARTIES**

        1.      Plaintiff, Modesto Rodriguez ("Plaintiff"), was convicted of Sexual Abuse in the

First Degree in 2002 and is a Level 1 registered Sex Offender. Declaration of Gee Won Cha, dated

November 27, 2023 ("Cha Decl."), Exs. A at 35:5-8; 56:10-12; 141:12-16, B at STATE DEFS

000047.

        2.      Following his conviction and a period of imprisonment, Plaintiff was released to

the Community Supervision custody of the Department of Corrections and Community

Supervision ("DOCCS") on May 1, 2017. Cha Decl., Exs. A at 53:18-20, B at STATE DEFS

000047.

3.      At all relevant times, Plaintiff was under DOCCS parole supervision. First Amended Complaint (Dkt. 10) ("FAC").

4.      Defendant Michelle Gonzalez was at all relevant times a Parole Officer with DOCCS. Cha Decl., Ex. C at 15:4-9.

5.      SPO Douglas was at all relevant times a Senior Parole Officer ("SPO") in the Declared Delinquent Other Institution ("DDOI") under DOCCS, which was located at the Judicial Center in Rikers Island. Cha Decl., Exs. D at 14:23-15:7, E at 19:12-20.

6.      Lachonda Lucas was at all relevant times a Parole Revocation Specialist ("PRS") 2, also known as a Deputy Chief, in the Parole Violation Unit ("PVU") under DOCCS, which was located in Manhattan.  Id., Ex. E at 15:18-16:5; Declaration of Lachonda Lucas dated November 21 ("Lucas Decl.") at ¶5.

## DDOI/RELEASES GENERALLY

7.      At all relevant times, DDOI was in charge of releasing incarcerated parolees. Cha Decl., Exs. D at 14:25-15:10, E at 19:12-20:2.

8.      It is the function of DDOI to prepare the cases for release and schedule release interviews. Id., Ex. E at 30:10-15.

9.      Before DDOI can begin the release process, authorization must come from DOCCS's/Board of Parole's Counsel's Office ("Counsel's Office"). After authorization is sent, DOCCS's Internal Operations closes the warrant. After the warrant is closed, DDOI can begin the release process. Id., Ex D at 20:8-15; 22:5-23:1, 26:8-17; 28:23-29:6; Declaration of Elliot McIntosh ("Mcintosh Decl.") dated November 16, 2023, at ¶3; Lucas Decl. at ¶10.

10.      When an incarcerated parolee is ordered to be released, a parole officer would work up the parolee's paperwork, see if there were any conditions that needed to be applied, such as

needing an escort upon their release due to their status as a sex offender, and would check the housing situation. The parolee would be scheduled a release interview, be given reporting instructions, and sign off on his documents.   Cha Decl., Ex. D at 16:5-17:5; 34:9-17.

11.     After the case is prepared for release, the parolee's parole warrant can be "lifted." Id. at 22:18-23:1.

12.     To "lift" the parolee's parole warrant, DDOI staff removes the warrant that is attached to the incarcerated parolee's orange movement card and then replaces it with a Warrant Lift Authorization. Id. at 18:5-25.

13.     The Warrant Lift Authorization Form is signed by SPO Douglas or another parole officer on her behalf. Id. at 19:1-11.

14.     The movement card, with the Warrant Lift Authorization, is given back to New York City Corrections ("NYC DOC"). Id. at 18:5-25.

15.     Once NYC DOC receives the Warrant Lift Authorization, they would begin the process of releasing the incarcerated person. Id. at 16:5-17:5.

**PVU GENERALLY**

16.     The Parole Violation Unit ("PVU") consists of PRS staff, who are assigned cases and are responsible for representing DOCCS in parole revocation proceedings of a parolee/releasee who has been charged with violating their condition of release. Cha Decl., Ex. E at 15:4-9; Lucas Decl. at ¶¶7-8.

17.     At the time of the alleged incident, PVU staff worked in the Manhattan office, except when holding revocation proceedings, which took place on Rikers Island. Lucas Decl. at ¶9.

18.     Deputy Chief Lucas supervised PRS staff and conferenced cases, assisted with the

preparations of hearings and trials, and provided office support. Id. at ¶11.

**PLAINTIFF'S CRIMINAL HISTORY, PAROLE SUPERVISION AND SUBSEQUENT VIOLATION**

19.     On April 28, 2017, prior to release to Community Supervision, Plaintiff signed certain Conditions of Release. Cha Decl., Ex. F.

20.     Condition No. 13 of the "Conditions of Release" stated that Plaintiff would "fully comply with the instructions of [his] Parole Officer and obey such special additional written conditions as he, a Member of the Board of Parole, or an authorized representative of the Division of Parole, may impose. Id. at STATE DEFS 00050.

