UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X

MODESTO RODRIGUEZ,                                  :
                                                    :          21-CV-8565 (AS)
                                        Plaintiff,  :
                                                    :
       - against -                                  :
                                                    :
THE CITY OF NEW YORK, WARDEN STEVEN                 :
BASTIAN, OFFICER MICHELLE GONZALEZ,                 :
ANTOINETTE DOUGLAS AND LACHONDA                     :
LUCAS,                                              :
                                                    :
                                       Defendants.  :
                                                    :
------------------------------------------------------------- X


**MEMORANDUM OF LAW IN SUPPORT OF STATE DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**



                              LETITIA JAMES
                              Attorney General
                              State of New York
                              <u>Attorney for State Defendants</u>
                              28 Liberty Street, 18th Floor
                              New York, New York 10005
                              (212) 416-8373



Gee Won Cha
Assistant Attorney General
      <u>Of Counsel</u>

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ......................................................................... ii

PRELIMINARY STATEMENT ....................................................................1

STATEMENT OF FACTS .............................................................................2

STANDARD OF REVIEW ...........................................................................7

LEGAL ARGUMENT....................................................................................8

POINT I       PLAINTIFF'S MALICIOUS PROSECUTION CLAIM SHOULD BE DISMISSED DUE TO PLAINTIFF'S GUILTY PLEA AT THE FINAL HEARING...............................................................................................8

POINT II      STATE DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY ........10

      A.  Defendant Gonzalez Is Entitled to Qualified Immunity Because She Did Not Act Unreasonably..............................................................................11

      B.  Defendant Lucas Is Entitled to Qualified Immunity Because She Did Not Violate a Clearly Established Right and Did Not Act with Deliberate Indifference in Violation of the Eighth Amendment .......................................12

CONCLUSION.............................................................................................16

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Allen v. Cuomo,
    100 F.3d 253, 258 (2d Cir. 1996)............................................................................7

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986).............................................................................................7

Ashcroft v. al-Kidd,
    563 U.S. 731 (2011)...........................................................................................11

Blyden v. Mancusi,
    186 F.3d 252, 262 (2d Cir. 1999)......................................................................13

Brunson v. Duffy,
    14 F. Supp. 3d 287 (S.D.N.Y. 2014)................................................................12

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986).............................................................................................7

Collins v. Rodriguez,
    138 A.D.2d 809....................................................................................................9

Davis v. State of New York,
    316 F.3d 93 (2d Cir. 2002)..................................................................................8

Duse v. IBM,
    252 F.3d 151 (2d Cir 2001).................................................................................7

Francis v. Fiacco,
    942 F.3d 126 (2d Cir. 2019)..............................................................................13

Goldring v. Davidson,
    No. 18 Civ. 6201, 2020 WL 1547464 (S.D.N.Y. Apr. 1, 2020).......................12

Gonzalez v. City of Schenectady,
    728 F.3d 149 (2d Cir. 2013)..............................................................................10

Hathaway v. Coughlin,
    37 F.3d 63 (2d Cir. 1994)..................................................................................13

Hathaway v. Coughlin,
    99 F.3d 550 (2d Cir. 1996)....................................................................................13

Hayes v. Annucci,
    No. 14 Civ. 8845, 2016 WL 1746109 (S.D.N.Y. Apr. 29, 2016) ...........................12

Hurd v. Fredenburgh,
    984 F.3d 1075 (2d Cir. 2021)........................................................................ passim

Jackson v. Annucci,
    No. 19 Civ. 2013, 2020 WL 882903 (S.D.N.Y. Feb. 24, 2020) ...........................12

Kulak v. City of New York,
    88 F.3d 63 (2d Cir. 1996)........................................................................................8

LaRocco v. Jackson,
    No. 10 Civ 01651, 2012 WL 947554 (E.D.N.Y. Mar. 19, 2012) ...........................9

Matzell v. Annucci,
    64 F.4th 425 (2d Cir. 2023) ..................................................................................12

Mitchell v. City of New York,
    841 F.3d 72 (2d Cir. 2016).......................................................................................8

Okoi v. El Al Israel Airlines,
    378 Fed. Appx. 9 (2d Cir.2010) ...............................................................................9

People ex rel. Campolito v. Bennet,
    296 A.D.2d 835 (4th Dept. 2002) .............................................................................9

People ex rel. Chavis v. McCoy,
    236 A.D.2d 892 (4th Dept. 1997) .............................................................................9

