Case No. 21-CV-8565

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MODESTO RODRIGUEZ,

Plaintiffs,

-against-

THE CITY OF NEW YORK, WARDEN STEVEN
BASTIAN, OFFICER MICHELLE GONZALEZ,
ANTOINETTE DOUGLAS, AND LACHONDA
LUCAS,

Defendants.

**HON. SYLVIA O. HINDS-RADIX**
*Corporation Counsel of the City of New York*
*Attorney for Defendant City of New York*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  Jacquelyn Dainow*
*Tel:  (212) 356-0896*
*Matter #:  2021-022663*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY ............................................ 2

LEGAL STANDARD............................................................................................................. 6

ARGUMENT

POINT I

THE CITY IS ENTITLED TO STATE SOVEREIGN IMMUNITY AND SUMMARY JUDGMENT ON PLAINTIFF'S *MONELL* CLAIM ................................. 7

POINT II

DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S STATE LAW CLAIMS ................................................................................. 19

a.   False Imprisonment....................................................................... 19

b.   Article 1 § 6 of the NYS Constitution ............................................. 21

CONCLUSION.................................................................................................................... 23

## TABLE OF AUTHORITIES

**Cases**                                                                                    **Pages**

*Ackerson v. City of White Plains*,
   702 F.3d 15 (2d Cir. 2012)..................................................................................20

*Alen v. Antal*,
   665 F. App'x 9, 13-14 (2d Cir. 2016)....................................................................22

*Allen v. Antal*,
   2014 U.S. Dist. LEXIS 79031 (S.D.N.Y. Mar. 13, 2014) ......................................22

*Alwan v. City of New York*,
   311 F. Supp. 3d 570 (E.D.N.Y. 2018) ............................................................. 21-22

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)...............................................................................................6

*Ayers v. Coughlin*,
   72 N.Y.2d 346 (1988) ...........................................................................................16

*Bethesda Lutheran Homes & Servs. v. Leean*,
   154 F.3d 716 (7th Cir. 1998) ................................................................................14

*Broome County v. State*,
   141 Misc. 2d 693 (N.Y. Sup. Ct., Broome Co. 1988),
   *affd.*, 152 A.D.2d 160 (N.Y. App. Div., 3d Dept. 1989) ........................................ 9, 10, 15-16

*Broughton v. State of New York*,
   37 N.Y.2d 451 (1975) ...........................................................................................19

*Buari v. City of New York*,
   530 F.Supp.3d 356 (S.D.N.Y. 2021).....................................................................21

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)...............................................................................................6

*Coakley v. Jaffe*,
   49 F. Supp. 2d 615 (S.D.N.Y. 1999).....................................................................22

*Davis v. State*,
   257 A.D.2d 112 (N.Y. App. Div., 3d Dept. 1999)...........................................9, 15

*Dister v. The Continental Group, Inc.*,
   859 F.2d 1108 (2d Cir. 1988)..................................................................................6

**Cases** <span style="float:right">**Pages**</span>

*Donas v. City of New York*,
2008 N.Y. Misc. LEXIS 8465 (Sup. Ct. N.Y. Co. Jan. 21, 2008),
aff'd, 62 A.D.3d 504 (1st Dep't 2009)......................................................................22

*Dupree v. Pough*,
454 F. Supp. 2d 166 (S.D.N.Y. 2006)......................................................................20

*Ellsworth v. City of Gloversville*,
269 A.D.2d 654, 703 N.Y.S.2d 294 & 657 (App. Div. 3d Dep't 2000)...................20

*Gathers v. White*,
04-CV-5454, 2007 U.S. Dist. LEXIS 9054 (E.D.N.Y. Feb. 8, 2007) ......................20

*Hampton Co. Nat. Sur., LLC v. Tunica Co., Miss.*,
543 F.3d 221 (5th Cir. 2008) ....................................................................................8

*Harris v. Serpas*,
745 F.3d 767 (5th Cir.), *cert. denied*, 574 U.S. 823 (2014)......................................8

*Holland v. City of Poughkeepsie*,
90 A.D.3d 841 (App. Div. 2d Dept. 2011) ...............................................................19

*Huminski v. Rutland Co. Sheriff's Dept.*,
211 F. Supp. 2d 520 (D. Vt. 2002),
*affd., sub nom. Huminski v. Corsones*, 386 F.3d 116 (2d Cir. 2004)................7, 12

*James v. Harris Co.*,
577 F.3d 612 (5th Cir. 2009) ....................................................................................8

*Jeffes v. Barnes*,
208 F.3d 49 (2d Cir. 2000)........................................................................................8

*Joy v. New York*,
09-cv-841, 2010 U.S. Dist. LEXIS 104641 (N.D.N.Y. Sept. 30, 2010)..............9, 15

*Keenan v. Tejeda*,
290 F.3d 252 (5th Cir. 2002) .............................................................................8, 11

*Lee v City of New York*,
272 A.D.2d 586 (App. Div. 2d Dept. 2000) .............................................................19

*Lyles v. State*,
770 N.Y.S.2d 81 (2d Dep't 2003)............................................................................22

*Maldonado v. City of N.Y.*,
2014 U.S. Dist. LEXIS 26239 (S.D.N.Y. Feb. 26, 2014)........................................22

**Cases**                                                                   **Pages**

*Martinez v. City of Schenectady,*
    97 N.Y.2d 78 (2001) ...................................................................................21

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
    475 U.S. 574 (1986)......................................................................................6

*McDay v. Travis,*
    303 Fed. Appx. 928 (2d Cir. 2008) ......................................................13, 14

*McMillian v. Monroe County,*
    520 U.S. 781 (1997)................................................................7, 11, 12, 15

*Mejia v. City of New York,*
    228 F. Supp. 2d 234 (E.D.N.Y., Sept. 5, 2002) .................................8, 12

*Monell v. Dept. of Social Servs.,*
    436 U.S. 658 (1978)........................................1, 2, 6, 7, 8, 11, 12, 17, 19

*N.N. v. Madison Metro. Sch. Dist.,*
    670 F. Supp. 2d 927 (W.D. Wis. 2009) ..............................................14, 15

*Oviatt v. Pearce,*
    954 F.2d 1470 (9th Cir. 1992) ..............................................................12

*Piotrowski v. City of Houston,*
    237 F.3d 567 (5th Cir.2001) ...................................................................8

