UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

MODESTO RODRIGUEZ,

                                  *Plaintiff*,

                  -against-

THE CITY OF NEW YORK, WARDEN STEVEN
BASTIAN, OFFICER MICHELLE GONZALEZ,
ANTOINETTE DOUGLAS, and LACHONDA LUCAS,

                                  *Defendants*.

21-CV-8565 (CM) (OTW)

**DEFENDANT CITY OF NEW YORK'S LOCAL RULE 56.1 STATEMENT OF MATERIAL FACTS**

------------------------------------------------------------------------ x

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Civil Rule 56.1, and in support of Defendant the City of New York ("the City")'s motion for summary judgment, Defendant the City, by and through its counsel, Honorable Sylvia O. Hinds-Radix, Corporation Counsel of the City of New York, submits the following statement of material facts which Defendant the City contends there exists no genuine issue of material facts to be tried herein:

    1.    In 2019, Plaintiff Modesto Rodriguez was under the parole supervision of the New York State Department of Corrections and Community Supervision ("DOCCS") for an underlying sex offense conviction. ECF No. 10, at ¶¶ 18, 19; Dainow Declaration ("Dainow Decl."), Exhibit E, P. 35, L. 5-8.

    2.    On October 22, 2019, while Plaintiff was under DOCCS parole supervision, Defendant Michelle Gonzalez, Plaintiff's parole officer, imposed a special condition of parole prohibiting Plaintiff from having a cell phone with an operable camera. ECF No. 10, at ¶¶ 14, 18.

3. On October 31, 2019, Defendant Gonzalez charged Plaintiff with a parole violation for possessing and using a cell phone with an operable camera. *Id.* at ¶¶ 21, 22.

4. On or about that date, Plaintiff was arrested and incarcerated at Rikers Island. *Id.*

5. Plaintiff's parole warrant directed DOC to detain Plaintiff until further "action by DOCCS or a court of competent jurisdiction." Dainow Decl., Exhibit K.

6. On November 13, 2019, a preliminary hearing was held on the charged parole violation. *Id.* at ¶ 22.

7. The hearing officer found that there was probable cause of a parole violation. *Id.* at ¶ 24.

8. In January 2020, Plaintiff filed a petition for a writ of *habeas corpus* in the Supreme Court of New York, Bronx County. *Id.* at ¶¶ 25, 26.

9. He argued that: (1) the special condition was arbitrary and infringed on his constitutional rights; and (2) there was insufficient evidence to support the probable cause determination at his preliminary hearing. DOCCS and the warden of the Eric M. Taylor Center, a facility on Rikers Island, were named as respondents. Dainow Decl., Exhibit A.

10. On March 19, 2020, Justice Clancy, Supreme Court, Bronx County, issued a decision granting the writ of *habeas corpus*. Dainow Decl., Exhibit B.

11. Having granted Plaintiff's petition for a writ of *habeas corpus*, Justice Clancy vacated Plaintiff's parole warrant and ordered that he be released and restored to parole supervision, unless some other valid reason existed to hold him in custody. Dainow Decl., Exhibit B; ECF No. 10, at ¶ 28.

12. On March 31, 2020, DOCCS Parole Officer Sheila Bailey sent Plaintiff's warrant lift via email to DOC Correction Officer ("CO") Adam Figueroa in Custody Management, as

Defendant Douglass was out sick with COVID-19. Dainow Decl., Exhibits C, D & F, P. 31-32, L. 23-3, 25.

13. The warrant lift, dated March 31, 2020, stated that the Board of Parole authorized that Plaintiff's warrant be lifted on that date. Dainow Decl., Exhibit D.

14. On that same day, *i.e.*, March 31, 2020, upon receipt of Plaintiff's warrant lift, CO Figueroa forwarded it to the facility where Plaintiff was being housed on Rikers Island (Otis Bantum Correctional Center "OBCC") in order to effectuate Plaintiff's immediate release, barring any other parole holds or detainers. Dainow Decl., Exhibits I & J, Exhibit E, P. 154, L. 10.

15. This email was the first and only notification DOC received with a warrant lift for Plaintiff. Dainow Decl., Exhibit J.

16. Plaintiff's *habeas* Order was never received by DOC. *Id.*

17. Plaintiff was released from custody on March 31, 2020, the same date that DOCCS sent the warrant lift to DOC. ECF No. 10, at ¶ 30; Dainow Decl., Exhibits I & J, Exhibit E, P. 154, L. 10.

