UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
MODESTO RODRIGUEZ,   :
                    :   21-CV-8565 (AS)
        Plaintiff,  :
                    :
    - against -     :
                    :
THE CITY OF NEW YORK, WARDEN STEVEN   :
BASTIAN, OFFICER MICHELLE GONZALEZ,   :
ANTOINETTE DOUGLAS AND LACHONDA       :
LUCAS,              :
                    :
        Defendants. :
                    :
------------------------------------------------------------ X

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF STATE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

LETITIA JAMES
Attorney General
State of New York
<u>Attorney for State Defendants</u>
28 Liberty Street, 18th Floor
New York, New York 10005
(212) 416-8373

Gee Won Cha
Assistant Attorney General
    <u>Of Counsel</u>

**PRELIMINARY STATEMENT**

Defendants Michelle Gonzalez ("Defendant Gonzalez") and Lachonda Lucas ("Defendant Lucas") (collectively "State Defendants"), by their attorney, Letitia James, Attorney General of the State of New York") respectfully submit this Reply memorandum of law in further support of their motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

In addition to relying on their Motion for their reasons to be heard on a second motion for summary judgment, State Defendants contend that Plaintiff cannot assume what facts AAG David Cheng had access to when previously litigating this matter as Plaintiff alleges (Plaintiff Opp. 12). In any event, discovery was not exchanged until after the filing of the first summary judgment motion, and AAG Cheng could not have relied on such materials when filing his *pre-discovery* motion for summary judgment. However, now with the exchange of discovery and the crucial deposition testimonies of Defendant Gonzalez, Defendant Lucas, and Antoinette Douglas that took place after the first motion for summary judgment, it is clear both Defendants Gonzalez and Lucas are entitled to qualified immunity.

Plaintiff's claims for malicious prosecution must be dismissed because Plaintiff cannot establish favorable termination of his underlying proceeding – the parole revocation proceeding – when he plead guilty to Charge 19 at his final hearing. Plaintiff seeks to use Charge 3 as both a sword and shield, first by alleging that the dismissal of Charge 3 at his final hearing establishes favorable termination to support his malicious prosecution claim, then by arguing that Charge 3 remained and was the basis of his continued detention to circumvent the Heck v. Humphrey bar to his malicious prosecution claim. Plaintiff conceded the dismissal of Charge 3, the predicate of Plaintiff's Writ of Habeas Corpus, so Plaintiff has no choice but to concede the mootness of the Writ and subsequent decision. Therefore, Plaintiff's malicious prosecution fails. Moreover,

1

Defendant Gonzalez is entitled to qualified immunity because she acted reasonably when she initiated the parole revocation proceeding against him and because Plaintiff cannot make out a violation of a constitutional right as it related to those proceedings.

Plaintiff's claim for unlawful detention and deliberate indifference against Defendant Lucas fares no better. Plaintiff does not point to any evidence from the record showing that she acted with deliberate indifference, let alone recklessness. The record is clear that Defendant Lucas acted reasonably and even diligently as it related to Plaintiff's release, and she is entitled to qualified immunity.

## LEGAL ARGUMENT

I. **PLAINTIFF'S MALICIOUS PROSECUTION CLAIM FAILS, AND IN ANY EVENT, DEFENDANT GONZALEZ IS ENTITLED TO QUALIFIED IMMUNITY**

A. **Plaintiff Cannot Establish the Favorable Termination Requirement of His Malicious Prosecution Claim**

Plaintiff's malicious prosecution claim fails because, despite the dismissal of Charges 1-18 at the final hearing, Plaintiff cannot establish that the underlying proceeding itself, specifically his parole revocation proceeding, was terminated in his favor since Plaintiff plead guilty to Charge 19, leading to his parole revocation and sentence of 12 months in completion of his revocation case. It remains true that favorable termination is an essential element in a malicious prosecution claim and it still stands that a guilty plea is not a termination in favor of the accused. Plaintiff cites to Heck v. Humphrey, 512 U.S. 477 (1994) to support his contention that State Defendants relied on the wrong standard for favorable termination. Plaintiff Opp. p. 7. However, Heck, which ruled that a §1983 claim may be pursued as long as a judgment in favor of the plaintiff would not "necessarily imply the invalidity of his conviction or sentence," (Heck, 512 U.S. at 486), did not overturn the long-standing proposition that favorable termination must be established to proceed