21.     Parole Officer Gonzalez began supervising Plaintiff in August 2019. Cha Decl., Ex. C at 16:3-11; Declaration of Michelle Gonzalez dated November 16, 2023. ("Gonzalez Decl.") at ¶9.

22.     Parole Officer Gonzalez reviewed Plaintiff's board mandated conditions and any other conditions previously given to him by previous parole officers.  Cha Decl., Ex. C at 16:12-22.

23.     On October 22, 2019, Parole Officer Gonzalez met with Plaintiff, and Plaintiff agreed to and signed additional Special Conditions of Release to Parole Supervision ("Special Conditions"), which, among other things, included the prohibition of possessing more than one cellular phone, possessing pornographic materials and the possessing of a cell phone with a camera or photo taking capabilities. Id., Exs. C at 34:5-14, G; Gonzalez Decl. at ¶¶13-17; see also FAC ¶18.

24.     On or about October 22, 2019, Parole Officer Gonzalez met with Plaintiff and informed him that he was allowed to have a cellular phone as long as it didn't have a camera on it. Cha Decl., Ex. C at 17:3-18:3,18:18-23; Gonzalez Decl. at ¶18.

25.     When Parole Officer Gonzalez looked at Plaintiff's phone, the camera appeared to be disabled. Cha Decl., Ex. C at 18:18-23.

26.     Parole Officer Gonzalez allowed Plaintiff to have the phone because Plaintiff's prior parole officer allowed Plaintiff to have that phone under the stipulation that he not have a camera on the phone. Id. at 18:4-14.

27.     On October 31, 2019, Plaintiff's residence was searched by Parole Officer Gonzalez and other parole officers. Id., Exs. C at 43:5-16, A at 82:12-17; Gonzalez Decl. at ¶19.

28.     During the search, Parole Officer Gonzalez recovered two cellular phones belonging to Plaintiff. Gonzalez Decl. at ¶19.

29.     This was in violation of Special Condition No. 20, prohibiting possession of more than one cell phone Id. at ¶20.

30.     On this date, Plaintiff's smart phone had an active camera, which Parole Officer Gonzalez was able to verify by accessing the camera. Cha Decl., Ex. C at 25:25-26:8; Gonzalez Decl. at ¶21.

31.     This was in violation of Special Condition No. 21, prohibiting a cell phone with an operable camera. Gonzalez Decl. at ¶22.

32.     The internet history from October 30, 2019 and October 31, 2019 on Plaintiff's smart phone also showed access to pornography sites. Id. at ¶23; Cha Decl., Ex. C at 29:21-30:5.

33.     This was in violation of Special Condition No. 9, prohibiting possession of pornographic materials. Gonzalez Decl. at ¶24.

34.     Plaintiff was charged with a total of 18 parole violations. Id. at ¶25; Cha Decl., Exs. C at 21:17-22, C-1.

35.     Plaintiff was arrested for violating the conditions of parole on October 31, 2019

and he was incarcerated at Rikers Island. FAC ¶¶17, 21.

36.     On November 13, 2019, a preliminary hearing was conducted where Parole Officer Gonzalez went forward with Charge #3, which read that Plaintiff "violated . . . the Conditions of Release in that on or about 10/31/019 he failed to fully comply with . . . the special additional written conditions that were imposed when . . . he possessed 1 LG smart cell phone with photo capability." Cha Decl., Exs. C at 21:23-22:6, C-1 at RODIRGUEZ00036, C-2; Gonzalez Decl. at ¶26; FAC ¶22.

37.     Plaintiff was represented by counsel, Matthew Finston from Legal Aid Society at the preliminary hearing. Cha Decl., Exs. A at 151:15-21, C-2.

38.     At the preliminary hearing, the administrative law judge held that probable cause was found related to Charge #3 and supported a parole violation. Cha Decl., Exs. C at 22:7-9, C-2 at 34:11-15; Gonzalez Decl. at ¶27.

39.     Had the administrative law judge not found probable cause on Charge #3, Parole Officer Gonzalez would have proceeded on any other violation of condition of release. Cha Decl., Ex. C at 22:14-18; Gonzalez Decl. at ¶28.

40.     On or around January 2, 2020, Matthew Finston filed a writ of habeas corpus challenging the parole violation. FAC ¶25; Cha Decl., Ex. H.

**PLAINTIFF'S FINAL REVOCATION HEARING**

41.     On February 24, 2020, Plaintiff appeared, with counsel, for a final revocation hearing ("final hearing"). Cha Decl., Ex. I.

42.     The final hearing was presided over by Administrative Law Judge ("ALJ") John Casey. Id.

43.     At the final hearing, counsel for Plaintiff, Matthew Finston, asked for an

adjournment of the hearing "to pursue [Plaintiff]'s writ." Id. at 4:22-23.