People ex rel. Rouse v. New York State Div. of Parole,
    20 Misc. 3d 926 (Sup. Ct. 2008)...............................................................................9

Poe v. Leonard,
    282 F.3d 123 (2d Cir. 2002).....................................................................................14

Rivera v. City of Yonkers,
    470 F. Supp. 2d 402 (S.D.N.Y. 2007)........................................................................8

Salahuddin v. Goord,
    467 F.3d 263 (2d Cir. 2006)......................................................................................8

Sample v. Diecks,
    885 F.2d 1099 (3d Cir. 1989)..................................................................................15

Taravella v. Town of Wolcott,
    599 F.3d 129, 133-34 (2d Cir. 2010) ...................................................................11

**Constitutions**

Eighth Amendment ................................................................................................ passim

Fourteenth Amendment ..............................................................................................12

**Rules**

Fed. R. Civ. P. 56.........................................................................................................1

Fed. R. Civ. P. 56(a) ....................................................................................................7

Fed. R. Civ. P. 56(c) ....................................................................................................7

## PRELIMINARY STATEMENT

Defendants Michelle Gonzalez ("Defendant Gonzalez") and Lachonda Lucas ("Defendant Lucas") (collectively "State Defendants"), by their attorney, Letitia James, Attorney General of the State of New York, respectfully submit this memorandum of law in support of their motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Plaintiff, Modesto Rodriguez, alleges that on October 31, 2019, his parole officer, Defendant Gonzalez, maliciously prosecuted him when she charged him with violating a condition of his release. The basis of Plaintiff's malicious prosecution claim relates to Charge 3, which was presented at Plaintiff's preliminary hearing and charged Plaintiff for possessing a cellular phone with camera operability. Plaintiff thus relies on a subsequent decision from a New York State Supreme Court, which held that Charge 3 was not founded on probable cause. However, Plaintiff's malicious prosecution claim fails because Plaintiff cannot meet an essential element of the claim – that the matter was terminated in his favor – due to Plaintiff's own guilty plea at his final revocation hearing ("final hearing") which was entered nearly a month *prior* to the Court decision. Thus, despite the Court subsequent decision, Plaintiff's guilty plea to violating a general condition of his parole adjudicated any challenge to his preliminary hearing, rendering it moot. In any event, Defendant Gonzalez should be entitled to qualified immunity because  it was not clearly established at the time that Charge 3 violated Plaintiff's rights, and a reasonable official in her position would not believe she violated Plaintiff's constitutional right in charging Plaintiff with violations of the condition of his release when Plaintiff himself admitted to violating a condition of his release through a guilty plea.

Moreover, Plaintiff's over-detention claim against Defendant Lucas for the twelve days he spent incarcerated, from the date of the state court decision ordering his release to when he was actually released, fails because Defendant Lucas did not act deliberately indifferent in violation of

1

Plaintiff's Eighth Amendment rights. Defendant Lucas acted reasonably and in good faith as it related to Plaintiff's release, and she should also be entitled to qualified immunity.

State Defendants request that this Court hear their second motion for summary judgment due to evidence that was not available to them when filing their pre-discovery summary judgment motion in May 2022. Specifically, upon information and belief, discovery was not exchanged until September 2022, months after the filing of the State Defendants' first, pre-discovery motion for summary judgment. This discovery includes Plaintiff's final hearing minutes which serve as the basis for Defendant Gonzalez's mootness and qualified immunity argument. State Defendants' depositions were also not conducted until October 18, 2020 and October 20, 2020. Defendant Lucas's testimony establishes Defendant Lucas's role and actions as it related to Plaintiffs release and serves as the basis for her qualified immunity argument. Therefore, now with a complete record which State Defendants believe can demonstrate that there are no issues of material fact in dispute, State Defendants respectfully request for this Court to hear their second, post-discovery motion for summary judgment.

## STATEMENT OF FACTS

Plaintiff, Modesto Rodriguez, was released to the custody of the Department of Corrections and Community Supervision ("DOCCS") on or about May 1, 2017, following a conviction of Sexual Abuse in the First Degree. Cha Decl., Exs. A at 35:5-8; 56:10-12, B at STATE DEFS 00047. As part of the conditions of his parole, Plaintiff signed Conditions of Release. Cha Decl., Ex. F. The Conditions of Release stated that Plaintiff would fully comply with the instructions of his parole officer, including obeying special additional written conditions. Id. at STATE DEFS 00050. Sometime in August 2019, Defendant Gonzalez was assigned as Plaintiff's parole officer. Cha Decl., Ex. C at 16:3-11, Gonzalez Decl. at ¶9. Defendant Gonzalez imposed special additional