*Townes v. New York State Metropolitan Transp. Auth.,*
    2011 N.Y. Misc. LEXIS 4507 (Sup. Ct. Nassau Co. Sept. 14, 2011) ....................................22

*Visigraph Typewriter Mfg. Co. v. C. Spiro Mfg. Co.,*
    122 Misc. 852 (N.Y. Sup. Ct., New York Co.1923)............................15

*Vives v. City of New York,*
    524 F.3d 346 (2d Cir. 2008)..................................................................14

*Will v. Mich. Dept. of State Police,*
    491 U.S. 58 (1989).................................................................................7, 8

**Statutes**

42 U.S.C. § 1983............................................................................2, 6, 7, 8, 14, 22

Fed. R. Civ. P. 12(b)(6).........................................................................................6

Fed. R. Civ Pro. 56(a) ......................................................................................1, 6

**Statutes**                                                                                    **Pages**

N.Y. Correction Law § 500-c(4) ..........................................................................18

N.Y. Exec. Law § 259-i(3) ...................................................................................16

N.Y. Exec. Law § 259-i(3)(a)(ii) ......................................................................9, 15

**Other Authorities**

Mark R. Brown, *The Failure of Fault Under § 1983: Municipal Liability for State
      Law Enforcement*, 84 Cornell L. Rev. 1503, 1506 and 1530 (1999) ........................................7

N.Y. Comp. Codes R. & Regs. tit. 9, § 8004.2(c) (1978) ..............................................20

New York State Constitution Article I §§ 1, 8, 9, 11, and 12 ........................................6

New York State Constitution Article I § 6 ............................................1, 6, 19, 21, 22

## <u>PRELIMINARY STATEMENT</u>

Defendant, the City of New York (the "City"), submits this memorandum of law in support of its motion for summary judgment, pursuant to Fed. R. Civ Pro. 56(a) to dismiss Plaintiff's three remaining claims against it, *i.e.*, a violation of Article I § 6 of the New York State Constitution, a State law claim for false imprisonment, and also a *Monell* claim, as set forth in his First Amended Complaint ("FAC"). Plaintiff, Modesto Rodriguez alleges that DOC falsely imprisoned him and denied him due process of law when he was not released from Rikers Island for 12 days following his writ for *habeas corpus* being sustained. Plaintiff further alleges that the New York City Department of Correction ("DOC") has an unconstitutional policy of holding parolees until it receives a parole warrant lift from the New York State Department of Corrections and Community Supervision ("DOCCS"). As will be explained below, the City should be granted judgment as a matter of law because it is entitled to State Sovereign Immunity. The City is also entitled to summary judgment as Plaintiff has failed to prove that an unconstitutional DOC policy exists. Lastly, the City is entitled to summary judgment as the evidence in this case clearly shows that DOC cannot release an inmate without documentation confirming that the inmate should in fact be released, and Plaintiff was released the same day that DOC received his warrant lift from DOCCS. As such, Plaintiff was not falsely imprisoned by DOC nor was his due process violated. Therefore, this Court should grant the City's motion for summary judgment and dismiss the FAC in its entirety.

## FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

Plaintiff brought this action against the City and former DOC Warden Steven Bastian[1] (together, "City Defendants"), as well as Officer Michelle Gonzalez, Antoinette Douglas[2], and Lachonda Lucas, three employees of DOCCS, alleging constitutional and common law violations due to his release from jail allegedly occurring twelve days after his writ of habeas corpus was granted. As to City Defendants, Plaintiff specifically alleged a claim under 42 U.S.C. § 1983 for "deliberate indifference to over-detention" against Defendant Bastian, a *Monell* claim, and State law claims for false imprisonment, negligence, and various violations of the New York State Constitution against the City. As will be discussed below, many of these claims were dismissed by Judge Colleen McMahon in a Decision and Order dated August 22, 2022 (ECF No. 45).

In this case, Plaintiff was under parole supervision of DOCCS in 2019 for a underlying conviction for sexual abuse in the first degree.. FAC at ¶¶ 18, 19; Dainow Decl., Exhibit E, P. 35, L. 5-8. On October 22, 2019, while Plaintiff was under DOCCS parole supervision, Defendant Michelle Gonzalez, Plaintiff's parole officer, imposed a special condition of parole prohibiting Plaintiff from having a cell phone with an operable camera. *Id.* at ¶¶ 14, 18. That same day, Defendant Gonzalez also allegedly checked the phone that Plaintiff owned and told him that he could use the phone, as it complied with the special condition. *Id.* at ¶ 20. However, on October 31, 2019, Plaintiff alleges that Defendant Gonzalez charged Plaintiff with a parole violation for possessing and using the same cell phone with an operable camera that she had approved. *Id.* at ¶¶ 21, 22. On or about that date, Plaintiff was arrested and incarcerated at Rikers Island. *Id.*

---

[1] Warden Steven Bastian was discontinued from this matter on August 22, 2022. ECF No. 45.

[2] Antoinette Douglas was voluntarily dismissed from this matter on November 1, 2023. ECF No. 72.

Plaintiff alleges that the only reason he was incarcerated was because State Defendant Gonzalez imposed the allegedly unconstitutional special condition on him and then tricked him into violating the special condition by approving his phone for use. *Id.* at ¶ 23. On November 13, 2019, a preliminary hearing was held on the charged parole violation. *Id.* at ¶ 22. The hearing officer found there was probable cause of a parole violation.. *Id.* at ¶ 24.

In January 2020, Plaintiff filed a petition for writ of habeas corpus in the Supreme Court of New York, Bronx County. *Id.* at ¶¶ 25, 26. He argued that: (1) the special condition was arbitrary and infringed on his constitutional rights and (2) there was insufficient evidence to support the probable cause determination at his preliminary hearing. DOCCS and the warden of the Eric M. Taylor Center, a facility on Rikers Island, were named as respondents. *See* Dainow Declaration ("Dainow Decl."), Exhibit A.