18. Plaintiff filed the instant lawsuit on June 29, 2021 in the Supreme Court of the State of New York, Bronx County.

19. Defendants timely removed this action to the Southern District of New York.

20. Plaintiff filed a First Amended Complaint ("FAC") on December 31, 2021. ECF No. 10.

21. On February 17, 2022, City Defendants moved to dismiss the Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, on the grounds that it: (i) lacked sufficient factual allegations showing Defendant Bastian's personal involvement in the alleged

deprivation of Plaintiff's rights, and (ii) failed to state a claim on which relief may be granted. ECF Nos. 21, 22.

22. Plaintiff's deposition was held on March 17, 2022. Dainow Decl., Exhibit E.

23. Judge Colleen McMahon granted in part and denied part City Defendants' motion in an Order and Decision dated August 22, 2022. ECF No. 45.

24. Specifically, Judge McMahon dismissed on the merits Plaintiff's claim against Defendant Warden Steven Bastian for deliberate indifference to over-detention pursuant to 42 U.S.C. § 1983 with prejudice, and dismissed Defendant Bastian from the case. *Id.*

25. Judge McMahon also dismissed on the merits Plaintiff's State claim for negligence, as well as Plaintiff's claim for violations of Article 1 §§ 1, 8, 9, 11, and 12 of the New York State Constitution, against the City. *Id.*

26. Judge McMahon denied the City's motion to dismiss with respect to Plaintiff's claim for violation of Article 1 § 6 of the New York State Constitution, as well as Plaintiff's State law claim for false imprisonment, and also the *Monell* claim, against the City. *Id.*

27. The City filed an Answer to the FAC on September 6, 2022 denying any liability on its behalf. ECF No. 47.

28. Former State DOCCS Defendant Antoinette Douglass' deposition was held on October 20, 2023. Dainow Decl., Exhibit F.

29. State DOCCS Defendant Lachonda Lucas' deposition was held on October 18, 2023. Dainow Decl., Exhibit G.

30. State DOCCS Defendant Michelle Gonzalez's deposition was held on October 20, 2023. Dainow Decl., Exhibit H.

31. Defendant Antoinette Douglass was voluntarily dismissed from this matter on November 1, 2023. ECF No. 72.

32. Plaintiff testified that while in Rikers, he called DOCCS in Albany to see if his warrant was lifted and was told that they were waiting for paperwork. Dainow Decl., Exhibit E, P. 104, L. 14-15; P. 105, L. 3. He further testified that DOCCS said that they were waiting for a document from Albany and that his understanding was that without approval from Albany, he could not be released. *Id.* at P. 111, L. 15-21. Plaintiff further testified that Albany had to release him "but of course, they need paperwork to release somebody . . . [l]et him go, [be]cause they don't want to let the wrong person go . . . Yeah, they need paperwork." *Id.*, P. 115-16, L. 18-7. Plaintiff then further testified that with his case it was "self-explanatory" and that since he had a court order, Albany should have abided by the Judge's decision. *Id.*, P. 116, L. 8-12.

33. Plaintiff also testified that he had no knowledge of whether his sustained writ was promptly distributed to DOC officials. *Id.*, P. 165, L. 10-16, 19, 21. Further, when asked if he asked anyone at the jail why he had not been released yet after his *habeas* order, Plaintiff answered that he asked his lawyer. *Id.* at P. 161, L. 16-22. Also, when asked who from the City he was alleging arrested him without probable cause and who allegedly brought false charges against him, Plaintiff testified that it was his parole officers. *Id.* at P. 166, L. 21-25; P. 167, L. 5-9. Plaintiff also testified that neither he, nor his Legal Aid attorney, made any motions or petitions to any court to try to get him released between March 19, 2020 and March 31, 2020. *Id.* at P. 162, L. 7-11.

34. Defendant Lucas testified that DOCCS would be notified by the Board of Parole that an inmate has received a writ of *habeas corpus* and that the inmate should be released. Dainow Decl., Exhibit G, P. 18-19, L. 24-2. She further testified that after that occurs, DDOI (Declared Delinquent Other Institution, which is part of DOCCS) reviews the case and preps it in order to

set up a release interview for the releasee. *Id.* at P. 19, L. 15-20. Defendant Lucas also testified that after an inmate's release interview, the inmate's warrant would be lifted by DDOI staff. *Id.*, at P. 25-26, L. 21-23; 1. Defendant Lucas further testified that if an inmate's warrant lift form is not sent from DOCCS to DOC, the inmate would remain in custody. *Id.*, at P. 55, L. 2-4.