with a malicious prosecution claim. Plaintiff's reliance on Thompson v. Clark, 596 U.S. 36 (2022) is also misplaced, as Thompson's holding merely broadened the definition of favorable termination, requiring a showing that the plaintiff's prosecution ended without a conviction and plaintiff need not go as far showing an affirmative indication of innocence. Here, Plaintiff plead guilty to Charge 19, and this guilty plea completed his parole proceeding with a revocation of parole and 12 month-time assessment. Plaintiff Ex. 11, STATE DEFS 000649-650. Therefore, Plaintiff cannot meet the favorable termination standard, no matter how broadly it is defined. Moreover, a success of Plaintiff's §1983 would necessarily imply the invalidity of Plaintiff's parole revocation because his malicious prosecution claim is predicated on Charge 3, which was dismissed at the final hearing as Plaintiff concedes and would therefore disturb Plaintiff's guilty plea to Charge 19 which completed his revocation case as discussed further below.

Plaintiff attempts to bypass this guilty plea by turning to Poventud v. City of New York, 750 F.3d 121 (2d Cir. 2014) and arguing that Poventud held a guilty plea to a lesser charge does not preclude a §1983 claim based on another charge. However, Plaintiff's reliance on Poventud is misplaced as the facts are markedly different from our instant matter. Plaintiff Poventud was convicted of attempted murder by a jury in 1998 and moved to vacate his conviction based on a Brady violation when exculpatory evidence was not disclosed to him during the criminal proceeding. Poventud, 750 F.3d at 126; see also Brady v. Maryland, 373 U.S. 83 (1963). As a result of the Brady-violation, Plaintiff Poventud's conviction was vacated in October 2005, and during its appeal, Plaintiff Poventud plead guilty to a lesser charge of attempted robbery in 2006. Id. Plaintiff Poventud then brought a Brady violation-based §1983 action as it related to the 1998 conviction. Id., at 136. Applying the standard in Heck, the Court ruled that Plaintiff Poventud's

3

§1983 suit did not disturb his outstanding conviction from the 2006 plea and thus allowed Plaintiff Poventud to pursue his §1983 action. Id., at 127.

Plaintiff here equates Charge 3, the basis of Plaintiff's malicious prosecution claim, to Poventud's overturned attempted murder conviction, and argues that Plaintiff's §1983 action would not disturb his guilty plea to Charge 19, much like Poventud's 2006 guilty plea to robbery remaining valid. Problematically for Plaintiff, the Court in Poventud allowed the plaintiff to pursue his §1983 action for the 1998 conviction based on a *Brady-violation* claim, not on a malicious prosecution claim. Poventud, 750 F.3d at 136 (emphasis added). In fact, the Court explicitly ruled that had the complaint been sounded on a malicious prosecution claim, Poventud's §1983 action would have been barred because of the favorable termination element of the malicious prosecution tort. Id., at 136.

Instead, Plaintiff's §1983 is more akin to DiBlasio v. City of New York, 102 F.3d 654 (2d Cir. 1996), which the Court distinguished from Poventud as a case sounding in malicious prosecution. In DiBlasio, Plaintiff DiBlasio was convicted on charges of criminal sale of a controlled substance in the first, second and third and fourth degrees. DiBlasio, 102 F.3d at 655. Plaintiff DiBlasio secured a writ of habeas corpus on his claim that the prosecution deprived him of a fair trial based on their failure to produce a confidential informant, and Plaintiff DiBlasio was allowed a retrial that led to DeBlasio's conviction of a lesser count. Id., at 655. DiBlasio brought a §1983 action for malicious prosecution by the police officers. Id. The Court held that Plaintiff Diblasio could not meet the favorable termination element of his malicious prosecution claim because the trial leading to his conviction was not a favorable termination. Id., at 657-658. Despite Plaintiff DiBlasio's ultimate conviction resting on a lesser count, the charges arising out of the criminal transaction had to be brought together as a whole and it did not end in Plaintiff DiBlasio's