44.     However, Plaintiff himself decided to take a plea to "charge number 19" . . . "violat[ing] a condition of release," and was sentenced to a 12 months time assessment and a 90-day program. Id. at 8:21-11:7; 15:15-18.

45.     ALJ Casey explicitly informed Plaintiff that "the writ is done after this" and gave Plaintiff the opportunity to adjourn the Final Hearing so he could "have a last grasp at the writ." Id. at 11:25-12:2; 13:4-14.

46.     Despite these warnings, Plaintiff stated to "give me the 12 months DOCCS" because he wanted to "get this over with." Id. at 13:11-14.

**NEW YORK STATE AND COVID-19**

47.     On March 11, 2020, after more than 118,000 cases in 114 countries and 4,291 deaths, the WHO declared COVID-19 a pandemic. https://www.cdc.gov/museum/timeline/covid19.html

48.     On March 15, 2020, states began to implement shutdowns to prevent the spread of COVID-19, including the New York City public school system—the largest school system in the U.S., with 1.1 million students. Id.

**PLAINTIFF'S RELEASE**

49.     On Thursday, March 19, 2020, nearly one month after Plaintiff plead guilty to violating a condition of his release at the final hearing, and four days after New York City shut down due to COVID-19, Judge Margaret Clancy issued a decision on Plaintiff's writ of habeas corpus ordering Plaintiff's warrant to be vacated. Cha Decl., Ex. J; FAC ¶26.

50.     On Sunday, March 22, 2020, Matthew Finston emailed DOCCS staff, including PO Douglas, and copied six additional DOCCS staff, including Deputy Chief Lucas, notifying them

of Judge Clancy's decision on Plaintiff's writ.  Cha Decl., Ex. E-1 at STATE DEFS 000297; Lucas Decl. at ¶13.

51.    On Sunday, March 22, 2020, Deputy Chief Lucas received an email from Legal Aid attorney Elon Harpaz,  stating that he was "concerned" about Matthew alerting everyone about Plaintiff's warrant "because the final hearing was already completed" and he didn't "want anyone to flag that" and hoped the warrant "would go through quietly and pretty much be a done deal" before Attorney General David Cheng "swung into action." Id. at STATE DEFS 000295-000297; Lucas Decl. at ¶14.

52.    Deputy Chief Lucas replied to the email stating that DDOI staff will check Plaintiff's status in a more reliable system the next morning, referring to a system that DDOI uses to check whether a warrant is active or not. Cha Decl., Exs. E at 50:19-51:25, E-1 at STATE DEFS 000296; Lucas Decl. at ¶15.

53.    Deputy Chief Lucas does not have access to that system. Cha Decl., Ex. E at 51:21-25; Lucas Decl. at ¶16.

54.    On March 23, 2019, at approximately 7:41 am, Deputy Chief Lucas received an email from SPO Douglas that DDOI had not received any communication from Counsel's office regarding Plaintiff's release. Lucas Decl. at ¶18; Cha Decl., Ex. E-1 at STATE DEFS 000296.

55.    On Monday, March 23, 2020, at approximately 10:44 am, Elliot McIntosh from the Board of Parole's Counsel's office notified DOCCS staff via email with authorization for Plaintiff. Cha Decl., Exs. D at 25:19-26:1, Ex. D-2 at STATE DEFS 000652; McIntosh Decl. ¶4.

56.    Deputy Chief Lucas was not copied on this email.  McIntosh Decl. ¶5; Cha Decl. Ex. D-2 at STATE DEFS 000652.

57.    On Monday March 23, 2020, Tami Cafariella at Internal Operations of DOCCS

notified DOCCS staff via email that the warrant was closed. Cha Decl., at, Exs. D at 26:8-19; 31:14-17, D-2 at STATE DEFS 000652

58.     Deputy Chief Lucas was not copied on this email. Cha Decl., Ex. D-2 at STATE DEFS 000652.

59.     SPO Douglas went out sick with COVID-19 from March 23, 2020 until April 7, 2020. Id., Ex. D at 32:1-3.

60.     On March 23, 2020, Deputy Chief Lucas was instructed by Chief of PVU, Edward DelRio, that as a result of COVID-19 and short staffing, that she continue the coordination of activities from the Manhattan office and supervise the PRS staff that were presenting cases in the revocation process. She was tasked to review and resolve all the open revocation cases so the releasee's names could be sent to DDOI for a release interview and ultimately be released from custody. Id., Exs. E at  21:8-23; 23:12-23; E-2 at STATE DEFS 000103; Lucas Decl. at ¶17.

61.     Chief DelRio also instructed that Deputy Chief Rose Williams, whose primary place of work was normally Manhattan, to coordinate all activities and releases at the Judicial Center due to short staffing at the Judicial Center from the COVID-19 pandemic. Cha Decl. Exs. E-2 at STATE DEFS 000103, D at 38:11-15; Lucas Decl. at ¶17

62.     Plaintiff's release interview was initially scheduled for Tuesday, March 24, 2020. Cha Decl., Exs E 24:14-20, D-3 at STATE DEFS 000152.