written conditions, which Plaintiff signed on or about October 22, 2019. Cha Decl., Exs. C at 34:5-14, G; Gonzalez Decl. ¶¶13-14. As part of the special conditions, Plaintiff was prohibited, among other conditions, from having a cellular phone with a camera or photo taking capabilities, from having more than one cellular phone, and from possessing pornographic materials. Gonzalez Decl. at ¶¶15-17. Defendant Gonzalez allowed Plaintiff to possess a smartphone after Plaintiff informed her that he had disabled the camera and it appeared disabled to Defendant Gonzalez. Id. at ¶18, Cha Decl. Cha Decl., Ex. C at 18:18-23. On October 31, 2019, Defendant Gonzalez searched Plaintiff's residence. Exs. C at 43:5-16, Ex. A at 82:12-17; Gonzalez Decl. at ¶19. Pursuant to the search, Defendant Gonzalez found Plaintiff's smart phone to have an operable camera and Plaintiff's smart phone's internet history showed access to pornography sites on October 30, 2019, and October 31, 2019. Cha Decl., Ex. C at 25:25-26:8, 29:21-30:5 Gonzalez Decl. at ¶¶21,23. Plaintiff was also found to be in possession of two cellular phones. Gonzalez Decl. at ¶19. These were all in violation of the special conditions imposed on Plaintiff, and Defendant Gonzalez thereafter charged Plaintiff with 18 violations to the conditions of his release.  Gonzalez Decl. at ¶¶20, 22, 24, 25; Cha Decl., Exs. C at  21:17-22, C-1.

On November 13, 2019, a preliminary hearing was conducted for the purpose of determining whether there was probable cause to believe Plaintiff had violated one or more of his conditions of his release in an important respect. Gonzalez Decl. at ¶26.  Defendant Gonzalez elected to go forward with Charge number 3, which read that Plaintiff "violated . . . the Conditions of Release in that on or about 10/31/019 he failed to fully comply with . . . the special additional written conditions that were imposed when . . . he possessed 1 LG smart cell phone with photo capability." Cha Decl., Exs. C at  21:23-22:6, C-1 at RODRIGUEZ00036, C-2; Gonzalez Decl., ¶26; FAC ¶22. Plaintiff was represented by counsel, Matthew Finston from Legal Aid Society.

Cha Decl., Exs. A at 151:15-21, C-2. The Administrative Law Judge ("ALJ") found probable cause as to that charge. Cha Decl., Exs. C at 22:7-9,  C-2 at 34:11-15; Gonzalez Decl., ¶27.  Had the ALJ not found probable cause, Defendant Gonzalez would have proceeded on any other violation of condition of release. Cha Decl., Ex. C at 22:14-18; Gonzalez Decl., ¶28.

On or about January 2, 2020, Matthew Finston filed a writ of habeas corpus ("the writ") challenging the parole violation. FAC ¶25; Cha Decl., Ex. H. On February 24, 2020, a final hearing was held before ALJ John Casey as it related to Plaintiff's parole violation charges. Cha Decl., Ex. I. At the hearing, Plaintiff plead guilty to Charge number 19: "violat[ing] a condition of release." Id. at 15:15-18. Prior to taking the guilty plea, ALJ Casey explained the finality of the writ, explaining that "the writ is done after this," and ALJ Casey even offered to adjourn the present hearing so Plaintiff could "have a last grasp at the writ." Id. at 11:25-12:2; 13:4-14. Instead, Plaintiff elected to take the guilty plea because he wanted to "get this over with." Id. at 13:11-14.

On March 15, 2020, New York State entered a lock down due to COVID-19. https://www.cdc.gov/museum/timeline/covid19.html. On March 19, 2020, four days after the lockdown but nearly one month after Plaintiff's guilty plea, Justice Margaret Clancy granted Plaintiff's writ of habeas corpus ("Writ decision") and ordered that Plaintiff's warrant be vacated. FAC ¶26, Cha Decl., Ex. J. On March 22, 2020, Mr. Finston e-mailed DOCCS staff, including Antoinette Douglas, who at the time was a senior parole officer in the Declared Delinquent Other Institution ("DDOI"), and Defendant Lucas, who at the time was Deputy Chief of the Parole Violation Unit ("PVU"). Cha Decl., Exs. D at 14:23-15:7, E at 15:18-16:5, E-1 at STATE DEFS 000297; Lucas Decl., ¶5. Mr. Finston notified them of Judge Clancy's decision on Plaintiff's writ, ordering Plaintiff's warrant to be vacated. Cha Decl., Ex. E-1 at STATE DEFS 000297. On the same date, legal aid attorney Elon Harpaz responded stating that he was "concerned" about