On March 19, 2020, Justice Clancy, Supreme Court, Bronx County, issued a decision granting the writ of habeas corpus (the "*habeas* order"). *See* Dainow Decl., Exhibit B. Justice Clancy first recognized that, "At this stage of the parole revocation proceedings, the court's power is limited to determining whether the required procedural rules were followed and whether there is sufficient evidence in the record which, if believed, would support the hearing officer's probable cause determination. *Id.* Justice Clancy then found the evidence insufficient to support a finding of probable cause. *Id.* Specifically, Justice Clancy found the following: (1) it was "undisputed that two separate parole officers approved of petitioner's possession of that particular cell phone;" (2) it was "undisputed that the cell phone was capable of taking pictures ... because it had a camera;" and (3) "there were no pictures on the phone taken after the special conditions were imposed." *Id.* Justice Clancy concluded, "it can hardly be a violation of a parole condition for petitioner to possess the very same photo-capable cell phone that he received permission to possess by his

parole officer when the special condition was imposed." *Id.* Justice Clancy did "not reach petitioner's constitutional argument concerning the validity of the special condition at issue." *Id.*; ECF No.10 at ¶ 27. Having granted the petition for a writ of *habeas* corpus, Justice Clancy vacated the parole warrant and ordered that Plaintiff be released and restored to parole supervision, unless some other valid reason existed to hold Plaintiff in custody. *See* Dainow Decl., Exhibit B; ECF No. 10 at ¶ 28.

Plaintiff alleges, without any proof as to DOC, that the writ was promptly distributed to DOC and DOCCS officials after it was granted on March 19, 2020 (ECF No. 10 at ¶ 29) and that Plaintiff's counsel "notified both the DOC and DOCCS multiple times starting on March 19, 202[0], about the need to release Plaintiff immediately, [b]ut nothing was done." *Id.* at ¶ 38. Plaintiff asserts that he was not timely released because of an unconstitutional City policy. *Id.* at ¶ 33. Specifically, he alleges that it was the official policy of the City "to effectively ignore writs of habeas corpus until DOCCS lifts the parole hold, even if there is no justification for the detention." *Id.* at ¶ 32. In support of this allegation, Plaintiff alleges that a parole warrant stays in effect until DOC receives a parole warrant lift from the DOCCS Division of Parole. *Id.* at ¶ 32. Plaintiff has not offered any proof that DOC was provided with a copy of the *habeas* order or that DOC was informed by anyone, perhaps other than Plaintiff himself, that any such order had been issued.

Plaintiff further alleges that State DOCCS employees – Defendants Lachonda Lucas and Antoinette Douglas – knew about this unconstitutional policy and had the ability to lift the parole hold but "deliberately delayed [lifting the hold], inevitably causing [him] to remain in custody." *Id.* at ¶ 34, 36, 37.  Specifically, on March 22, 2020, Defendant Lucas was allegedly informed about the delay in releasing Plaintiff, at which time "she knew the system they use for tracking parole warrants is inaccurate, writing [to Plaintiff] that 'DOCS look up often lists the warrants as

being active but they are usually not.' (sic)." *Id.* at ¶ 35. Defendant Lucas allegedly told Plaintiff's counsel that "DDOI" [Declared Delinquent Other Institution[3]] staff will check the status in a more reliable system" but Plaintiff alleges that she "never actually had DDOI staff check the status" of Plaintiff's parole warrant and "did not direct DDOI take any other steps to ensure [his] release from custody." *Id.* at ¶ 36. Similarly, Defendant Douglas allegedly was notified of the court order, but likewise "did nothing to secure Plaintiff['s] [] release by lifting the parole hold." *Id.* at ¶ 37. Plaintiff was not released until March 31, 2020. *Id.* at ¶ 30.

On March 31, 2020, DOCCS Parole Officer Sheila Bailey sent Plaintiff's warrant lift authorization via email to DOC Correction Officer ("CO") Adam Figueroa in Custody Management, as Defendant Douglas was out sick with COVID-19. Dainow Decl., Exhibits C, D & F, P. 31-32, L. 23-3, 25. The warrant lift authorization, dated March 31, 2020, stated that the Board of Parole authorized that Plaintiff's warrant be lifted on that date. Dainow Decl., Exhibit D. On that same day, *i.e.*, March 31, 2020, upon receipt of Plaintiff's warrant lift authorization, CO Figueroa forwarded it to the facility where Plaintiff was being housed on Rikers Island (OBCC[4]) in order to effectuate his immediate release, barring any other parole holds or detainers. Dainow Decl., Exhibits I & J, Exhibit E, P. 154, L. 10. Plaintiff was released from custody on March 31, 2020. *Id.*; ECF No. 10 at ¶ 30. Plaintiff's *habeas* Order was never received by DOC. Dainow Decl., Exhibit J. Further, the above-referenced email was the first and only notification DOC received with a warrant lift authorization for Plaintiff. *Id.*

Plaintiff filed the instant lawsuit on June 29, 2021 in the Supreme Court of the State of New York, Bronx County. Defendants timely removed this action to this Court. Plaintiff filed an

---

[3] DDOI is part of DOCCS.

[4] Otis Bantum Correctional Center.

Amended Complaint on December 31, 2021. On February 17, 2022, City Defendants moved to dismiss the Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, on the grounds that it: (i) lacked sufficient factual allegations showing Defendant Bastian's personal involvement in the alleged deprivation of Plaintiff's rights, and (ii) failed to state a claim on which relief may be granted. Judge McMahon granted in part and denied part City Defendants' motion in an Order and Decision dated August 22, 2022. ECF No. 45. Specifically, the Judge dismissed Plaintiff's claim against Defendant Bastian for deliberate indifference to over-detention pursuant to 42 U.S.C. § 1983 with prejudice, and dismissed Defendant Bastian from the case. The Judge also dismissed Plaintiff's State claim for negligence, as well as Plaintiff's claim for violations of Article I §§ 1, 8, 9, 11, and 12 of the New York State Constitution, against the City. However, the Judge denied the City's motion to dismiss with respect to Plaintiff's claim for violation of Article I § 6 of the New York State Constitution, as well as Plaintiff's State law claim for false imprisonment, and also *Monell* claim, against the City.