35. Defendant Douglass testified that DOCCS Parole has to first close/vacate an inmate's warrant before it can be lifted; DOCCS "cannot lift an active warrant." Dainow Decl., Exhibit F, P. 20, L. 12-15, 17-18. Defendant Douglass further testified that after a warrant is closed, a release interview is scheduled. *Id.*, P. 31, L .14-22. She also testified that in this case, it had to be determined whether or not Plaintiff needed an escort due to his underlying sex offense conviction (he did not). *Id.*, P. 34, L. 11-21.

36. Defendant Douglass further testified that once DOCCS lifts a warrant and sends DOC a warrant lift authorization, DOC would begin the process of releasing the inmate. *Id.* at P. 17, L. 2-5; P. 18, L. 17-25. Additionally, she testified that a warrant lift authorization is the only form DOCCS would send to DOC. *Id.*, P. 51, L. 6-9. Defendant Douglass also testified that in this case, Parole Officer ("PO") Sheila Bailey signed Plaintiff's warrant lift authorization and sent it to DOC. *Id.*, P. 20, L. 5, P. 48, L. 12. She further testified that in this case, the warrant lift would have been emailed to Custody Management for processing. *Id.*, P. 50-51, L. 23-5.

37. Defendant Douglass also testified that information in the DOCCS Mainframe system, where a warrant is listed as closed, is never provided to DOC, nor does DOC have access to the Mainframe. *Id.*, P. 52-52, L. 19-5.

38. Defendant Gonzalez testified that the DOCCS Parole Violation Unit is responsible for sending an inmate's warrant lift to DOC. Dainow Decl., Exhibit H, P. 57, L. 2-16.

39. As sworn to by DOC Captain Jamal Rigault in his Declaration, in 2020, DOCCS would lift inmates' parole warrants and then send the warrant lifts to DOC Custody Management. Dainow Decl., Exhibit J. Captain Rigault also stated that a parole hold stays in effect - and the inmate is thus not released - until DOC receives a parole warrant lift from DOCCS. *Id*. DOC requires documentation confirming the lift of the inmate's warrant prior to effectuating the inmate's release. *Id.* Captain Rigault further stated that in his experience, in 2020, *habeas* orders were generally sent by the court to DOCCS, after which DOCCS would send DOC a warrant lift. *Id.*

40. As sworn to by CO Adam Figueroa in his Declaration, on March 31, 2020, Sheila Bailey at DOCCS emailed him Plaintiff's warrant lift which stated that the Board of Parole authorized Plaintiff's warrant to be lifted on that date. Dainow Decl., Exhibits C, D & I. Once he received that warrant lift, he forwarded it to the facility where Plaintiff was being housed in order to effectuate Plaintiff's immediate release, barring any parole holds or detainers. Dainow Decl., Exhibits I & J.

41. Per the testimony of Senior New York State Parole Officer Gwendolyn Hogan at DOCCS in *Uviles,* No. 19-cv-3911 (E.D.N.Y. 2023), neither the City, DOC, nor any City personnel were involved in the process of lifting parole warrants or had any discretion in having to detain prisoners with active parole warrants. Dainow Decl., Exhibit L, at P. 51, L. 15 – P. 52, L. 20. Further, when asked "to your knowledge, does City DOC have any discretion" in holding parolees for whom the State has issued parole warrants, SPO Hogan replied "no," in addition to confirming that the process of lifting parole warrants was "entirely a state process." *Id.*, at P. 51, L. 15 – P. 52, L. 20. SPO Hogan also testified that "[u]ntil we walk in with the warrant lift form, the City of New York or DOC is not involved." *Id.*, P. 52, L. 11-13. She further testified that State

law and policy explicitly required the City to detain the plaintiff until told otherwise by DOCCS, or upon the order of a court of competent jurisdiction. *Id.*, at P. 51, L. 15 – P. 52, L. 20.

Dated: November 27, 2023
      New York, New York

                                       **HON. SYLVIA O. HINDS-RADIX**
                                       Corporation Counsel of the
                                          City of New York
                                       *Attorney for Defendant City of New York*
                                       100 Church Street
                                       New York, New York 10007
                                       (212) 356-0896
                                       jadainow@law.nyc.gov

                     By:       /s/ Jacquelyn Dainow
                                       Jacquelyn Dainow
                                       Assistant Corporation Counsel