4

favor. Poventud v. City of New York, 750 F.3d 121, 132 (2d Cir. 2014) ("malicious prosecution under New York law requires 'favorable termination of the proceedings' and a valid conviction on the lesser crime prevented the court from finding a "favorable termination"). Much like the plaintiff in DiBlasio, due to Plaintiff's guilty plea to Charge 19, Plaintiff cannot establish a favorable termination to his *parole revocation proceeding as a whole*. DiBlasio v. City of New York, 102 F.3d 654, 659 (2d Cir. 1996).

In attempt to circumvent the Heck-bar to Plaintiff's 1983 claim, Plaintiff argues that Charge 19 was for a general violation on November 1, 2019, noting that this charge was for after he was arrested, and thus appearing to argue that his plea to Charge 19 stems from a separate proceeding. Plaintiff Opp. p. 9. However, pleading guilty to Charge 19 concluded his revocation proceeding as it related to Warrant 823208, the same Warrant that issued Charge 3. Thus, it is clear that Charge 19 and Charge 3 stemmed from the same proceeding, and therefore a success on Plaintiff's §1983 claim *would* necessarily imply the invalidation of his guilty plea and of his completed parole revocation.

Plaintiff's allegation that Charge 3, not Charge 19, was the only reason he was detained after the final hearing on February 24, 2020 fares no better. (Plaintiff Opp., p. 9). Based on Plaintiff's own admission that "Charge 3 was dismissed in [Plaintiff]'s favor" at the final hearing, (Plaintiff's Opp., p. 11), logic would only follow that Plaintiff's detention after the final hearing was completed was based on Charge 19, not on Charge 3. See also Plaintiff's Exhibit 11, p. 2 "II.C All remaining charges dismissed."

Moreover, by conceding that Charge 3, the basis of Plaintiff's Writ, was dismissed at the final hearing, it must also be conceded that the Writ was moot after the final hearing was completed on February 24, 2020, along with the Writ decision that was rendered nearly a month after the final

5

hearing. This would bar any claim that Plaintiff's parole revocation was invalidated by the Writ decision as Heck provides. Heck v. Humphrey, 512 U.S. 477, 487 (1994). State Defendants are not attempting to relitigate the Writ as Plaintiff asserts, but rather, are establishing yet another reason why Plaintiff's challenge to his preliminary hearing and present §1983 claim is meritless, as he received a greater benefit than he deserved when he was released on the Writ, that by Plaintiff's own logic, was rendered moot after the final hearing. Whether Plaintiff preserved his right to pursue to the Writ at the final hearing is immaterial.

### B. Defendant Gonzalez is Entitled to Qualified Immunity

Plaintiff confuses "hypothetical probable cause" with what the Executive Law permits regarding the detention of a parolee who has been charged with violating conditions of his parole, and Plaintiff is thus mistaken in his belief that "Charge 3 was the *only* charge Plaintiff was being held on until February 24, 2020." (Plaintiff Opp. p. 9). Executive Law § 259-i (3) (a) (i) provides that if a parole officer has "reasonable cause to believe that a . . . parolee has violated one or more conditions of his . . . parole . . . such parole officer shall report such fact to a member of the board, or to any officer of the department designated by the board, and thereupon a warrant may be issued for the retaking of such person and for his temporary detention in accordance with the rules of the board . . . ." Additionally, §259-i-(3)(c)(iv), which was in effect at the time of the proceedings[1], further states that "[t]he standard of proof at the preliminary hearing shall be probable cause to believe that the presumptive releasee, parolee, conditional releasee or person under post-release supervision has violated *one* or more conditions of his or her presumptive release, parole, conditional release or post-release supervision in an important respect" (emphasis added).