63.     Deputy Chief Lucas does not know why Plaintiff was not scheduled for his release until March 24, 2020, as she was not tasked with orchestrating release interviews from Rikers Island. Id., Ex. E at 24:14-20, 40:22-41:6.

64.     The Judicial Center was closed on Tuesday, March 24, 2020 because SPO Douglas had tested positive for COVID-19 and DDOI staff was quarantining. Id.., at Exs. D at 32:24-33:2,

E at 38:20-23.

65.     On March 24, 2020, Deputy Chief Lucas, still stationed in Manhattan and at the direction of her supervisor Chief DelRio, sent an email to DOCCS and NY DOC staff stationed in Rikers, asking for certain incarcerated individuals, including Plaintiff, to have release interviews on Wednesday, March 25, 2020. Id., Ex. E at 53:9-18; Lucas Decl. at ¶¶22-24.

66.     The release list was drafted by DDOI. Lucas Decl. at ¶25; Cha Decl., Ex. E at 29:24-30:3.

67.     While SPO Douglas was out sick with COVD-19, Deputy Chief Rose Williams and Parole Officer Sheila Bailey determined the release schedule. Cha Decl., Ex. D at 36:15-40:1.

68.     Because Plaintiff was a discretionary sex offender, field operations had to determine whether he would need an escort. Id. at 34:9-17.

69.     On Thursday, March 26, 2020, it was determined that Plaintiff did not need an escort, and SPO Dolly Vega sent an email to DOCCS staff that Plaintiff did not require an escort. Id., at Exs. D, 34:18-35:22, D-3 at STATE DEFS 000151.

70.     On Friday March 27, 2020, Tami Cafariella at Internal Operations reached out to DOCCS staff inquiring about the status of Plaintiff's release. McIntosh Decl. ¶6,

71.     Deputy Chief Lucas was not copied on this email. Id.

72.     On the same date, and email was from Yvonne Oliver, Assistant Regional Director at DOOCS, asking SPO Dolly Vega to confirm the status of Plaintiff's release. Id. at ¶7.

73.     On the same date, an email was distributed among DOCCS staff that Plaintiff's release interview was on March 27, 2020, and the warrant lift was processed. Id. at ¶8.

74.     Deputy Chief Lucas was not copied on this email. Id.

75.     On March 27, 2020, Plaintiff's counsel Matthew Finston sent an e-mail to DOCCS

staff, and copied Legal Aid attorneys Lorraine McEvilley and Elon Harpaz, inquiring about Plaintiff's release. Cha Decl., Ex. E-3 at 000821.

76.     Deputy Chief Lucas was not copied on this e-mail. Id.

77.     Legal Aid attorney Lorraine McEvilley responded to the email stating that she was "adding dep Lucas and Williams" but Deputy Chief Lucas was not copied on the e-mail. Id.; Lucas Decl. at ¶¶29, 32.

78.     On the morning of March 31, 2020, Deputy Chief Lucas received an e-mail from Senior Parole Officer Jacqueline Kennedy. Lucas Decl. at ¶34.

79.     Shortly thereafter, Deputy Chief Lucas received an e-mail Craig Mausler, Assistant Counsel to the Board of Parole, authorizing Plaintiff's release. Id. at ¶35.

80.     This was the first time Deputy Chief Lucas saw authorization for Plaintiff's release come from Counsel's Office. Id. at ¶36.

81.     Deputy Chief Lucas immediately thereafter made a phone call to DDOI because on March 31, 2020 there were no supervisors stationed at DDOI, and she was the only supervisor at work. Id. at ¶37; Cha Decl., Ex. E at 41:10-14.

82.     Deputy Chief Lucas spoke with Parole Officer Sheila Bailey, who at the time was processing the discharges of the releasees, and inquired about Plaintiff's release status. Cha Decl., Ex. E at 41:12-42:11; Lucas Decl. at ¶38.

83.     Deputy Chief Lucas did not make the call prior to this date because she was assigned to holding hearings at the Manhattan Office, not to orchestrate discharges at Rikers Island, and also because she did not have authorization from the Board of Parole's Counsel's Office to release the Plaintiff. Cha Decl., Ex. E at 42:12-20.

84.     Plaintiff was released on March 31, 2023. FAC ¶30.

Dated: New York, New York
       November 27, 2023

                                        LETITIA JAMES
                                        Attorney General
                                        State of New York
                                        <u>Attorney for State Defendants</u>
                                        By:
                                        /s/   *Gee Won Cha*
                                        Gee Won Cha
                                        Assistant Attorney General
                                        28  Liberty Street
                                        New York, New York 10005
                                        (212) 416-8373
                                        Geewon.Cha@ag.ny.gov