Matthew alerting everyone about Plaintiff's warrant "because the final hearing was already completed" and he didn't "want anyone to flag that" and hoped the warrant "would go through quietly and pretty much be a done deal" before Attorney General David Cheng swung into action." Id. at STATE DEFS 000296-97; Lucas Decl. at ¶14. Defendant Lucas responded that DDOI staff will check Plaintiff's status in a more reliable system the next morning. Cha Decl. Ex. E-1, at STATE DEFS 000296. Defendant Lucas was referring to a system that DDOI uses to check whether a warrant is active, and it is a system that Defendant Lucas does not have access to. Cha Decl., Exs. E at 50:19-51:25; Lucas Decl. at ¶16. The next morning, Defendant Lucas learned from Antoinette Douglas that DDOI had not received authorization for Plaintiff's release from the Board of Parole's Counsel's Office ("Counsel's Office"). Lucas Decl. at ¶18. Authorization from Counsel's Office is required for the release of a parolee. Cha Decl., Ex D at 20:8-15; 22:5-23:1, 26:8-17; 28:25-29:6; Mcintosh Decl. at ¶3; Lucas Decl. at ¶10.

DDOI, which is located at the Judicial Center in Rikers Island, is in charge of the releases of incarcerated individuals. Cha Decl., Exs. D at 14:25-15:10, E at 19:12-20:2. When an incarcerated parolee is ordered to be released, DDOI works up the parolee's paperwork, checks any conditions that need to be applied such as needing an escort upon their release, checks the housing situation, schedules a release interview, and prepares documents. Id., Ex. D at 16:5-17:5; 34:9-17. After the initial preparation of the case, DDOI staff lifts the parolee's parole warrant by removing the warrant from the parolee's movement card and replacing it with a Warrant Lift Authorization. Id. at 22:18-23:1, 18:5-25. The Warrant Lift Authorization Form is signed by Antoinette Douglas or another parole officer on her behalf, and the movement card is given to New York City Corrections ("NYC DOC"), and they begin the process of releasing the incarcerated person. Id., Ex. D at 16:5-17:5, 18:5-19:11.

PVU, on the other hand, is in charge for the parole revocation proceedings, and consists of Parole Revocation Specialists, who are assigned cases and are responsible for representing DOCCS in parole revocation proceedings of a parolee/releasee who has been charged with violating their condition of release. Cha Decl., Ex. E at 15:4-9; Lucas Decl. at ¶¶7-8. At the time of the alleged incident, PVU staff worked in the Manhattan office, except when holding revocation proceedings, which took place on Rikers Island. Lucas Decl. at ¶9.

Starting on March 23, 2020, Antoinette Douglas was on sick leave due to COVID-19. Cha Decl., Ex. D at 32:1-3. On Tuesday, March 24, 2020, the entire DDOI staff quarantined, and the Judicial Center was closed. Id. Exs. D at 32:24-33:2, E at 38:20-23. In response to the short staffing due to COVID-19 and Antoinette Douglas's absence, Defendant Lucas was instructed by her supervisor, Chief of PVU Edward DelRio, to continue the coordination of activities from the Manhattan office and supervise PVU staff that were presenting cases in the revocation process, and Bureau Chief Rose Williams, who typically works out of Manhattan, was assigned to coordinate the activities out of Rikers Island, which included the discharges of releases. Id., Exs. E at 21:8-23; 23:12-23; E-2 at STATE DEFS 00013, D at 38:11-15; Lucas Decl. ¶17. During all relevant times, DOCCS staff worked diligently towards effectuating Plaintiff's release, including scheduling his release interview and determining whether he needed an escort, which was necessary to determine due to his status as a sex offender. Cha Decl., Exs E at 24:14-20, D at 34:9-35:22, D-3 at STATE DEFS 000151-52.