## LEGAL STANDARD

Fed. R. Civ. P. 56(a) provides in pertinent part, that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." See *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Dister v. The Continental Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988). Thus, "where the record as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation omitted). "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

**ARGUMENT**

**POINT I**

**THE CITY IS ENTITLED TO STATE SOVEREIGN IMMUNITY AND SUMMARY JUDGMENT ON PLAINTIFF'S *MONELL* CLAIM**

Defendant the City of New York is entitled to state sovereign immunity and, thus, should be granted summary judgment. The State of New York and state officers are vested with immunity from monetary relief in this action. *See Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989) ("We hold that neither a State nor its officials acting in their official capacities are "persons" under § 1983" and thus are immune from 1983 monetary claims). Local officials acting at the non-discretionary command of the state are, however, entitled to the same Eleventh Amendment immunities from section 1983 liability afforded to states. *McMillian v. Monroe County*, 520 U.S. 781, 784 (1997) (dismissing 1983 claims against sheriff and county because they were acting pursuant to state policies about which the county lacked discretion, and as such local law enforcement officers were acting as state, not local, actors); and *Huminski v. Rutland Co. Sheriff's Dept.*, 211 F. Supp. 2d 520, 531-532 (D. Vt. 2002), *affd., sub nom. Huminski v. Corsones*, 386 F.3d 116 (2d Cir. 2004) (finding that county sheriff acting pursuant to state direction in providing courthouse security was functioning as a state officer and was thus vested with state sovereign immunity). *See also* Mark R. Brown, *The Failure of Fault Under § 1983: Municipal Liability for State Law Enforcement*, 84 Cornell L. Rev. 1503, 1506 and 1530 (1999) (citing *McMillian* and positing that local government units, like their officials, are not liable under 1983 when enforcing state law, as "cities are not liable because they did not 'choose' the policy at issue," and "[t]he Tenth and Eleventh Amendments' vertical checks on federal power caution against an expansive interpretation of institutional liability under 1983"); and *Will*, at 491 U.S. at 70 (noting that finding

of sovereign immunity against 1983 actions applies to "States or governmental entities that are considered arms of the State for Eleventh Amendment purposes") (quotation omitted).

This analysis tracks traditional *Monell* analysis of claims against municipalities – which the Supreme Court itself noted in *Will*[5] – where "'municipal liability under section 1983 requires proof of three elements: (1) a policymaker; (2) an official policy; and (3) violation of constitutional rights whose moving force is the policy or custom.'" *Hampton Co. Nat. Sur., LLC v. Tunica Co., Miss.*, 543 F.3d 221, 227 (5th Cir. 2008) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir.2001). "'To hold a municipality liable under [42 U.S.C.] § 1983…a plaintiff must show, in addition to a constitutional violation, that an official policy promulgated by the municipality's policymaker was the moving force behind, or actual cause of, the constitutional injury.'" *Harris v. Serpas*, 745 F.3d 767, 774 (5th Cir.), *cert. denied*, 574 U.S. 823 (2014) (quoting *James v. Harris Co.*, 577 F.3d 612, 617 (5th Cir. 2009)). Additionally, "[a] government entity may be held liable under § 1983 only when the injury results from the 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts and acts may fairly be said to represent official policy.'" *Keenan v. Tejeda*, 290 F.3d 252, 262 (5th Cir. 2002) (quoting *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 694 (1978)). Further, in a § 1983 case, a plaintiff may also prove liability on the part of a municipality "by showing [] an omission or failure to act by the municipality that is so significant as to constitute 'deliberate indifference' to the rights of individuals." *Mejia v. City of New York*, 228 F. Supp. 2d 234, 243 (E.D.N.Y., Sept. 5, 2002). *See also City of Canton,* 489 U.S. at 389, 109 S. Ct. at 1205; *Jeffes v. Barnes,* 208 F.3d 49, 61 (2d Cir. 2000).

---

[5] 491 U.S. at 70 (noting that "our holding here does not cast any doubt on *Monell*").

In New York, "the State, not the County, is responsible for the imposition and enforcement of post-release supervision," including parole. *Joy v. New York*, 09-cv-841, 2010 U.S. Dist. LEXIS 104641, *18 (N.D.N.Y. Sept. 30, 2010) (*sua sponte* dismissing 1983 claims against county and county officials following plaintiff's arrest for violating post-release supervision conditions). A state issued parole warrant is a command – not a suggestion – to local law enforcement authorities to hold the subject of the warrant, and the local law enforcement authority is not a policy maker. *Davis v. State*, 257 A.D.2d 112, 116 (N.Y. App. Div., 3d Dept. 1999) ("whether an issued warrant is to be executed is indeed compulsory"). "Any such officer to whom such warrant shall be delivered is authorized and *required to execute such warrant by taking such person and having him detained.*" N.Y. Exec. Law § 259-i(3)(a)(ii) (emphasis added). *See also Broome County v. State*, 141 Misc. 2d 693, 698 (N.Y. Sup. Ct., Broome Co. 1988), *affd.*, 152 A.D.2d 160 (N.Y. App. Div., 3d Dept. 1989) (finding that state parole warrant "is…a directive from the Division [of Parole] to the Sheriff, allowing the Division to exercise its authority under the Executive Law to bring about the return of parole violators"). DOCCS is clear on its website that parole warrants "remain in effect with no right to bail throughout the violation process." New York State Dept. of Corr. and Community Supervision, *Community Supervision Handbook: Revocation*, *available at* https://doccs.ny.gov/community-supervision-handbook/revocation (last accessed November 23, 2023).

Testimony on behalf of the other parties confirmed the above. Plaintiff's own deposition testimony established that State, not City officials, were responsible for his continued detention. Specifically, Plaintiff testified that he called DOCCS in Albany to see if his warrant was lifted and was told that they were waiting for paperwork. Dainow Decl., Exhibit E, P. 104, L. 14-15; P. 105, L. 3. He further testified that DOCCS said that they were waiting for a document from Albany and

that his understanding was that without approval from Albany, he could not be released. *Id.* at P. 111, L. 15-21. Further, when asked if he asked anyone at the jail why he had not been released yet after his *habeas* order, he answered that he only asked his lawyer (and thus no one at the jail). *Id.* at P. 161, L. 16-22. Despite the fact that he also testified that he "call[ed] Rikers Island, [and] ask[ed] them if they got the paperwork," for which Plaintiff has failed to produce any evidence of, such is irrelevant as Plaintiff fails to state with whom he spoke, to what paperwork he referred, and – most importantly – that he actually provided a copy of his *habeas* order to anyone at DOC. *Id.* at p. 102-03, L. 24-6. He further testified that after speaking with his Legal Aid attorney, who Plaintiff offered only hearsay testimony that his lawyer told him he would make some calls to see why Plaintiff was not yet released, it was his understanding that "[s]upposedly the parole people didn't lift the warrant, [a]nd basically they were putting all the blame on Rikers Island and the people from Albany and the parole." *Id.* at P. 162, L. 2-6.  Moreover, when asked who from the City he was alleging arrested him without probable cause and who allegedly brought false charges against him, he testified that it was his parole officers, who are State, not City, actors. *Id.* at P. 166, L. 21-25; P. 167, L. 5-9. Thus, by his own sworn testimony, Plaintiff stated that he was detained due to the State, not the City. Further, and of note, Plaintiff testified that neither he, nor his Legal Aid attorney, made any motions or petitions to any court to try to get him released between March 19, 2020 and March 31, 2020. *Id.* at P. 162, L. 7-11.