---

[1] The Less Is More Act enacted in 2022 changed the probable cause standard to a "preponderance of the evidence."

This dictates that a parolee can be held on a parole warrant, which was a condition precedent for and directly tied to the revocation case, ensuring temporary detention pending completion of the revocation case. See Poladian v. Travis, 8 A.D.3d 770, 778 N.Y.S.2d 232 (3d Dept. 2004) ("A preliminary hearing is designed to determine if there is probable cause that a parole violation occurred, and the failure of an ALJ to address one of the charges does not preclude it from being raised at the final revocation hearing, particularly given that petitioner had notice that all charges could be raised at the final hearing"). Thus, assuming arguendo that Charge 3 presented at the preliminary hearing ultimately lacked probable cause, Defendant Gonzalez charged Plaintiff with *multiple* violations of conditions of release which served as the lawful the basis of his detention until the completion of his revocation case. Matter of McCants v. Travis, 291 A.D.2d 594, 737 N.Y.S.2d 416 (3d Dept. 2002) ("Unlike the final hearing, the preliminary hearing is 'summary and informal', focusing on whether there is probable cause to believe that the parolee has violated conditions of parole . . . i.e., whether further revocation proceedings are warranted").

Moreover, the undisputed fact that Plaintiff plead guilty to an "unrelated" charge at his final hearing is highly relevant to Defendant Gonzalez's qualified immunity analysis because it was through this very guilty plea that resulted in the finality of his parole revocation case and his lawful subsequent detention, and therefore Plaintiff has not shown facts making out the violation of a constitutional right. Plaintiff was lawfully detained following a parole warrant issuing multiple charges, a preliminary hearing was conducted which warranted a further revocation proceeding and where the other multiple charges could have been presented, and Plaintiff plead guilty to a charge in satisfaction of the remaining charges which lead to a revocation of his parole and a 12 month time assessment.

## II.  DEFENDANT LUCAS IS ENTITLED TO QUALIFIED IMMUNITY

Despite Plaintiff's assertion, State Defendants have not abandoned any argument that Plaintiff's 12-day delay in his release was not unconstitutional. See State Defendants Motion, p. 12 ("Here, Plaintiff's alleged over-detention occurred in March 2020, and at that time, there was notable precedent that a twelve-day delay did not constitute a constitutional deprivation"). State Defendants argue that even if Plaintiff's detention did qualify as a violation of a clearly established right, the evidence clearly demonstrates that Defendant Lucas's conduct did not amount to deliberate indifference under the Eighth Amendment, entitling her to qualified immunity. Hurd v. Fredenburgh, 984 F.3d 1075, 1085 n.4 (2d Cir. 2021).

Plaintiff's reliance on immaterial and misstated facts appear to support Defendant Lucas's position that she acted reasonably under the Constitution. Notably, Plaintiff fails to address that despite Defendant Lucas having a copy of the Writ Order, she did not have access to the system to check on the status of Plaintiff's warrant (Cha Decl., Ex. E at 51:21-25; Lucas Decl. at ¶16) and importantly, did not have the necessary authority from the Board of Parole's Counsel's Office to release Plaintiff until March 31, 2020, the day Plaintiff was released. Uviles v. City of New York, No. 19-CV-3911 (BMC), 2023 WL 3266838, at *2 (E.D.N.Y. May 5, 2023). While Plaintiff points to Counsel Elliott McIntosh's March 23, 2020 e-mail authorizing Plaintiff's release, Defendant Lucas was not copied on this communication despite Plaintiff's bald assertion that she was. Plaintiff Opp. p. 9, McIntosh Decl. ¶4; Cha Decl. Ex. D-2 at STATE DEFS 000652. Nor was Defendant Lucas copied on the e-mail informing that Plaintiff's warrant had been closed. Id. In fact, Counsel McIntosh explicitly states that Defendant Lucas was not copied on this e-mail because she did not work at Declared Delinquent Other Institution ("DDOI") at the time, but instead, worked in the Parole Violation Unit ("PVU").  McIntosh Decl. ¶5.