Meanwhile, Defendant Lucas continued to review and resolve all the open revocation cases from the Manhattan office as she was instructed to do. Cha Decl., Exs. E at 21:8-23; 23:12-23, E-2 at STATE DEFS 00013; Lucas Decl. ¶17. While authorization for Plaintiff's release had been sent via e-mail from Counsel's Office prior to March 31, 2020, Defendant Lucas was not a

recipient of those e-mails.  McIntosh Decl. ¶¶4-5. When Plaintiff was not released as of March 27, 2020, Plaintiff's legal aid attorneys inquired to DOCCS staff about Plaintiff's status, but Defendant Lucas was not a recipient of the e-mail. Cha Decl., Ex. E-3 at 000821, Lucas Decl. at ¶¶29, 32. On March 31, 2020 that Defendant Lucas was asked to look into the status of Plaintiff's release when she received an email from Senior Parole Officer Jacqueline Kennedy. Id. at ¶34. Shortly thereafter on the same date, she saw for the first time, authorization for Plaintiff's release come from Counsel's Office. Id. at ¶¶35-36. Knowing that there were no supervisors at DDOI on that time and date due to short staffing from COVID-19 absences, Defendant Lucas acted immediately by calling DDOI staff and ascertained the status of Plaintiff's release and assisted with his release. Id. at ¶¶37-39; Cha Decl., Ex. E at 41:10-42:11.

## STANDARD OF REVIEW

A party is entitled to summary judgment where there are no issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Defendant has no burden to present evidence or disprove the elements of Plaintiff's claims on this motion; "Rule 56(c) mandates the entry of summary judgment…against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A defendant's motion "must prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried." Allen v. Cuomo, 100 F.3d 253, 258 (2d Cir. 1996).

A defendant is entitled to summary judgment if the undisputed facts reveal an absence of sufficient proof as to any essential element of a claim. Duse v. IBM, 252 F.3d 151, 158 (2d Cir 2001). "[W]here there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements of the claim are immaterial and cannot defeat a

motion for summary judgment." <u>Salahuddin v. Goord</u>, 467 F.3d 263, 281 (2d Cir. 2006). Further, "conclusory statements, conjecture, or speculation by the party resisting the motion" will not defeat a motion for summary judgment. <u>Kulak v. City of New York</u>, 88 F.3d 63, 71 (2d Cir. 1996). "The nonmoving party must go beyond the pleadings and by his or her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." <u>Davis v. State of New York</u>, 316 F.3d 93, 100 (2d Cir. 2002) (citations omitted).

## **LEGAL ARGUMENT**

I.   **PLAINTIFF'S MALICIOUS PROSECUTION CLAIM SHOULD BE DISMISSED DUE TO PLAINTIFF'S GUILTY PLEA AT THE FINAL HEARING[1]**

In order to prevail on a malicious prosecution claim under both New York and federal law, "a plaintiff is required to demonstrate: (i) the commencement or continuation of a criminal proceeding against [him]; (ii) the termination of the proceeding in [his] favor; (iii) that there was no probable cause for the proceeding; and (iv) that the proceeding was instituted with malice." <u>Mitchell v. City of New York</u>, 841 F.3d 72, 79 (2d Cir. 2016) (quotation marks and citations omitted).

Plaintiff cannot demonstrate the second element that the proceeding was terminated in his favor, as, it is well-settled that a guilty plea is not a termination in favor of the accused. <u>Rivera v. City of Yonkers</u>, 470 F. Supp. 2d 402, 408 (S.D.N.Y. 2007). Here, while Plaintiff contested Charge 3 at his preliminary hearing, Plaintiff ultimately plead guilty to a charge that he "violated a condition of release" at his final hearing. Cha Decl., Ex. I at 15:15-22. Because Plaintiff cannot

---

[1] Judge McMahon previously dismissed Count II, Due Process Violation, of Plaintiff's Complaint, ruling that Defendant Gonzalez is entitled to qualified immunity. <u>See</u> Dkt. 45, p.32.

meet an essential element of his claim for malicious prosecution, his claim should be dismissed. LaRocco v. Jackson, No. 10 Civ 01651, 2012 WL 947554, at *3 (E.D.N.Y. Mar. 19, 2012) (holding that plaintiff's unchallenged guilty plea precludes a finding of "termination of the proceedings in [his] favor.") Okoi v. El Al Israel Airlines, 378 Fed. Appx. 9, 11-12 (2d Cir.2010) (Plaintiff's guilty plea, even when later dismissed under a "conditional discharge" agreement, defeated Plaintiff's malicious prosecution claim").