Further, State Defendants testified that DOC is not involved in the process of lifting parole warrants. Specifically, Defendant Lucas testified that after an inmate's release interview, the inmate's warrant would be lifted by DDOI staff. Dainow Decl., Exhibit G, P. 25-26, L. 21-23; 1. Defendant Douglas testified that DOCCS Parole has to first close/vacate an inmate's warrant before it can be lifted; DOCCS "cannot lift an active warrant." Dainow Decl., Exhibit F, P. 20, L.

12-15, 17-18. She further testified that once DOCCS lifts a warrant and sends DOC a warrant lift authorization, DOC would begin the process of releasing the inmate. *Id.* at P. 17, L. 2-5; P. 18, L. 17-25. Additionally, according to Defendant Douglas, a warrant lift authorization is the only form DOCCS would send to DOC. *Id.*, P. 51, L. 6-9. She also testified that in this case, PO Sheila Bailey signed Plaintiff's warrant lift authorization and sent it to DOC. *Id.*, P. 20, L. 5, P. 48, L. 12. She further testified that in this case, the warrant lift would have been emailed to Custody Management for processing (which it was in this case). *Id.*, P. 50-51, L. 23-5. Additionally, she testified that information in the DOCCS Mainframe system, where a warrant is listed as closed, is never provided to DOC, nor does DOC have access to the Mainframe. *Id.*, P. 52-52, L. 19-5. Defendant Gonzalez testified that the [DOCCS] Parole Violation Unit is responsible for sending an inmate's warrant lift to DOC. Dainow Decl., Exhibit H, P. 57, L. 2-16. Thus, it is clear that DOC has no discretion in holding parolees who were issued parole warrants; DOC must wait for a warrant lift authorization from DOCCS in order to release the inmate (barring any other parole holds or detainers).

Moreover, and as sworn to by DOC Captain Jamal Rigault in Custody Management, in his Declaration, in 2020, DOCCS would lift inmates' parole warrants and then send the warrant lifts to DOC Custody Management. Dainow Decl., Exhibit J.  Captain Rigault also stated that a parole hold stays in effect - and the inmate is thus not released - until DOC receives a parole warrant lift from DOCCS. *Id*. DOC requires documentation confirming the lift of the inmate's warrant prior to effectuating the inmate's release.  *Id.* Captain Rigault also stated that in his experience, in 2020, *habeas* orders were generally sent by the court to DOCCS, after which DOCCS would send DOC a warrant lift. *Id.* This, thus, indicates a state, not local policy, without any of the local policymaking influence discussed in *Keenan* and necessary under *McMillian* and *Monell*.

Accordingly, acting as a state agent, precisely as the local sheriff did in *Huminski*,, DOC is entitled to the same immunity.

Absent City discretion under state law, the City is merely acting as the agent of the State of New York, which has crafted a parole detention process that eliminates local discretion and utilizes local jails without granting local officials any discretion in whether those parolees are held. Following *McMillian*, that lack of discretion creates a concomitant lack of liability. Again, Plaintiff testified, the issue, if any, in this case arose in Albany, not New York City. Further, "there is no Second Circuit precedent regarding the failure to have adequate policies," and the municipality is only liable where its failure reflects a deliberate or conscious choice." *Mejia*, 228 F. Supp 2d at 244 (citing *Oviatt v. Pearce,* 954 F.2d 1470, 1478 (9th Cir. 1992)). Clearly, no "deliberate or conscious choice" was made by DOC to continue to detain Plaintiff after his writ for *habeas corpus* was granted; DOC never received the court order and could not release Plaintiff until it received a warrant lift from DOCCS confirming he could in fact be released. Thus, DOC was not "deliberately indifferent" here and, as such, Plaintiff's *Monell* claim fails. Thus, the Court should reject Plaintiff's claims and grant the City relief.

The lack of control or discretion in Plaintiff's continued custody notwithstanding, as soon as State parole officials successfully lifted Plaintiff's parole warrant and sent DOC the warrant lift, DOC moved expeditiously to release Plaintiff from custody. Specifically, and as sworn to by CO Adam Figueroa in his Declaration, on March 31, 2020, Sheila Bailey at DOCCS emailed him Plaintiff's warrant lift which stated that the Board of Parole authorized Plaintiff's warrant to be lifted on that date. Dainow Decl., Exhibits C, D & I.  CO Figueroa stated that once he received that warrant lift, he forwarded it to the facility where Plaintiff was being housed in order to effectuate Plaintiff's immediate release, barring any parole holds or detainers. Dainow Decl.,

Exhibit I. CO Figueroa also stated that it is his understanding that Plaintiff was released that same day, *i.e.*, on March 31, 2020. *Id.* Plaintiff's release on March 31, 2020 was also confirmed by Captain Rigault who also stated that Plaintiff was released the same day that DOC received his warrant lift. Dainow Decl., Exhibit J. Captain Rigault further stated that the email from DOCCS to CO Figueroa was the first and only notification DOC received with a warrant lift for Plaintiff, and that Plaintiff's *habeas* order was never received by DOC. *Id*.