8

Plaintiff alleges that Defendant Lucas's conduct was problematic because she "did nothing until March 31, 2020" (Plaintiff Opp. p. 14). However, it was due to Defendant Lucas's role as the Deputy Chief of PVU, not DDOI, an undisputed fact that Plaintiff conveniently ignores, that shields her from liability. The record is replete with evidence regarding the role that PVU and DDOI played during this incident. See Cha Decl., Exs. D at 14:25-15:10, 16:5-17:5; 34:9-17, 18:5-25; E at 19:12-20:2, 30:10-15. (DDOI in charge of releasing incarcerated parolees, preparing cases for release and scheduling release interviews and lifting parole warrant); see also Cha Decl., Ex. E at 15:4-9; Lucas Decl. at ¶¶7-8 (PVU is responsible for the parole revocation proceedings of a parolee/releasee who has been charged with violating their condition of release). The record also demonstrates what Defendant Lucas was tasked to do by her supervisor, Chief Edward DelRio, as they strived to manage the releases of parolees in the height of COVID-19, and how those tasks were separate and apart from releases at the Judicial Center. Lucas Decl. at ¶17 (Defendant Lucas in charge of coordinating activities from the New York Office, (*not* in charge of coordinating releases as Plaintiff misstates, see Plaintiff Opp. p. 1), which meant overseeing the parole revocation proceedings done by PVU staff ).

Plaintiff continuously mischaracterizes Defendant Lucas's role to demonstrate some kind of failure of her to act.  For example, Plaintiff appears to allege that because Defendant Lucas was tasked with sending the release lists after the Judicial Center had shut down due to COVID-19, or because she was copied on e-mails with the discharge list (a lists that is prepared by DDOI), she was somehow ultimately responsible for the discharge of Plaintiff. However, the evidence shows that Defendant Lucas was tasked with sending the release list because the Judicial Center was closed due to COVID-19 that day, and she was the only one in the office (Cha Decl., Ex. E at 29:2-13) and that her role pertained specifically to the tasks related to parole revocation proceedings.

Plaintiff's allegations that Defendant Lucas ignored e-mails from Plaintiff's attorney (e-mails that Defendant Lucas in actuality did *not* receive as evidence shows, see State Defendants Rule 56.1, ¶¶75-77) are, in any event, immaterial. Defendant Lucas relied on the instructions of her supervisor to coordinate revocation proceedings out of Manhattan while other staff and supervisors coordinated releases from Rikers Island, where Plaintiff was held, and this reliance does not breach any constitutional duty. Plaintiff fails to a acknowledge that Defendant Lucas did act promptly and immediately on March 31, 2020, when she received authorization from the Board of Parole as required, and simultaneously learned that the system had been disrupted because no supervisor was present at the time to oversee DDOI staff. Cha Decl., Ex. E at 41:10-14; Lucas Decl. at ¶¶37-38. Defendant Lucas did not act with a sufficiently culpable state of mind, let alone with criminal recklessness, as it relates to Plaintiff's alleged violation, and Plaintiff has not shown otherwise. Defendant Lucas is thus entitled to qualified immunity.

## CONCLUSION

For the reasons set forth above and in their moving brief, State Defendants respectfully request that the Court grant their motion for summary judgment, along with such further relief as the Court deems just and proper.

Dated:  New York, New York
        December 26, 2023

LETITIA JAMES
Attorney General
State of New York
Attorneys for State Defendants

By: /s/  *Gee Won Cha*
Gee Won Cha
Assistant Attorney General
28 Liberty Street, 18th Floor
New York, New York 10005
Phone: (212) 416-8373
Geewon.Cha@ag.ny.gov