Although Plaintiff seeks to challenge his guilty plea due to Judge Clancy's Writ decision which vacated Plaintiff's warrant and held that Charge 3 was not founded on probable cause, the Writ decision was issued nearly *one month after* Plaintiff's guilty plea, and thus cannot invalidate Plaintiff's plea. It is well-settled under New York State law that any challenge to a preliminary parole revocation hearing is rendered moot by the final parole revocation determination. People ex rel. Rouse v. New York State Div. of Parole, 20 Misc. 3d 926, 929 (Sup. Ct. 2008) ([u]pon finding that petitioner violated a condition of his release following his guilty plea to the curfew violation, any issue concerning the sufficiency of the evidence at the preliminary hearing was waived by petitioner and subsumed by the revocation of parole."); see also Collins v. Rodriguez, 138 A.D.2d 809, 809(1988) ("[t]he issue of whether the alleged acts provided probable cause to support the Hearing Officer's determination at the preliminary parole revocation hearing has been subsumed by revocation of petitioner's parole). Thus, Plaintiff's guilty plea at his final revocation hearing rendered moot any challenges to preliminary hearing determination. People ex rel. Rouse, 20 Misc. 3d 926, 929 (Sup. Ct. 2008); People ex rel. Chavis v. McCoy, 236 A.D.2d 892 (4th Dept. 1997) (rejecting challenge to propriety of preliminary hearing when parole was revoked after guilty plea); People ex rel. Campolito v. Bennet, 296 A.D.2d 835 (4th Dept. 2002) (petitioner's

contention that Division of Parole failed to meet its burden of establishing parole violation held no merit because petitioner pled guilty to one of the violations charged).

Moreover, Plaintiff did not plead guilty to Charge 3 at his final hearing, and that charge was not the basis of Plaintiff's ultimate violation and incarceration. Instead, Plaintiff plead guilty to a general violation to the condition of his release, as there were multiple charges that were brought. Cha Decl., Exs. I, C-1. Finally, Plaintiff himself acknowledged that his writ "[was] done" after his guilty plea. Cha Decl., Ex. I at 11:25-12:2, and explicitly refused to adjourn the final hearing even when given the opportunity by the Administrative Law Judge to have "a last grasp at the writ." Id. at 12:22-13:12. Plaintiff instead elected to plead guilty and stated to "give [him] the 12 months DOCCS" because he wanted to "get this over with." Id. at 13:11-14. It also appears that even Legal Aid, who was representing Plaintiff, acknowledged this issue, when Elon Harpaz expressed concern about drawing attention to Judge Clancy's Writ decision "because the final hearing was already completed" and didn't "want anyone to flag that" and have the Assistant Attorney General "sw[i]ng into action." Cha Decl., Ex. E-1 at STATE DEFS 0000296-0000297. Plaintiff already received the benefit of our Office failing to file an opposition to Plaintiff's writ based on his guilty plea, and so he should not receive the benefit of succeeding on a malicious prosecution claim after pleading guilty to violating a condition of his release.

## II.      STATE DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

The Second Circuit has instructed that "[t]he issues on qualified immunity are: (1) whether plaintiff has shown facts making out the violation of a constitutional right; (2) if so, whether that right was 'clearly established'; and (3) even if the right was 'clearly established,' whether it was 'objectively reasonable' for the officer to believe the conduct at issue was lawful." Gonzalez v.

City of Schenectady, 728 F.3d 149, 154 (2d Cir. 2013) (citing Taravella v. Town of Wolcott, 599 F.3d 129, 133-34 (2d Cir. 2010)).

### A. Defendant Gonzalez Is Entitled to Qualified Immunity Because She Did Not Act Unreasonably

The Supreme Court instructs "not to define clearly established law at a high level of generality."  Ashcroft v. al-Kidd, 563 U.S. 731, 742 (2011).  At the time of Plaintiff's violation, Defendant Gonzalez could not have known that the law was clearly established that Charge 3 violated Plaintiff's rights.  Judge Clancy's holding that Charge 3 was not based on probable cause (made well after the charges were preferred) did not rely on any specific precedent, but relied on the general principle that parole conditions must be reasonable. See Cha Decl., Ex. J. This is not the type of specificity that the qualified immunity analysis requires.  Ashcroft, 563 U.S. at 742 (the law was clearly established that the charges violated Plaintiff's rights).

In any event, Plaintiff plead guilty to violating a condition of his release and therefore has not shown facts making out the violation of a constitutional right. See Point I supra. As such, no reasonable official in Defendant Gonzalez's position would believe they were violating Plaintiff's constitutional rights by charging Plaintiff's with violating a condition of release when Plaintiff himself plead guilty to violating a condition of release. Therefore, a reasonable officer in Defendant Gonzalez's position would believe their actions to be lawful and Defendant Gonzalez should be entitled to qualified immunity.