Additionally, the undisputed existence of an actual duly-issued parole warrant directing DOC to detain Plaintiff until further "action by DOCCS or a court of competent jurisdiction" (*see* Dainow Decl., Exhibit K) is in contrast to cases that hinged on the existence of doubt or questions about the legal underpinning of a parole detention. As such, any reliance on *McDay v. Travis*, 303 Fed. Appx. 928 (2d Cir. 2008) – where the Second Circuit noted that "[t]o be sure, the record does not clearly demonstrate whether the aforementioned regulations may be attributed to the City or the State," and that "at least in this case, the rules were in apparent tension with state law, which explicitly denied the City authority to hold plaintiff on that basis after the warrant expired" - would be misplaced. 303 Fed. Appx. at 931. Here, as Defendant Lucas testified, only DOCCS would be notified by the Board of Parole that an inmate has received a writ of *habeas corpus* and that the inmate should be released. Dainow Decl., Exhibit G, P. 18-19, L. 24-2. She also testified that after that occurs, DDOI[6] reviews the case and preps it in order to set up a release interview for the releasee. *Id.* at P. 19, L. 15-20. This is in line with Defendant Douglas' testimony that after a warrant is closed, a release interview is scheduled. Dainow Decl., Exhibit F, P. 31, L .14-22. Of note, in this case, it had to be determined whether or not Plaintiff needed an escort due to his underlying sex offense conviction (he did not). *Id.*, P. 34, L. 11-21. Further, Defendant Lucas

---

[6] Declared Delinquent Other Institution, which is part of DOCCS.

testified that if an inmate's warrant lift form is not sent from DOCCS to DOC, the inmate would remain in custody. Dainow Decl., Exhibit G, P. 55, L. 2-4.  Accordingly, it is clear that DOC cannot release an inmate without a warrant lift from DOCCS confirming that the inmate's warrant has in fact been lifted.

That is manifestly different than the record before the Circuit in *McDay,* and answers the very questions the Circuit raised in *Vives v. City of New York*, where the Circuit remanded back "because there is much that we still do not know about" the nature of state policies at issue and whether they were mandatory or permissive. 524 F.3d 346, 356 (2d Cir. 2008). Courts that have considered this issue after *McDay* have picked up on that thread, and their decisions have turned on the issue of whether local officials had discretion under state law. *N.N. v. Madison Metro. Sch. Dist.*, 670 F. Supp. 2d 927, 941 (W.D. Wis. 2009) (collecting cases and finding "[i]n sum, I conclude that a municipality cannot be held liable under § 1983 for efforts to implement a state mandate when the plaintiff cannot point to a separate policy choice made by the municipality"). In this matter, there is no sperate policy choice made by the City to which plaintiff can point.

Where, as here, there is no local discretion, "it is the policy contained in that state or federal law, rather than anything devised or adopted by the municipality, that is responsible for the injury," which precludes local liability under § 1983. *Id., quoting Bethesda Lutheran Homes & Servs. v. Leean*, 154 F.3d 716, 718 (7th Cir. 1998). Further, as can be seen from the unrefuted testimony of Defendant Douglas, once DOCCS lifts a warrant and sends DOC a warrant lift authorization, DOC would begin the process of releasing the inmate. Dainow Decl., Exhibit F. at P. 17, L. 2-5; P. 18, L. 17-25. Moreover, the testimony of Defendant Gonzalez is also clear that the DOCCS Parole Violation Unit is responsible for sending an inmate's warrant lift to DOC. Dainow Decl., Exhibit

H, P. 57, L. 2-16. Accordingly, this clearly precludes any possibility of City discretion, and as such, the City is not liable.

It is hornbook law that an agent owes utmost fidelity to their principal, and the City, as a political subdivision of the State of New York and subordinate to its laws, owed its utmost fidelity to its principal in this circumstance, DOCCS. *See, e.g., Visigraph Typewriter Mfg. Co. v. C. Spiro Mfg. Co.*, 122 Misc. 852, 855 (N.Y. Sup. Ct., New York Co.1923), *quoting* 1 Clarke & Skyles Law of Agency, 907-909 (1905) (discussing "[t]he duty of an agent to act with good faith and loyalty towards his principal"). If the lack of City discretion did not matter, the Circuit would not have remanded *Vives* back for further record development. *A priori*, the Circuit's holding in *Vives* establishes that unrefuted evidence disproving local discretion is controlling here. The Court should recognize this as *McMillian, N.N.* and others have, find that the City was acting as an arm of the State of New York, and rule in favor of the City.

A State-issued parole warrant is by its own terms is a command – not a suggestion – to local law enforcement authorities to hold the subject of the warrant, and the local law enforcement authority is not a policymaker. *Davis v. State*, 257 A.D.2d 112, 116 (N.Y. App. Div., 3d Dept. 1999) ("whether an issued warrant is to be executed is indeed compulsory"); and *Joy v. New York*, 09-cv-841, 2010 U.S. Dist. LEXIS 104641, *18 (N.D.N.Y. Sept. 30, 2010) (*sua sponte* dismissing 1983 claims against county and county officials following plaintiff's arrest for violating post-release supervision conditions as "the State, not the County, is responsible for the imposition and enforcement of post-release supervision"). "Any such officer to whom such warrant shall be delivered is authorized and *required to execute such warrant by taking such person and having him detained*," until state parole officials notify them that parole violation proceedings have concluded. N.Y. Exec. Law § 259-i(3)(a)(ii) (emphasis added). *See also Broome County v. State*,

141 Misc. 2d 693, 698 (N.Y. Sup. Ct., Broome Co. 1988), *affd.*, 152 A.D.2d 160 (N.Y. App. Div.,

3d Dept. 1989) (finding that state parole warrant "is…a directive from the Division [of Parole] to

the Sheriff, allowing the Division to exercise its authority under the Executive Law to bring about

the return of parole violators"). DOCCS is clear on its website that parole warrants "remain in

effect with no right to bail throughout the violation process." New York State Dept. of Corr. and

Community Supervision, *Community Supervision Handbook: Revocation*, *available at*

https://doccs.ny.gov/community-supervision-handbook/revocation (last accessed November 23,

2023). That is a State – not City – website posting a State – not City – policy, regarding the general

enforcement of State warrants that, as illustrated in the mandatory language of the Parole Warrant

itself, leave no local discretion. Dainow Decl., Exhibit K. Lest there be any doubt, the New York

Court of Appeals resolved the issue of state control over thirty years ago in *Ayers v. Coughlin*,

holding:

> Both the trial court and the Appellate Division correctly determined that petitioner Sheriffs
> lack standing to challenge the alleged failure on the part of the Division of Parole to
> schedule timely parole revocation procedures under Executive Law § 259-i(3). Those
> statutory procedures were plainly designed for the protection of the parolees, and are
> enforceable by them; *they give the Sheriffs no role in the scheduling or conduct of the
> hearings.*

72 N.Y.2d 346, 354-355 (1988) (emphasis added).

Perhaps to bolster his claims against the City to overcome the City's lack of discretion in

detaining parolees against whom DOCCS has issued parole warrants, Plaintiff alleges a purported

City practice of unlawfully detaining parolees, with nothing more. ECF No. 10, at ¶¶ 32, 33.