11

**B. Defendant Lucas Is Entitled to Qualified Immunity Because She Did Not Violate a Clearly Established Right and Did Not Act with Deliberate Indifference in Violation of the Eighth Amendment[2]**

While the Second Circuit in Hurd v. Fredenburgh established that an over-detention of even one day "qualifies as a harm of constitutional magnitude" in violation of the Eighth Amendment (Hurd v. Fredenburgh, 984 F.3d 1075, 1085 (2d Cir. 2021)), the Second Circuit also recently ruled that prior to Hurd's decision, there was no precedent establishing that the prolonged detention past one's release date violated the Eighth Amendment. Matzell v. Annucci, 64 F.4th 425, 435 (2d Cir. 2023) (law was not clearly established prior to the decision in Hurd that denying prisoner opportunity to obtain early release by denying entry to Shock, a bootcamp program, would violate Eighth Amendment, and thus officials were entitled to qualified immunity). Here, Plaintiff's alleged over-detention occurred in March 2020, and at that time, there was notable precedent that a twelve-day delay did not constitute a constitutional deprivation. See Jackson v. Annucci, No. 19 Civ. 2013, 2020 WL 882903, at *3 (S.D.N.Y. Feb. 24, 2020) ("incarceration for twenty-eight days beyond the expiration of his sentence does not constitute a serious constitutional deprivation"); Hayes v. Annucci, No. 14 Civ. 8845, 2016 WL 1746109 at *5 (S.D.N.Y. Apr. 29, 2016) (delay "for seventeen days beyond his conditional release date" did not violate the law without needing to reach qualified immunity); Brunson v. Duffy, 14 F. Supp. 3d 287, 294 (S.D.N.Y. 2014) (no constitutional injury from release "twenty-one days after he filed the petition"); see also Goldring v. Davidson, No. 18 Civ. 6201, 2020 WL 1547464, at *3 (S.D.N.Y. Apr. 1, 2020) ("not 'clearly established' at the time of the alleged violation that Plaintiff's unauthorized confinement of seventeen days constitutes a 'sufficiently serious deprivation").

---

[2] Judge McMahon previously ruled that Plaintiff's Complaint failed to state a claim for deliberate indifference to over-detention under the Fourteenth Amendment and thus, State Defendants are proceeding under an Eighth Amendment analysis. See Dkt. 45, p. 37.

Assuming arguendo that Plaintiff's alleged over-detention was a harm of constitutional magnitude because it involved a writ of habeas corpus, Hurd still instructs that there should be a finding of a constitutional violation *only* where that harm is deliberately inflicted. Hurd v. Fredenburgh, 984 F.3d 1075, 1085 n.4 (2d Cir. 2021) (emphasis added). Here, Plaintiff cannot establish deliberate indifference as to Defendant Lucas's conduct.

To sufficiently plead a claim of deliberate indifference under the Eighth Amendment, Plaintiff must allege facts showing both an objective and subjective element. Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996). Objectively, [t]he alleged deprivation must be "sufficiently serious." Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994). Subjectively, the charged official must act with a sufficiently culpable state of mind. Id. Therefore, Plaintiff must allege more than mere negligence, as an Eighth Amendment violation typically requires "a state of mind that is the equivalent of criminal recklessness." Hathaway v. Coughlin, 99 F.3d at 553 (2d Cir. 1996). "[T]his standard requires that only the deliberate infliction of punishment, and not an ordinary lack of due care for prisoner interests or safety, lead to liability." Francis v. Fiacco, 942 F.3d 126, 150 (2d Cir. 2019) (quoting Blyden v. Mancusi, 186 F.3d 252, 262 (2d Cir. 1999)).

Assuming that Plaintiff's alleged over-detention was sufficiently serious, the record is clear that Defendant Lucas did not act with a sufficiently culpable state of mind, let alone with criminal recklessness. Defendant Lucas, at all relevant times, worked out of PVU, which was tasked with parole revocation proceedings in the Manhattan office. Cha Decl., E at 15:4-16:9; Lucas Decl. at ¶¶5, 7-8. The record is also clear that DDOI is responsible for preparing cases for release, scheduling release interviews, and the ultimate removal and lifting of a warrant. Cha Decl., Exs. D at 14:25-10, 16:5-17:5, 18:5-19:11, 22:18-23:1, 34:9-17; E at 19:12-20:2, 30:10-15; Lucas Decl. ¶10. It is also clear that authorization must first come from the Board of Parole's Counsel's Office