Specifically, Plaintiff alleges a City policy to "ignore writs of habeas corpus until DOCCS lifts the

parole hold, even if there is no justification for the detention." *Id.* at ¶ 32. However, as the evidence

here establishes, DOC ignored nothing; it was never informed of the *habeas* order. Plaintiff reaches

even further in citing testimony of Captain Anthony Monastero, head of the DOC Custody

Management Unit, in *Uviles,* No. 19-cv-3911 (E.D.N.Y. 2023), that states that the parole warrant stays in effect until DOC receives a parole warrant lift, to purportedly support this proposition. *Id.*

However, not only is Plaintiff's claim that the City ignores writs patently false, but Plaintiff has failed to offer any evidence establishing that such was true in this case. In fact, the evidence herein entirely disproves this claim altogether. Specifically, Captain Rigault, in his Declaration, stated that Plaintiff's *habeas* order was never received by DOC. Dainow Decl., Exhibit J. He further stated that the first and only notification that DOC received with Plaintiff's warrant lift was on March 31, 2020, *i.e.*, the date Plaintiff was released from custody. *Id.* He also stated that DOC needs documentation confirming the lift of the warrant prior to processing an inmate for release, barring any other parole holds or detainers. Dainow Decl., Exhibit J. Moreover, CO Figueroa, in his Declaration, stated, and Captain Rigault confirmed, that as soon as DOCCS sent DOC Plaintiff's warrant lift, DOC forwarded it to where Plaintiff was being housed to immediately effectuate his release, barring any holds or detainers, and Plaintiff was released that same day, *i.e.* March 31, 2020. Dainow Decl., Exhibits I & J. Further, Plaintiff has also failed to offer any evidence establishing a City practice of unlawfully detaining paroles in City-controlled jails, and even assuming *arguendo* that such a practice existed, that is was controlled in any manner by City officials. As Plaintiff has failed to prove the allegations on which his *Monell* claim hinges, his claim should be dismissed.

Further, other testimony elicited in *Uviles,* No. 19-cv-3911 (E.D.N.Y. 2023), is highly relevant herein. Specifically, Senior New York State Parole Officer Gwendolyn Hogan was unequivocal that neither the City, DOC, nor any City personnel were involved in the process of lifting parole warrants or had any discretion in having to detain prisoners with active parole warrants. Dainow Decl., Exhibit L, at P. 51, L. 15 – P. 52, L. 20. When asked "to your knowledge,

does City DOC have any discretion" in holding parolees for whom the State has issued parole warrants, SPO Hogan replied "no," in addition to confirming that the process of lifting parole warrants was "entirely a state process." *Id.,* at P. 51, L. 15 – P. 52, L. 20. SPO Hogan also testified that "[u]ntil we walk in with the warrant lift form, the City of New York or DOC is not involved." *Id.*, P. 52, L. 11-13. She further testified that State law and policy explicitly required the City to detain the plaintiff until told otherwise by DOCCS, or upon the order of a court of competent jurisdiction. *Id.*, at P. 51, L. 15 – P. 52, L. 20. Accordingly, this clearly forecloses the possibility of City discretion, as DOC must wait for documentation from DOCCS and/or a court order, and thus forecloses City liability.

Yet, Plaintiff will nonetheless try to convince this Court that the City should simply ignore State laws and engage in what amounts to unilateral self-help by simply deciding to release parolees on its own. However, such is not a viable or practical option. DOC is specifically barred by State law from releasing inmates without lawful authority. N.Y. Correction Law § 500-c(4). Further, it would set an extraordinary and dangerous precedent to release inmates based solely on their say-so without any documentation to justify that they in fact should be released. Essentially, Plaintiff is requiring the City to do on its own initiative what the Court of Appeals has held in *Ayers* it cannot do, *i.e.*, decide on its own whether DOCCS is managing its parole system well and impose relief that only DOCCS can provide. Further, in *Uviles*, 2023 U.S. Dist. LEXIS 79012 (E.D.N.Y. 2023), the Court granted the City's motion for summary judgment where Plaintiff was over-detained for 17 days.

Accordingly, the only City policy proved in this action was a course of conduct by City DOC that was compliant with State law in obeying State-issued parole warrants. As soon as State parole officials successfully lifted Plaintiff's parole warrant, DOC moved expeditiously to release

Plaintiff from custody. Thus, the City did what it could as limited by *Ayers* given the total control conferred upon the State in handling parole warrants. In keeping with a principal-to-agent relationship, DOC was able to act – and did – once given authorization by its principal in the parole warrant process, DOCCS. Therefore, the City is entitled to state sovereign immunity as it held Plaintiff as an agent of the State of New York pursuant to state law, had no control over the date of Plaintiff's release, and released Plaintiff expeditiously as soon as it was lawfully allowed to do so, and Plaintiff's *Monell* claim likewise fails. Thus, this Court should grant the City summary judgment and dismiss the FAC in its entirety.

**POINT II**

**DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S STATE LAW CLAIMS**

Plaintiff's claims against the City for false imprisonment and violation of the due process clause of Article 1, § 6 of the NYS Constitution fails and, thus, this Court should grant the City summary judgment.

**a.  False Imprisonment**

Plaintiff's claim against the City for false imprisonment fails as his confinement was privileged and, thus, should be dismissed.

Under New York common law, to establish false arrest and false imprisonment claims, "the plaintiff must show that: (1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Broughton v. State of New York*, 37 N.Y.2d 451, 456-58 (1975). *See also Lee v City of New York*, 272 A.D.2d 586, 586 (App. Div. 2d Dept. 2000); *Holland v. City of Poughkeepsie*, 90 A.D.3d 841, 844-45 (App. Div. 2d Dept. 2011). A cause of action for false arrest cannot lie where the arrest was made pursuant to a valid warrant issued by

an impartial judge with jurisdiction since the arrest and subsequent confinement are privileged. *Ellsworth v. City of Gloversville*, 269 A.D.2d 654, 656, 703 N.Y.S.2d 294 & 657 (App. Div. 3d Dep't 2000). *See also Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012). Where a plaintiff was "lawfully detained pursuant to a facially valid warrant issued by the New York State Division of Parole," such detention is "a privileged confinement [and] will not give rise to an action against the entity that detained plaintiff." *Dupree v. Pough*, 454 F. Supp. 2d 166, 170 (S.D.N.Y. 2006). In the context of a parole, a post-arrest confinement is privileged if there is reasonable, rather than probable, cause for the confinement. *See Gathers v. White*, 04-CV-5454, 2007 U.S. Dist. LEXIS 9054, at *15 (E.D.N.Y. Feb. 8, 2007). "Reasonable cause exists when evidence or information which appears reliable discloses facts or circumstances that would convince a person of ordinary intelligence, judgment and experience that it is reasonably likely that a releasee has committed the acts in question or has lapsed into criminal ways or company." N.Y. Comp. Codes R. & Regs. tit. 9, § 8004.2(c) (1978).