13

in order to release a releasee. Cha Decl., Ex D at 28:23-29:5; Declaration of Mcintosh Decl., at ¶3; Lucas Decl. at ¶10. Despite working out of PVU and not out of DDOI, Defendant Lucas responded to the initial inquiry from Plaintiff's counsel on March 22, 2020 about Plaintiff's status by stating that DDOI would check Plaintiff's status. Cha Decl., Exs. E at 50:19-51:25, E-1 at STATE DEFS 000296; Lucas Decl. at ¶15. Defendant Lucas then learned from DDOI that authorization had not yet come from Counsel's Office. Lucas Decl. at ¶18.  After the March 22, 2020 email from Matthew Finston to which Defendant Lucas responded, Defendant Lucas did not receive authorization from Counsel's Office to release Plaintiff until March 31, 2020.  Lucas Decl. at ¶35. In any event, Defendant Lucas trusted that the staff at DDOI was working to ensure the releases of incarcerated individuals, as she knew there was staff at DDOI assigned to discharges, and she herself was not tasked with orchestrating releases, but was instead tasked with overseeing parole revocation hearings. Cha Decl., Ex. E at 42:12-20; Lucas Decl. at ¶17.The record shows that as soon as she received authorization from Counsel's Office on March 31, 2020 as well as a simultaneous request to look into Plaintiff's release, she acted immediately, knowing that she was "the only one working" and that no supervisor was present at the time to oversee DDOI staff. Cha Decl., Ex. E at  41:10-14; Lucas Decl. at ¶¶37-38.  Defendant Lucas was entitled to rely on the actions and decisions of others, including her superiors in Counsel's office, regarding the timing of Plaintiff's release.  See Poe v. Leonard, 282 F.3d 123, 144 (2d Cir. 2002) ("Supervisors cannot be expected to reinvent the wheel with every decision, for that is administratively unfeasible; rather, they are entitled to rely upon the decisions of their predecessors or subordinates so long as those decisions do not appear to be obviously invalid, illegal or otherwise inadequate").

It is therefore clear from the evidence that Defendant Lucas acted in good faith, first by relying on the system in place and the instructions from her supervisor that DDOI would be

coordinating releases, and that she would be coordinating revocation proceedings, and secondly, by acting promptly when she knew the system was disrupted due to no supervisors being available and upon receiving authorization from Counsel's Office. "Because such discretion is necessary to the administration of prisons, an official acting in good faith within that discretion, although in the process perhaps injuring an inmate, has not inflicted a cruel and unusual punishment upon that inmate. <u>Sample v. Diecks</u>, 885 F.2d 1099, 1099 (3d Cir. 1989).

Finally, when considering whether the conduct was objectively reasonable, it is important to note that Plaintiff's writ was granted on March 19, 2020, which was "literally at the beginning of the COVID-19 shutdown in March 2020 . . . the whole world was falling apart at that time, and it well may be something of a miracle that the DOCCS officials were able to sort this out in a few as twelve days . . . whether that period is unreasonable is not something that can be decided on a pre-discovery motion." ECF No. 45, p. 39, n.10. There is now ample evidence to show that despite the short staffing and the entire staff of DDOI quarantining at times due to COVID-19, DOCCS's officials continued to work towards Plaintiff's release, including scheduling Plaintiff's release interview, even when the Judicial Center was completely closed on March 24, 2020 (resulting in a backlog of interviews), and determining whether Plaintiff needed an escort as required by sex offenders, which required additional staff. Cha Decl., Exs. D at 32:24-33:2; 34:9-17, E at 38:20-23. Due to the administrative requirements and a pandemic shutting the world down, it was not unreasonable for Plaintiff to have been detained for 12 days. Moreover, Defendant Lucas clearly acted reasonably given the circumstances and certainly not with a sufficiently culpable state of mind as required by the Eighth Amendment. Therefore, Defendant Lucas should be applauded, not rebuked, for her efforts and fast action, or in the very least, be entitled to qualified immunity.

## **CONCLUSION**

For the reasons set forth above, State Defendants respectfully request that State Defendants' summary judgment be granted, and the case be dismissed in its entirety.

Dated: New York, New York
      November 27, 2023

                                        LETITIA JAMES
                                        Attorney General
                                        State of New York
                                        <u>Attorneys for State Defendants</u>

                                        By: <u>/s/  *Gee Won Cha*</u>
                                        Gee Won Cha
                                        Assistant Attorney General
                                        28 Liberty Street, 18th Floor
                                        New York, New York 10005
                                        Phone: (212) 416-8373
                                        Geewon.Cha@ag.ny.gov