Here Plaintiff had a facially valid parole warrant that was issued by the NYS Division of Parole and was lawfully detained. Dainow Decl., Exhibit K. Accordingly, his detention was privileged. Plaintiff alleges that after Justice Clancy vacated the parole warrant and ordered Plaintiff's release, the sustained writ of *habeas corpus* was promptly distributed to officials at DOC. ECF No. 10, at ¶ 29. Yet, as explained above, in Captain Rigault's Declaration, such is not true. DOC was never in receipt of Plaintiff's *habeas* order and only received his warrant lift the day he was released. Further, Plaintiff's testimony established that he had no knowledge of whether his sustained writ of *habeas corpus* was promptly delivered to DOC, contrary to his allegations. Dainow Decl., Exhibit E, P. 164-65, L. 18-2; ECF No. 10, at ¶ 29. Thus, without any such documentation, including the *habeas* order, which was never provided to DOC, DOC held

Plaintiff at Rikers based on the reasonable belief that he still had a parole hold *until* it received a warrant lift from DOCCS, immediately after which it released Plaintiff.

It should also be noted that Plaintiff himself testified that Albany had to release him "but of course, they need paperwork to release somebody . . . [l]et him go, [be]cause they don't want to let the wrong person go . . . Yeah, they need paperwork." Dainow Decl., Exhibit E, P. 115-16, L. 18-7. Plaintiff then also testified that with his case it was "self-explanatory" and that since he had a court order, Albany should have abided by the Judge's decision. *Id.*, P. 116, L. 8-12. Yet, contrary to his belief, his case was anything but self-explanatory. Plaintiff's *habeas* order was never received by DOC (*see* Dainow Decl., Exhibit J) and there is zero evidence to the contrary. Accordingly, Plaintiff's self-serving and wholly inaccurate claim should be disregarded.

In light of the foregoing, it is clear that Plaintiff's confinement was privileged and his false imprisonment claim against the City fails.

### b.   Article 1 § 6 of the NYS Constitution

Plaintiff's claim that the City violated Article 1 § 6 of the NYS Constitution also fails and, thus, should be dismissed.

Article 1 § 6 of the NYS Constitution states, *inter alia*, that "[n]o person shall be deprived of life, liberty or property without due process of law." Here, due process of law was satisfied based upon DOC holding Plaintiff pursuant to a facially valid parole warrant. Further, New York courts will only imply a private right of action under the State Constitution where no alternative remedy is available to the plaintiff. *See Martinez v. City of Schenectady*, 97 N.Y.2d 78, 83 (2001) (indicating that state constitutional tort is a "narrow remedy" and is not available where the claimant has an alternate "avenue of redress"); *Buari v. City of New York*, 530 F.Supp.3d 356, 409-10 (S.D.N.Y. 2021) (quoting *Alwan v. City of New York*, 311 F. Supp. 3d 570, 586 (E.D.N.Y.

2018) (citing cases)) (where "the plaintiff has an alternative remedy under § 1983 for violations of parallel provisions of the U.S. Constitution," it has been held improper to find a state constitutional claim); *Donas v. City of New York*, 2008 N.Y. Misc. LEXIS 8465, at *15-16 (Sup. Ct. N.Y. Co. Jan. 21, 2008), aff'd, 62 A.D.3d 504 (1st Dep't 2009); *Townes v. New York State Metropolitan Transp. Auth.*, 2011 N.Y. Misc. LEXIS 4507, at *14 (Sup. Ct. Nassau Co. Sept. 14, 2011) ("Where there exist alternative statutory or common-law remedies, it has been held improper to find a State constitutional claim.") Here, an alternative remedy exists for Plaintiff's constitutional claim, *i.e.*, Plaintiff's false imprisonment claim, which fails as set forth above.

Plaintiff's claim under the due process clause of Article 1 § 6 may also be raised under the federal Constitution. *Coakley v. Jaffe*, 49 F. Supp. 2d 615, 628 (S.D.N.Y. 1999) ("the New York State Constitution's guarantee[] of … due process [is] virtually coextensive with those of the U.S. Constitution"). *See Allen v. Antal*, 2014 U.S. Dist. LEXIS 79031, at *30 (S.D.N.Y. Mar. 13, 2014) (plaintiff had a remedy at common law for false imprisonment and therefore "his state constitutional tort claim is redundant and precluded"); *Lyles v. State*, 770 N.Y.S.2d 81, 82 (2d Dep't 2003) (dismissing State constitutional claims because alleged wrongs could have been redressed by common-law tort claims, including false imprisonment); *Alen v. Antal,* 665 F. App'x 9, 13-14 (2d Cir. 2016) ("Because alternative remedies were available under § 1983 and common law here, . . . the district court properly dismissed Allen's [New York] state constitutional claims."). Accordingly, because "there is no private right of action under the New York State Constitution for claims that are remediable under Section 1983 or other state laws," *Maldonado v. City of N.Y.*, 2014 U.S. Dist. LEXIS 26239, at *37 (S.D.N.Y. Feb. 26, 2014), Plaintiff's claims under the New York Constitution should be dismissed.

## <u>CONCLUSION</u>

For all of the foregoing reasons, Defendant City of New York respectfully requests that the

Court grant summary judgment in its favor in this action, and grant it such other and further relief

as the Court deems just and proper.

Dated:      November 27, 2023
              New York, New York

**HON. SYLVIA O. HINDS-RADIX**

Corporation Counsel of the
City of New York
*Attorney for Defendant the City of New York*
100 Church Street
New York, NY 10007
Tel: (212) 356-0896

By:   /s/Jacquelyn Dainow
       Jacquelyn Dainow
       Assistant Corporation Counsel